QUINN EMANUEL URQUHART & SULLIVAN, LLP
Richard A. Schirtzer (Bar No. 150165)
richardschirtzer@quinnemanuel.com
Molly Stephens (Bar No. 232211)
mollystephens@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Christine H. Chung
christinechung@quinnemanuel.com
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for Plaintiff Federal Housing Finance
Agency

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 11-ML-02265-MRP (MANx)<br><br>OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT |
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>        Plaintiff,<br><br>        vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br><br>        Defendants. | Case No. 12-CV-01059-MRP (MANx)<br><br>Date: September 18, 2012<br>Time: 11:00 a.m.<br>Courtroom: 12<br>Judge: Hon. Mariana R. Pfaelzer |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ................................................................... 2

ARGUMENT ............................................................................................ 4

I.      FHFA'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE TIMELY UNDER HERA ............................................... 4

II.     THE INDIVIDUAL DEFENDANTS ADMIT THE COURT HAS PERSONAL JURISDICTION OVER THEM PURSUANT TO THE NATIONWIDE SERVICE PROVISION OF THE SECURITIES ACT ........ 9

III.    THE INDIVIDUAL DEFENDANTS' ATTEMPTS TO TURN THEIR ROUTINE PERSONAL JURISDICTION ARGUMENTS INTO AN ATTACK ON "LEGISLATIVE JURISDICTION" MUST FAIL ................. 10

        A.    Legislative Jurisdiction and Personal Jurisdiction Are Distinct Concepts With Different Due Process Inquiries ................................... 11

        B.    Due Process Is Satisfied for Legislative Jurisdiction Purposes if a State's Interests Are Such That the Application of Its Law Is Neither Arbitrary Nor Fundamentally Unfair ..................................... 13

        C.    The Application of the Virginia and District of Columbia Blue Sky Laws in This Action Plainly Satisfies Due Process ...................... 14

        D.    The Individual Defendants Have No Basis to Argue That Due Process Prevents a State from Imposing Liability on Persons Who Control Securities Violations ...................................................... 16

CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.,*
   191 F.3d 429 (4th Cir. 1999) ................................................................. 12, 14

*Allstate Ins. Co. v. Hague,*
   449 U.S. 302 (1981) ................................................................. 12, 13, 16, 17

*Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.,*
   221 F.3d 1211 (11th Cir. 2000) ............................................................... 12

*Am. Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974) ................................................................................. 9

*Barnebey v. E.F. Hutton & Co.,*
   715 F. Supp. 1512 (M.D. Fla. 1989) ......................................................... 15

*Caldwell v. Sioux Falls Stock Yards Co.,*
   242 U.S. 559 (1917) ............................................................................... 14

*DeMalherbe v. Int'l Union of Elevator Constructors,*
   449 F. Supp. 1335 (N.D. Cal. 1978) .................................................... 18, 19

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.,*
   --- F. Supp. 2d ---, 2012 WL 1570856 (S.D.N.Y May 4, 2012) ................. 6, 7

*Goad v. Celotex Corp.,*
   831 F.2d 508 (4th Cir. 1987) ................................................................... 17

*Green v. Weis, Voisin, Cannon, Inc.,*
   479 F.2d 462 (9th Cir. 1973) ................................................................... 15

*Hall v. Geiger-Jones Co.,*
   242 U.S. 539 (1917) ............................................................................... 14

*Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.,*
   2006 WL 5908727 (E. D. Va. Feb. 10, 2006) ........................................... 11

*Houston v. Seward & Kissel, LLP,*
   2008 WL 818745 (S.D.N.Y. Mar. 27, 2008) ............................................. 17

*IDS Bond Fund, Inc. v. Gleacher NatWest Inc.,*
   2002 WL 373455 (D. Minn. Mar. 6, 2002) .......................................... 17, 18

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310 (1945) ............................................................................... 13

*In re JWP Inc. Sec. Litig.,*
   928 F. Supp. 1239 (S.D.N.Y. 1996) .................................................... 16, 17

*Kreis v. Mates Inv. Fund, Inc.*,
  473 F.2d 1308 (8th Cir. 1973) .................................................................. 15

*Kulko v. Superior Court*,
  436 U.S. 84 (1978) .................................................................................... 12

*Laperriere v. Vesta Ins. Group*,
  526 F.3d 715 (11th Cir. 2008) .................................................................. 16

*Madani v. Shell Oil Co.*,
  2008 WL 7856015 (C.D. Cal. July 11, 2008) ............................................ 9

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  722 F. Supp. 2d 1157 (C.D. Cal. 2010) ...................................................... 5

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  2011 WL 4389689 (C.D. Cal. May 5, 2011) ............................................... 9

*Martin v. Steubner*,
  485 F. Supp. 88 (S.D. Ohio 1979) ............................................................ 15

*Mass. Mut. Life Ins. Co. v. Countrywide Fin. Corp.*,
  2012 WL 1322884 (C.D. Cal. Apr. 16, 2012) ............................................. 6

*McCluney v. Joseph Schlitz Brewing Co.*,
  649 F.2d 578 (8th Cir. 1981) .................................................................... 14

*Merck & Co. v. Reynolds*,
  130 S. Ct. 1784 (2010) ............................................................................... 6

*Merrick v. N. W. Halsey & Co.*,
  242 U.S. 568 (1917) .................................................................................. 14

*NewMarket Corp. v. Innospec, Inc.*,
  2011 WL 1988073 (E.D. Va. May 20, 2011) ............................................ 12

*Parvin v. Davis Oil Co.*,
  524 F.2d 112 (9th Cir. 1975) .................................................................... 15

*Rodriguez v. Int'l Leadership Charter Sch.*,
  2009 WL 860622 (S.D.N.Y. Mar. 30, 2009) ............................................. 18

*Sec. Investor Prot. Corp. v. Vigman*,
  764 F.2d 1309 (9th Cir. 1985) .............................................................. 9, 10

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) .................................................................................. 12

*Simms Inv. Co. v. E.F. Hutton & Co.*,
  699 F. Supp. 543 (M.D.N.C. 1988) .......................................................... 15

*Smith v. Lab. Corp. of Am., Inc.*,
  2010 WL 5464770 (W.D. Wash. Dec. 30. 2010) .................................. 11, 12

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ................................................. 6

*Sullivan v. Oracle Corp.*,
    662 F.3d 1265 (9th Cir. 2011) ........................................................... 13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................ 10

*Traveler's Health Ass'n v. Commonwealth*,
    188 Va. 877 (1949), *aff'd*, 339 U.S. 643 (1950) ........................... 14, 15

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ......................................................................... 11

## Statutes

12 U.S.C. § 4617(b)(2) ........................................................................... 8

12 U.S.C. § 4617(b)(12) .................................................................... 4, 8

15 U.S.C. § 77m ..................................................................................... 5

15 U.S.C. § 77r .................................................................................... 17

15 U.S.C. § 77v ...................................................................................... 9

Cal. Corp. Code § 25504 ...................................................................... 18

D.C. Code § 31.5606.05(c) ................................................................... 18

D.C. Code § 31-5606.05(f) ..................................................................... 5

Fed. R. Civ. P. 15(c) ............................................................................ 18

Va. Code Ann. § 13.1-522(C) .............................................................. 18

Va. Code Ann. § 13.1-522(D) ................................................................ 7

Plaintiff Federal Housing Finance Agency ("FHFA"), as conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac" and, together with Fannie Mae, the "GSEs"), by its attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, respectfully submits this memorandum of law in opposition to the four Motions to Dismiss the Amended Complaint ("Am. Compl.") filed by Defendants N. Joshua Adler, Ranjit Kripalani, Stanford Kurland, Jennifer S. Sandefur, Eric Sieracki, and David A. Spector (collectively, the "Individual Defendants") (Dkt. Nos. 134-138).

## **PRELIMINARY STATEMENT**

The six Individual Defendants—all Countrywide executives who signed the false and misleading registration statements at issue and controlled the corporate primary violators—challenge the Amended Complaint based on various combinations of three separate arguments, all of which lack merit.

First, all Individual Defendants argue that the four claims asserted against them are time-barred under the applicable statutes of limitations for those claims. But these arguments are misguided—the applicable statute of limitations for this action brought by FHFA as conservator for the GSEs is set forth in Section 12 of the Housing and Economic Recovery Act of 2008 ("HERA").  As explained herein and in FHFA's Opposition to the Countrywide Defendants' Motion to Dismiss (the "Countrywide Defs.' Opp."), under HERA, a claim is timely if it had not expired by September 6, 2008, the date FHFA was appointed conservator, and if the claim was filed within three years after FHFA's appointment as conservator, *i.e.* September 6, 2011.  Here, the four claims against the Individual Defendants are timely because they had not expired by September 6, 2008, and because FHFA timely filed these claims on September 2, 2011, within three years after its appointment as conservator.

1    Second, Defendant Spector argues at length that the transferor court (the

2  Southern District of New York) will lack personal jurisdiction over him in the event

3  that this Court dismisses the Section 11 and 15 claims under the Securities Act of

4  1933 (the "Securities Act").  Spector's argument is, at best, premature.  The

5  Individual Defendants concede that the transferor court has personal jurisdiction

6  over them pursuant to the nationwide service provision of the Securities Act.  FHFA

7  relied on the nationwide service provision to establish personal jurisdiction, and if

8  the Securities Act claims are dismissed, FHFA should be given an opportunity to

9  allege additional jurisdictional facts.

10    Finally, all Individual Defendants argue that the two claims asserted against

11  them under the Virginia and District of Columbia Blue Sky laws should be

12  dismissed for lack of "legislative jurisdiction."  The Individual Defendants contend

13  that because the courts of Virginia and the District of Columbia lack personal

14  jurisdiction over them, that means applying the Blue Sky laws of Virginia and the

15  District of Columbia to them as control persons of primary violators selling

16  securities to Virginia and District of Columbia residents violates the Constitution's

17  Due Process Clause.  The Individual Defendants' arguments, which improperly

18  conflate personal jurisdiction and legislative jurisdiction, contradict almost a century

19  of constitutional law allowing exactly this type of securities regulation by states.

20    The Individual Defendants' Motions to Dismiss should be denied.

21                    **FACTUAL BACKGROUND**

22    Between August 30, 2005 and January 23, 2008, Fannie Mae and Freddie

23  Mac purchased approximately $26.6 billion in residential mortgage-backed

24  securities (the "Certificates") issued in 86 securitizations sponsored or underwritten

25  by subsidiaries of Countrywide Financial Corporation (together with its subsidiaries,

26  "Countrywide").  Am. Compl. ¶ 2.  The Certificates in each of the securitizations

27  were marketed and sold by means of false and misleading registration statements,

28

prospectuses, prospectus supplements, and other offering materials. *Id.* ¶¶ 5-6. Countrywide Home Loans, Inc., the Sponsor of each securitization, originated or acquired the underlying mortgage loans. *Id.* ¶¶ 45, 58-59. Countrywide Home Loans then sold the loans to Depositors CWMBS, Inc., CWALT, Inc., and CWABS, Inc. *Id.* ¶¶ 46, 60. The Depositors formed the issuing trusts and registered the Certificates for offer and sale. *Id.* ¶¶ 60-63. The Sponsor and Depositors worked with the Underwriters, including Countrywide Securities Corporation, to market and sell the Certificates to investors such as Fannie Mae and Freddie Mac. *Id.* ¶¶ 61-66.

Each of the Individual Defendants is subject to primary liability because each signed two or more of the nine shelf registration statements used to market the securitizations. *Id.* ¶ 51 & tbl. 3. In particular, Defendants Adler, Kripalani, and Sandefur signed two shelf registration statements used to market 11 securitizations. *Id.* ¶¶ 31, 32, 34, 51 & tbl. 3. Defendants Spector and Kurland signed seven shelf registration statements used to market 75 securitizations. *Id.* ¶¶ 33, 36, 51 & tbl. 3. And Defendant Sieracki signed eight shelf registration statements used to market 85 securitizations. *Id.* ¶¶ 35, 51 & tbl. 3. FHFA has asserted claims for primary liability under Section 11 of the Securities Act against the Individual Defendants based on their signatures on two or more of the five registration statements dated after September 6, 2005. *Id.* ¶¶ 400-401, 405.[1]

In addition, FHFA has asserted control person claims against the Individual Defendants based on their control over one or more of the corporate primary violators in this action (the Depositors and Countrywide Securities). Specifically, FHFA has asserted control person claims under (i) Section 15 of the Securities Act

---

[1] Spector contends that he "is not a 'primary violator' in this action" and that there are only control person claims asserted against him. Spector Mem. at 3. Obviously, Spector is wrong.

1  based on primary violations of Sections 11 and 12(a)(2) of the Securities Act in

2  connection with the GSEs' purchases of Certificates in 86 securitizations, *id.*

3  ¶¶ 434-435; (ii) Section 13.1-522(C) of the Virginia Blue Sky law based on primary

4  violations of that Blue Sky law in connection with Freddie Mac's purchases of

5  Certificates in 26 securitizations after September 6, 2006, *id.* ¶¶ 468-469; and

6  (iii) Section 31-5606.05(c) of the District of Columbia Blue Sky law based on

7  primary violations of that Blue Sky law in connection with Fannie Mae's purchases

8  of Certificates in 33 securitizations.  *Id.* ¶¶ 502-503.   Each of these claims is timely.

9  <u>**ARGUMENT**</u>

10  **I.**    <u>**FHFA'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE**</u>

11        <u>**TIMELY UNDER HERA**</u>

12        The Individual Defendants dedicate pages of analysis to their arguments that

13  FHFA's claims against them under the Securities Act, the Virginia Blue Sky law,

14  and the District of Columbia Blue Sky law are time-barred because the claims

15  expired before FHFA filed this action on September 2, 2011.  *See* Adler, *et al.* Mem.

16  at 4-10; Spector Mem. at 3-9; Sieracki Mem. at 3-5; Kurland Mem. at 5-11.  But the

17  Individual Defendants ignore the fact that "[i]n general," "*the applicable* statute of

18  limitations with regard to *any action* brought by [FHFA] as conservator" is set forth

19  in HERA.  12 U.S.C. § 4617(b)(12)(A) (emphases added).  Under HERA, the statute

20  of limitations for actions such as this one is a minimum of three years after the date

21  FHFA was appointed as conservator or the date the claim accrued, whichever is

22  later.  *Id.* §§ 4617(b)(12)(A), (B).

23        FHFA was appointed as conservator of the GSEs on September 6, 2008, and

24  it filed this action less than three years later, on September 2, 2011.  Am. Compl.

25  ¶ 13.  As a result, FHFA's claims against the Individual Defendants are timely as

26  long as the statute of limitations applicable to those claims had not expired by

27  September 6, 2008, the date FHFA was appointed.  *See* Countrywide Defs.' Opp.

28

at 12-15 (citing cases).  Although several Individual Defendants argue that "many" of the claims against them expired before September 6, 2008, *see* Kurland Mem. at 13-14; Sieracki Mem. at 5 (citing Countrywide's brief), those arguments lack merit:

- FHFA's Section 11 claim (along with its Section 15 claim for control liability over Section 11 primary violators) is based on five registration statements dated after September 6, 2005.  Am. Compl. ¶¶ 51, 405.  The claim is timely because it had not expired by September 6, 2008 under the three-year limitations period that this Court held runs from the date of the registration statement for directors and officers who signed the registration statement.  *See, e.g.*, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1165 & n.8 (C.D. Cal. 2010).

- The Section 15 claim based on a primary violation of Section 12(a)(2) is timely because the GSEs purchased all but one Certificate after September 6, 2005.  Am. Compl. ¶¶ 257-258.  The Section 15 claim therefore had not expired by September 6, 2008 under the three-year limitations period that runs from the date of the purchase.  *See, e.g.*, 15 U.S.C. § 77m; *Maine State*, 722 F. Supp. 2d at 1165.[2]

- Similarly, the claim under the District of Columbia Blue Sky law is timely because Fannie Mae purchased all Certificates after September 6, 2005.  Am. Compl. ¶¶ 257-258.  This claim had therefore not expired by September 6, 2008 under the three-year limitations period that runs from the date of the purchase.  *See, e.g.*, D.C. Code § 31-5606.05(f)(1).

- The Section 11, Section 15, and District of Columbia Blue Sky claims

---

[2] Freddie Mac purchased one Certificate—the CWL 2005-8 Certificate—on August 30, 2005.  Am. Compl. ¶ 44 & tbl. 2.  FHFA agrees that the Section 15 claim against the Individual Defendants based on a primary violation of Section 12(a)(2) cannot be based on this Certificate.  *See* Spector Mem. at 5 & n.3.

also had not expired by September 6, 2008 under the one-year discovery statute of limitations.  No defendant contends FHFA or the GSEs were on notice of these claims by September 6, 2007.  *See* Adler, *et al.* Mem. at 6 (arguing a June 12, 2008 notice date); Spector Mem. at 8-9 (incorporating Countrywide's notice date of late 2007 or early 2008); Kurland Mem. at 7 (same); Sieracki Mem. at 3-4 (identifying November 2007 as the earliest notice date).  In addition, this Court has held that a reasonable investor would have been on inquiry notice only "by late 2007 or early 2008," *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1137 (C.D. Cal. 2011), well after the September 6, 2007 inquiry notice date that would be necessary to bar the claims in this case.  Indeed, this Court recently held that a reasonable investor was *not* on inquiry notice of claims arising from Countrywide mortgage-backed securities as a matter of law by August 31, 2007, less than one week prior to a September 6, 2007 inquiry notice date.  *See Mass. Mut. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 11-cv-10414, 2012 WL 1322884, at *4 (C.D. Cal. Apr. 16, 2012).[3]

•       Finally, FHFA's claim under the Virginia Securities Act is based on Freddie Mac's purchases that occurred after September 6, 2006.  Am. Compl.

---

[3]   FHFA does not concede that the "inquiry notice" standard is the proper standard to use in determining when a reasonable plaintiff would have "discovered" the misrepresentations and falsehoods at issue.  *See Fed. Hous. Fin. Agency v. UBS Americas, Inc.* ("*UBS*"), --- F. Supp. 2d ---, 2012 WL 1570856, at *7-8 (S.D.N.Y May 4, 2012) (concluding that the "discovery" standard articulated by the Supreme Court in *Merck & Co. v. Reynolds,* 130 S. Ct. 1784 (2010), is the proper standard to use in establishing the date of discovery under the one-year statute of limitations for the Securities Act and District of Columbia Blue Sky law).  FHFA, however, recognizes that this Court need not answer this question here because FHFA's claims are timely even under the inquiry notice standard used by the Individual Defendants, for the reasons set forth above.

¶ 469.[4]  The claim is timely because it had not expired by September 6, 2008 under the two-year limitations period that runs from the date of the purchase.  *See* Va. Code Ann. § 13.1-522(D).

To address HERA, the Individual Defendants merely incorporate Countrywide's arguments.  They argue that HERA does not apply to FHFA's claims against them for three separate reasons:  (i) HERA applies only to procedural statutes of limitations and not substantive statutes of repose; (ii) HERA applies only to state—not federal—statutes of limitations; and (iii) HERA applies only to tort and contract claims—not to statutory claims.  Adler, *et al.* Mem. at 10-11; Spector Mem. at 5, 7; Sieracki Mem. at 5; Kurland Mem. at 11.  As argued in detail in FHFA's Opposition to the Countrywide Defendants' Motion to Dismiss (which FHFA incorporates herein by reference), each of the Individual Defendants' arguments lacks legal merit:

• First, Congress's use of the term "statute of limitations" in HERA encompasses statutes of repose, as demonstrated by Congress's routine use of the terms "statute of limitations" and "limitations" to refer to statutes of repose in a number of statutes, including Section 13 of the Securities Act and the Sarbanes-Oxley Act.  *See* Countrywide Defs.' Opp. at 16-26.  As the Southern District of New York stated in rejecting this exact argument, "Congress, the courts and learned commentators regularly use the term 'limitations' to encompass both types of timeliness provisions."  *UBS*, 2012 WL 1570856, at *4; *see also* Countrywide Defs.'

---

[4]  In a footnote, Kurland argues that "it is worth noting that September 6, 2006 was [his] last day," apparently contending, without citing any authority, that he cannot be liable for Freddie Mac's purchases made after September 6, 2006.  *See* Kurland Mem. at 10 n.7.  As Kurland himself recognizes, however, this issue is "not yet ripe for adjudication in light of the bifurcated briefing schedule."  *Id.*

Opp. at 16-26 (citing numerous examples).  Indeed, interpreting the term "statute of limitations" to encompass statues of repose is the only way to accomplish HERA's purpose of giving FHFA time to decide whether and how to pursue any claims it inherited as the GSEs' newly-appointed conservator to "preserve and conserve the[ir] assets."  12 U.S.C. § 4617(b)(2)(B)(iv); Countrywide Defs.' Opp. at 26-30.

- Second, by extending the statute of limitations for "*any action* brought by the Agency as conservator," HERA plainly and unambiguously extends the statute of limitations for both state and federal claims.  12 U.S.C. § 4617(b)(12)(A); Countrywide Defs.' Opp. at 30-32.  The Individual Defendants' strained interpretation limiting HERA's application to state claims ignores not only the literal language in HERA encompassing "any action," but also the fact that HERA is not tied to state law.  *See* Countrywide Defs.' Opp. at 30-32.

- Third, HERA's reference to "contract" and "tort" claims does not limit the application of the statute to these common law claims.  *See* Countrywide Defs.' Opp. at 36-37.  Instead, the plain language of HERA makes clear that it applies "[i]n general" to "any action brought by the Agency as conservator."  12 U.S.C. § 4617(b)(12)(A).  Every court that has considered similar statutory language has held that the language covers statutory claims and has categorized a statutory claim as sounding either in tort or contract when applying the statute.  *See* Countrywide Defs.' Opp. at 36-37.  Indeed, Spector himself categorizes these claims as tort claims to argue that the "purposeful direction" test for personal jurisdiction applies.  *See* Spector Mem. at 14.

The Individual Defendants cannot succeed with their motions to dismiss because the law is clear that FHFA's claims against them are timely under HERA.[5]

---

[5]  FHFA's claims against the Individual Defendants under Sections 11 and 15 of (footnote continued)

## II.   THE INDIVIDUAL DEFENDANTS ADMIT THE COURT HAS PERSONAL JURISDICTION OVER THEM PURSUANT TO THE NATIONWIDE SERVICE PROVISION OF THE SECURITIES ACT

As the Individual Defendants admit, the transferor court plainly has personal jurisdiction over them pursuant to the nationwide service of process provision in the Securities Act.  *See* 15 U.S.C. § 77v; *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985) ("[S]o long as a defendant has minimum contacts with the United States, [nationwide service provision of the federal securities law]

_____

the Securities Act also are timely under the tolling doctrine set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).  *See* Countrywide Defs.' Opp. at 44-45.  The Individual Defendants argue that even if *American Pipe* tolling were applicable, it cannot toll the Section 15 claim against them because that claim was dropped from various class action complaints.  *See* Adler, *et al.* Mem. at 8 n.6; Sieracki Mem. at 6-9; Kurland Mem. at 12-13 & n.10.  As Defendant Sieracki acknowledges, however, this Court has already rejected this argument, holding that "the cause of action in a subsequent complaint need not be identical to that in a previous complaint for *American Pipe* tolling to apply, as long as the claims 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit' so that 'the defendant will not be prejudiced.'"  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-0302, 2011 WL 4389689, at *16 (C.D. Cal. May 5, 2011).  FHFA's Section 15 claim based on the Individual Defendants' control over the misleading registration statements and the Depositors concerns the same evidence, memories, and witnesses as a Section 11 claim based on the Individual Defendants' signatures on registration statements in their roles as controlling persons of the Depositors.  The Individual Defendants do not, and cannot, explain how FHFA's reasonable reliance allegations change this analysis.  *See, e.g.*, Sieracki Mem. at 8.  The Individual Defendants' new case, *Madani v. Shell Oil Co.*, also does not change this analysis because the claims there, unlike the claims here, were so different that they did not concern the same evidence, memories, and witnesses.  *See Madani*, No. 08-cv-1283, 2008 WL 7856015, at *3 (C.D. Cal. July 11, 2008) ("The rule of reason claim here does not 'concern the same evidence, memories, and witnesses' as the per se claim raised in *Dagher*.").

confers personal jurisdiction over the defendant in any federal district court."); *see also* Adler, *et al.* Mem. at 8-9 n.7; Spector Mem. at 12.  Nevertheless, Defendant Spector (and to a lesser extent Defendants Adler, Kripalani, and Sandefur) argue at length that the transferor court will not have personal jurisdiction over them in the event the Securities Act claims are dismissed.  *See* Spector Mem. at 13-18; Adler, *et al.* Mem. at 8-9 n.7.  To establish personal jurisdiction in this case asserting claims under the Securities Act, however, FHFA relied on the nationwide service provision. In the event that the Court dismisses the Securities Act claims against the Individual Defendants, FHFA requests that it be granted leave to allege additional jurisdictional facts against the Individual Defendants.  *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 757-58 (9th Cir. 2007) (reversing denial of leave to amend for lack of personal jurisdiction, holding that "although the original complaint failed to allege sufficient jurisdictional facts, [the plaintiff] should have been given an opportunity to cure this defect through amendment").

## III.   THE INDIVIDUAL DEFENDANTS' ATTEMPTS TO TURN THEIR ROUTINE PERSONAL JURISDICTION ARGUMENTS INTO AN ATTACK ON "LEGISLATIVE JURISDICTION" MUST FAIL

Finally, all Individual Defendants argue that FHFA's two claims under the Virginia and District of Columbia Blue Sky laws should be dismissed for lack of "legislative jurisdiction."  *See* Adler, *et al.* Mem. at 11-16; Spector Mem. at 9-12; Sieracki Mem. at 9-16; Kurland Mem. at 14-15.  The Individual Defendants argue that a state's ability to apply its laws to a particular subject is circumscribed by the Due Process Clause, which they refer to as "legislative jurisdiction."  *See, e.g.*, Adler, *et al.* Mem. at 12.  But they then proceed with an extensive analysis of *personal* jurisdiction—*not* legislative jurisdiction.  *See, e.g.*, *id.* at 12-16.  According to the Individual Defendants, if the courts of a particular state (in this case, Virginia and the District of Columbia) lack personal jurisdiction over a defendant, then that

1   state's blue sky laws cannot be applied to the defendant consistent with the Due

2   Process Clause.  *See, e.g.*, *id.*  The Individual Defendants' position contradicts

3   almost a century of constitutional law upholding a state's ability to regulate

4   securities transactions within its borders.  Their position is not the law.

A.   <u>Legislative Jurisdiction and Personal Jurisdiction Are Distinct Concepts With Different Due Process Inquiries</u>

7   The Individual Defendants' entire legislative jurisdiction argument turns on

8   their contention that the due process inquiries for legislative jurisdiction and

9   personal jurisdiction are exactly the same.  *See, e.g.*, Adler, *et al.* Mem. at 12.  But

10  the Individual Defendants misinterpret isolated statements in cases, which merely

11  note that the inquiries have some similarities.  *See id.*; Spector Mem. at 10; Sieracki

12  Mem. at 9-10.  In fact, legislative jurisdiction and personal jurisdiction are different

13  concepts that serve distinct purposes.  As the Individual Defendants themselves

14  acknowledge, legislative jurisdiction "refers to the power of a state to apply its laws

15  to any given set of facts."  *See, e.g.*, Adler, *et al.* Mem. at 11 (internal quotations

16  omitted)); *see also Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc.*, No.

17  3:C5cv355, 2006 WL 5908727, at *9 (E. D. Va. Feb. 10, 2006).  The legislative

18  jurisdiction inquiry asks "whether a particular state's law may be constitutionally

19  applied to the facts of a given case."  *Hilb*, 2006 WL 5908727, at *9.  By contrast,

20  personal jurisdiction concerns the "power of a particular court over a person."  *Smith*

21  *v. Lab. Corp. of Am., Inc.*, No. C09-1662, 2010 WL 5464770, at *2 (W.D. Wash.

22  Dec. 30. 2010).  Unlike legislative jurisdiction, personal jurisdiction serves the

23  purpose of protecting the defendant against the burdens of being hauled into a

24  distant or inconvenient court.  *See, e.g., World–Wide Volkswagen Corp. v. Woodson*,

25  444 U.S. 286, 291-92 (1980).

26  Because of these differences, the United States Supreme Court "has made it

27  clear over the years that the personal jurisdiction and [legislative jurisdiction]

28

inquiries are not the same." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 320 n.3 (1981) (Stevens, J., concurring opinion; citing cases).  Even the cases cited by the Individual Defendants recognize this.  *See Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 435 (4th Cir. 1999) ("[T]here is a difference between jurisdiction to adjudicate or judicial jurisdiction on the one hand, and legislative jurisdiction on the other."); *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 n.9 (11th Cir. 2000) (noting that a "difference exists between adjudicative jurisdiction and legislative jurisdiction"); *NewMarket Corp. v. Innospec, Inc.*, No. 3:10-cv-503, 2011 WL 1988073, at *5 (E.D. Va. May 20, 2011) ("[T]hese two concepts [personal and legislative jurisdiction] are distinct principles of law[.]").  Instead, "courts must apply one standard when determining whether the level of contacts with a state are sufficient to require someone to appear in a court in that state, and a separate standard when determining whether the level of contacts are sufficient to subject somebody to that state's laws, regardless of the state where the lawsuit is conducted."  *Smith*, 2010 WL 5464770, at *2-3.  A state can have legislative jurisdiction over a matter whether or not its courts have personal jurisdiction over a particular defendant.  *See id.* at *3 ("Idaho's lack of personal jurisdiction over Defendants does not preclude Idaho's legislative jurisdiction."); *see also Kulko v. Superior Court*, 436 U.S. 84, 98 (1978) (noting that legislative jurisdiction and personal jurisdiction analyses are different); *Shaffer v. Heitner*, 433 U.S. 186, 214-15 (1977) (same).

The Individual Defendants' legislative jurisdiction argument is erroneously based on their contention that the due process inquiries for legislative jurisdiction and personal jurisdiction are the same.  Because these Individual Defendants make no attempt to analyze legislative jurisdiction under the applicable standards, their challenge to legislative jurisdiction must fail.

B.    Due Process Is Satisfied for Legislative Jurisdiction Purposes if a State's Interests Are Such That the Application of Its Law Is Neither Arbitrary Nor Fundamentally Unfair

Having improperly conflated the due process inquiries for legislative jurisdiction and personal jurisdiction, the Individual Defendants dedicate pages to an irrelevant due process analysis for personal jurisdiction. *See, e.g.*, Adler*, et al.* Mem. at 13-16; Sieracki Mem. at 11-16. The Individual Defendants are wrong that a state's law can apply to a particular claim or transaction only if a *defendant* has "sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See, e.g.*, Adler, *et al.* Mem. at 12 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). This is the personal jurisdiction inquiry. *See Int'l Shoe*, 326 U.S. at 316. For the legislative jurisdiction inquiry, both the United States Supreme Court and the Ninth Circuit have held that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate*, 449 U.S. at 312-13; *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1270 (9th Cir. 2011) (same).

Under the relevant due process inquiry for legislative jurisdiction, courts look to the *state's* connection with the conduct, transaction, or parties to determine whether the state has a legitimate interest in the outcome of the case. *See Allstate*, 449 U.S. at 312. The Individual Defendants acknowledge this standard in passing, *see, e.g.*, Spector Mem. at 10, but then quickly switch to the irrelevant personal jurisdiction standard, arguing that FHFA has the burden of alleging facts that "link[] [the Individual Defendants] personally to either Virginia or Washington, D.C." *Id.* A defendant's personal contacts with a state are not the test for legislative jurisdiction. *See Allstate*, 449 U.S. at 312. So long as a state is sufficiently

1 connected to the transaction or conduct at issue such that application of its law is not

2 arbitrary or fundamentally unfair, its law may be applied regardless of the

3 defendant's personal contacts, as the Individual Defendants' own authority

4 acknowledges. *See McCluney v. Joseph Schlitz Brewing Co.*, 649 F.2d 578, 581

5 (8th Cir. 1981) ("[T]he state whose law is chosen to control a case must have a

6 substantial factual contact with the parties *or the transaction* giving rise to the

7 litigation.") (emphasis added); Adler, *et al.* Mem. at 11 (citing *McCluney*); *see also*

8 *Adventure Commc'ns*, 191 F.3d at 437 ("[W]e must determine whether there are

9 sufficient contacts between Kentucky and the Broadcasters, *or the Broadcasters'*

10 *activities that Kentucky seeks to affect*[.]") (emphasis added); Kurland Mem. at 14

11 (citing *Adventure Commc'ns*).

12     As set forth below in Section III.C, the application of the Virginia and District

13 of Columbia Blue Sky laws to these alleged securities violations plainly meets the

14 due process standard for legislative jurisdiction.  The Individual Defendants, who

15 focus on personal jurisdiction, do not argue otherwise.  *See, e.g.*, Adler, *et al.* Mem.

16 at 11-16.

17     C.    The Application of the Virginia and District of Columbia Blue Sky

18            Laws in This Action Plainly Satisfies Due Process

19     For almost a century, the United States Supreme Court and Circuit Courts of

20 Appeal have upheld the constitutionality of blue sky laws, affirming states'

21 legitimate interest in regulating securities that emanate from or are sold within their

22 borders.  *See, e.g.*, *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 552 (1917) (upholding

23 constitutionality of state regulation of securities sales); *Caldwell v. Sioux Falls Stock*

24 *Yards Co.*, 242 U.S. 559, 576-78 (1917) (same); *Merrick v. N. W. Halsey & Co.*, 242

25 U.S. 568, 590 (1917) (upholding constitutionality of state regulations prohibiting

26 sale of securities without a license); *Traveler's Health Ass'n v. Commonwealth*, 188

27 Va. 877, 885 (1949) ("It is settled beyond controversy . . . that the regulation of the

28

1   promotion and sale of securities is a proper exercise of the police power of the

2   states.") (*Traveler's I*), *aff'd*, 339 U.S. 643 (1950) (*Traveler's II*).  In the securities

3   context, the solicitation, offer, purchase, payment, and/or sale of a security within a

4   state create sufficient contacts to allow application of that state's law.  *See, e.g.*,

5   *Parvin v. Davis Oil Co.*, 524 F.2d 112, 116-117 (9th Cir. 1975) (sufficient contacts

6   when payment was mailed from the state); *Traveler's I*, 188 Va. at 887 (solicitation

7   in the state created sufficient contacts); *Simms Inv. Co. v. E.F. Hutton & Co.*, 699 F.

8   Supp. 543, 545-46 (M.D.N.C. 1988) (sufficient contacts in the state where the offer

9   to sell was made in the state where the security was purchased).

10       Courts routinely apply a state's blue sky laws where at least one step of the

11   transaction occurred within the state's borders.  *See, e.g.*, *Barnebey v. E.F. Hutton &*

12   *Co.*, 715 F. Supp. 1512, 1540 (M.D. Fla. 1989) ("[I]f a portion of a securities

13   transaction occurs in a state . . . that state has a legitimate interest in applying its

14   securities law to the transaction."); *Parvin*, 524 F.2d at 116-117 (California law

15   applied when plaintiff mailed payment from California); *Green v. Weis, Voisin,*

16   *Cannon, Inc.*, 479 F.2d 462, 466 (9th Cir. 1973) (Illinois law applied where plaintiff

17   sent confirmation to Illinois address, even though he was solicited in and sent

18   payment from Florida); *Kreis v. Mates Inv. Fund, Inc.*, 473 F.2d 1308 (8th Cir.

19   1973) (Missouri law applied where offer of sale was accepted in Missouri); *Martin*

20   *v. Steubner*, 485 F. Supp. 88, 90, 101 (S.D. Ohio 1979) (citing *Traveler's II* and

21   applying Ohio securities laws, even though the contacts with Ohio were

22   "admittedly, slight," because "the State's interest in protecting its citizens from the

23   sale of securities which have not been first subjected to the State's investigative and

24   evaluative processes . . . does not appear unfair or to offend due process concepts").

25       It is undisputed that the securities at issue here were offered, sold, and

26   distributed in Virginia and the District of Columbia to residents of Virginia (Freddie

27   Mac) and the District of Columbia (Fannie Mae).  *See* Am. Compl. ¶¶ 55, 456, 490;

28

Spector Mem. at 10 (admitting that the conduct "alleged to have occurred in Virginia and the District of Columbia was the offering and sale of the Certificates to Fannie Mae and Freddie Mac").  The due process standard for legislative jurisdiction is plainly satisfied; Virginia and the District of Columbia have significant contacts with the securities transactions that took place within their borders and to their residents such that applying their blue sky laws would not be arbitrary or fundamentally unfair.  *See Allstate*, 449 U.S. at 312

D.  <u>The Individual Defendants Have No Basis to Argue That Due Process Prevents a State from Imposing Liability on Persons Who Control Securities Violations</u>

Despite the well-established authority upholding the constitutionality of a state's regulation of securities sales to its residents within its borders, the Individual Defendants essentially contend that control person statutes are different—that a state cannot constitutionally subject a defendant to its control person statute unless the state courts have personal jurisdiction over the defendant.  *See, e.g.*, Adler*, et al.* Mem. at 11-16.  This is not the law.  *See supra* Sections III.A-C.  A state has sufficient contacts with securities sales within its borders such that it can constitutionally regulate the defendants involved in those securities sales.  *See id.* The ability to subject the persons who control the securities sales to liability is necessary for effective regulation.  *See, e.g.*, *Laperriere v. Vesta Ins. Group*, 526 F.3d 715, 722 (11th Cir. 2008) ("The legislative purpose in enacting a control person liability provision was to prevent people and entities from using straw parties, subsidiaries, or other agents acting on their behalf to accomplish ends that would be forbidden directly by the securities laws."); *see also In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1266 (S.D.N.Y. 1996) ("The purpose of control person liability is to prevent individuals who orchestrate or direct a securities fraud, but

1  who do not actually commit the fraudulent acts themselves, from escaping

2  liability.").

3       Even ignoring these constitutionally sufficient state contacts, however, the

4  Individual Defendants' argument that due process prevents the application of the

5  Virginia and District of Columbia control person statutes to them must still fail.  The

6  case law is clear that applying a particular state's law to a particular defendant

7  satisfies due process when the defendant reasonably expects to be subject to that

8  state's laws.  *See Allstate*, 449 U.S. at 334 (Stevens, J., concurring) (noting that the

9  "desire to prevent unfair surprise to a litigant has been the central concern in this

10  Court's review of choice-of-law decisions under the Due Process Clause"); *Goad v.*

11  *Celotex Corp.*, 831 F.2d 508, 513 (4th Cir. 1987) ("Unfair surprise is at the heart of

12  the due process restrictions on state choices of law, surprise created by an arbitrary

13  choice.") (citation omitted).

14       The Individual Defendants cannot dispute that they reasonably expected to be

15  subject to the blue sky laws of every state in which the securities were sold

16  (regardless of personal jurisdiction in those states).  The federal securities law under

17  which the Individual Defendants registered the securities for nationwide sale

18  informed them that they would be subject to each state's regulation of fraud in

19  connection with securities sales that occurred within the state's borders.  *See* 15

20  U.S.C. § 77r(c)(1) ("[T]he securities commission . . . of any State shall retain

21  jurisdiction under the laws of such State to investigate and bring enforcement

22  actions, in connection with securities or securities transactions (A) with respect to –

23  (i) fraud or deceit[.]"); *Houston v. Seward & Kissel, LLP*, No. 07-cv-6305, 2008 WL

24  818745, at *4 (S.D.N.Y. Mar. 27, 2008) (noting "Congress's express intent to

25  preserve states' traditional authority in the realm of fraud and deceit in securities

26  offerings, *even those inherently national 'covered' securities*") (emphasis added);

27  *IDS Bond Fund, Inc. v. Gleacher NatWest Inc.*, No. 99-116, 2002 WL 373455, at

28

*6-7 (D. Minn. Mar. 6, 2002) (same; noting that the Securities Act preserves state jurisdiction over fraudulent securities transactions for both state enforcement actions and private civil litigation).  The "national" nature of the securities registrations in this case, although not relevant for personal jurisdiction, *see, e.g.*, Adler, *et al.* Mem. at 15-16; Spector Mem. at 10-11, only reinforces the constitutionality of applying the Virginia and District of Columbia Blue Sky laws in this action.

The Individual Defendants do not address this clear notice and the legitimate interests of Virginia and the District of Columbia in applying their blue sky laws to the conduct at issue in this case.  *See* Adler, *et al.* Mem. at 11-16; Spector Mem. at 9-12; Sieracki Mem. at 9-16; Kurland Mem. at 14-15.  Instead, the Individual Defendants rehash arguments from personal jurisdiction cases discussing the "purposeful direction" test for requiring a defendant to litigate in a distant or inconvenient forum.  *See* Adler, *et al.* Mem. at 15 (citing personal jurisdiction cases); Spector Mem. at 14-16 (same); Sieracki Mem. at 13-16.  These arguments and cases on "purposeful direction" are irrelevant.[6]  Application of the Virginia and

---

[6]  Even if the Individual Defendants' argument were somehow viable, that would not mean they escape liability under a state's blue sky law.  Instead, they would be subject to liability under California's blue sky law, which is substantially identical to the blue sky laws of Virginia and the District of Columbia.  *Compare* Cal. Corp. Code § 25504 *with* Va. Code Ann. § 13.1-522(C) *and* D.C. Code § 31.5606.05(c).  If FHFA's claims under the Virginia and District of Columbia Blue Sky laws are dismissed as unconstitutional (which they should not be), FHFA should be given leave to amend to assert claims under California's blue sky law.  *See* Fed. R. Civ. P. 15(c) ("An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempt to be set out – in the original pleading[.]"); *Rodriguez v. Int'l Leadership Charter Sch.*, No. 08 Civ. 1012, 2009 WL 860622, at *2 (S.D.N.Y. Mar. 30, 2009) (amended complaint alleging liability under additional statutes related back because plaintiff's "core contention" remained the same); *DeMalherbe v. Int'l Union of Elevator Constructors*, 449 F. Supp. 1335,
(footnote continued)

1  District of Columbia Blue Sky laws in this case satisfies the Due Process Clause in

2  two separate ways—under a properly applied "legislative jurisdiction" analysis or

3  under a "reasonable expectations" analysis for applying a specific state's law. *See*

4  *supra* Sections III.B-D.

5  **CONCLUSION**

6        For the foregoing reasons, the Individual Defendants' motions to dismiss

7  FHFA's claims should be denied.

8

9  DATED:  August 13, 2012            QUINN EMANUEL URQUHART &
10                               SULLIVAN, LLP

11                           By  /s/ Molly Stephens
                             Richard A. Schirtzer

12                               Molly Stephens
                             865 South Figueroa Street, 10th Floor

13                               Los Angeles, California  90017

14                               Christine H. Chung
                             51 Madison Avenue

15                               New York, New York 10010

16                               *Attorneys for Plaintiff Federal Housing*
*Finance Agency, as Conservator for*

17                               *Fannie Mae and Freddie Mac*

18

19

20

21

22

23

——————————————

24

25  1354 (N.D. Cal. 1978) ("[A]n amendment which asserts a claim under a different

26  statute . . . but which arises out of the same conduct relates back to the date of filing

27  of the original complaint.").

28