CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL, State Bar No. 106790
  caldwell@caldwell-leslie.com
JEANNE A. FUGATE, State Bar No. 236341
  fugate@caldwell-leslie.com
JENNIFER LEE HONG, State Bar No. 263635
  hong@caldwell-leslie.com
1000 Wilshire Boulevard, Suite 600
Los Angeles, California  90017-2463
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant
STANFORD L. KURLAND

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION CASES | Case No. 11-ML-2265-MRP (MANx)<br><br>**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE ASSOCIATION,<br><br>            Plaintiff,<br>     v.<br>COUNTRYWIDE FINANCIAL CORP, *et al.*,<br><br>            Defendants. | Case No. 12-CV-1059 MRP (MANx)<br><br>Hon. Mariana R. Pfaelzer<br><br>Date:   September 19, 2012<br>Time:   11:00 a.m.<br>Crtrm.: 12<br><br>Trial Date:   None Set |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FHFA'S CLAIMS AGAINST KURLAND ARE ALL TIME-BARRED AND MUST BE DISMISSED ........................................................................ 2

    A. FHFA Concedes that the Applicable Statutes of Limitations and Repose Expired Prior to the Commencement of this Action .................. 2

    B. Tolling Cannot Save FHFA's Time-Barred Claims ............................... 3

III. FHFA'S FAILURE TO PLEAD ANY FACTS ESTABLISHING KURLAND'S CONTACTS WITH VIRGINIA OR THE DISTRICT OF COLUMBIA REQUIRES DISMISSAL OF THE STATE-LAW CLAIMS .......................................................................................................... 5

    A. The Due Process Clause Requires a State to Have Sufficient Contacts with an Out-of-State Party in Order to Regulate his Conduct .................................................................................................. 5

    B. FHFA Concedes its Failure to Plead Facts Establishing Contacts Between Kurland and Virginia or the District of Columbia ................... 7

IV. CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adventure Commc'ns, Inc. v. Kentucky Registry of Election Fin.*,
  191 F.3d 429 (4th Cir. 1999) ................................................................. 6-7

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
  824 F.Supp.2d 1164 (C.D. Cal. 2011) ................................................... 3

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981) ............................................................................. 8

*American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*,
  221 F.3d 1211 (11th Cir. 2000) ........................................................ 5-6, 7

*American Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974) ......................................................................... 1, 3

*Gerling Global Reinsurance Corp. of Am. v. Low*,
  296 F.3d 832 (9th Cir. 2002) ............................................................ 6, 7-8

*McCluney v. Jos. Schlitz Brewing Co.*,
  649 F.2d 578 (8th Cir. 1981) ............................................................... 8

*Parvin v. Davis Oil Co.*,
  524 F.2d 112 (9th Cir. 1975) ............................................................... 9

*United States v. Summerlin*,
  310 U.S. 414 (1940) ........................................................................... 5

**Statutes**

12 U.S.C. § 4617(b)(12) ............................................................................ 1

## I. INTRODUCTION

Plaintiff Federal Housing Finance Agency ("FHFA") brings four claims against Defendant Stanford L. Kurland ("Kurland"), including alleged violations of Sections 11 and 15 of the Securities Act of 1933 ("1933 Act"), and control person claims under the Virginia and District of Columbia blue-sky laws. As demonstrated in his Motion to Dismiss the Amended Complaint, each of the claims asserted against Kurland is time-barred under the applicable statutes of limitations and repose. In opposing Kurland's Motion, FHFA offers no explanation for why it delayed until September 2, 2011—*years* after the expiration of the statutes of limitations and repose that govern the claims against Kurland, and *years* after the filing of numerous other actions based on virtually identical allegations to those raised here—to commence this action on behalf of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac").

While FHFA contends that its substantial delay does not bar its claims due to two theories of tolling, neither alleged basis can save its untimely claims. First, FHFA's reliance on the "extender" provision set forth in the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. § 4617(b)(12) ("Section 12"), to toll the statutes of limitations and repose governing its claims, is misplaced. By its plain language, Section 12 only extends statutes of limitations governing state-law contract or tort claims, none of which are alleged against Kurland. Second, under this Court's well-reasoned decisions, there can be no tolling pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), because no named plaintiff in any prior class action had standing to sue as to the securities at issue here.

FHFA's state law claims must be dismissed for an additional reason. The doctrine of legislative jurisdiction bars a state from applying its laws to regulate an out-of-state party in the absence of minimum contacts with that party. Yet FHFA does not dispute that the Complaint fails to include *any* allegations purporting to

link Kurland either to Virginia or the District of Columbia.  In fact, the Complaint alleges only that:  (1) Kurland served until September 7, 2006 as an executive of Countrywide Financial Corporation and an executive and board member of CWABS, CWALT, and CWMBS, all of which are Delaware corporations with their principal places of business in California (Compl. ¶¶ 33, 78); (2) Kurland served on three executive committees during his tenure at Countrywide Financial Corporation (*id.* ¶¶ 282-84); (3) Kurland lives in California (*id.* at ¶ 33); and (4) Kurland signed seven Registration Statements for certain Countrywide MBS (*id.*).  FHFA cannot establish that Virginia or the District of Columbia can legitimately exercise legislative jurisdiction over Kurland in connection with FHFA's claims on the basis of such scant allegations.

For the reasons stated herein and for the additional reasons set forth in the reply memoranda submitted by the Countrywide Defendants[1] and each of the Individual Defendants in support of their respective motions to dismiss, which Kurland hereby joins and incorporates by reference to the extent they relate to him, all of the claims against Kurland must be dismissed with prejudice.

## II. FHFA'S CLAIMS AGAINST KURLAND ARE ALL TIME-BARRED AND MUST BE DISMISSED

### A. *FHFA Concedes that the Applicable Statutes of Limitations and Repose Expired Prior to the Commencement of this Action*

FHFA brings four claims against Kurland:  (i) violation of Section 11 of the 1933 Act (First Cause of Action); (ii) violation of Section 15 of the 1933 Act (Third Cause of Action); (iii) violation of Section 13.1-522(C) of the Virginia Securities Act (Fifth Cause of Action); and (iv) violation of Section 31-5606.05(c) of the D.C. Securities Act (Seventh Cause of Action).  In opposing Kurland's Motion to

---

[1] The Countrywide Defendants are Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Capital Markets, LLC, Countrywide Securities Corporation, CWALT, Inc., CWABS, Inc., and CWMBS, Inc.

Dismiss, FHFA concedes that, absent tolling, the statutes of limitations and repose governing all of its claims against Kurland expired *years* prior to its commencement of the instant action on September 2, 2011.  (Opp. at 5-7.)

### B. Tolling Cannot Save FHFA's Time-Barred Claims

Given FHFA's indisputable delay in filing suit, it seeks to salvage its claims by relying on two theories of tolling:  (1) that the "extender" provision in HERA tolled the applicable statutes of limitations and repose; and (2) that the applicable limitations and repose periods were tolled under *American Pipe* based on the earlier filing of a putative class action.  Neither doctrine excuses FHFA's tardiness.

First, as to HERA, FHFA concedes that the timeliness of its claims depends upon this Court's adoption of FHFA's expansive interpretation of Section 12 of HERA.  (*Id.* at 4.)  But by its plain language, the "extender" provision makes no reference to its application to, or effect upon, statutes of repose, federal claims, or *sui generis* statutory claims.  Accordingly, for this reason and for the additional reasons set forth in detail in Section II of the Countrywide Defendants' Reply Memorandum, which Kurland joins and incorporates by reference to the extent applicable to him, the "extender" provision only extends statutes of limitations applicable to state-law contract or tort claims.  Because FHFA brings only 1933 Act claims and state-law statutory claims against Kurland, and because Section 12 does not extend statutes of repose, FHFA's claims remain time-barred.

Second, FHFA's claims cannot be saved by *American Pipe* tolling.  In fact, FHFA does not dispute that *American Pipe* tolling is not available here unless the Court reverses itself and adopts a theory of class action standing and tolling that it has rejected in several prior, notable decisions.  *See, e.g.*, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F.Supp.2d 1164, 1169 (C.D. Cal. 2011) (citing cases). FHFA provides no basis for the Court to depart from its well-supported view that *American Pipe* tolling only preserves claims brought in connection with securities that a named plaintiff actually purchased.  *Id.*  As set forth in Kurland's opening

memorandum, because none of the named plaintiffs in any of the prior class actions on which FHFA purports to rely purchased any of the securities at issue here, FHFA cannot benefit from *American Pipe* tolling. (Motion at 11-12.)

Finally, FHFA's Section 15 claim against Kurland is time-barred under the one-year statute of limitations even if *American Pipe* tolling were available here, which, under this Court's previous rulings, it clearly is not. While Kurland recognizes that this Court has rejected this argument in previous cases, this case is distinguishable because, here, FHFA explicitly alleges that it "reasonably and justifiably relied on the named plaintiffs in *Luther*, *Washington State*, and *Maine State*" to protect its rights, and the rights of Fannie Mae and Freddie Mac. (Compl. ¶ 272.) But FHFA does not, and cannot, explain how it could have justifiably relied on any of those actions to toll the statute of limitations for its Section 15 claim where the named plaintiffs in the other actions either *never asserted* a Section 15 claim against Kurland, or affirmatively *dropped* that claim against him. FHFA cannot have it both ways: it cannot claim the benefit of class action tolling of the Section 15 claim by alleging that it relied upon the named plaintiffs, while simultaneously disclaiming the effect of those same plaintiffs' decisions to forego their pursuit of the Section 15 claim.

FHFA also offers no response for how a Section 15 claim, which requires FHFA to prove that officers exercised actual control and participated in the day-to-day affairs of the alleged primary violator, concerns the same evidence, memories, and witnesses as a Section 11 claim, which imposes strict liability on officers for signing allegedly misleading registration statements. (Opp. at 8-9, n. 5.) As a result, and as set forth in Kurland's opening memorandum, FHFA's alleged reliance

on the prior class actions to toll the statute of limitations for a future Section 15 claim against Kurland could not be reasonable or justified.[2]

### III. FHFA'S FAILURE TO PLEAD ANY FACTS ESTABLISHING KURLAND'S CONTACTS WITH VIRGINIA OR THE DISTRICT OF COLUMBIA REQUIRES DISMISSAL OF THE STATE-LAW CLAIMS

FHFA does not dispute that its Amended Complaint, spanning over two hundred pages and nearly six hundred paragraphs, fails to contain a single allegation that Kurland had any contacts with Virginia or the District of Columbia. In the absence of facts establishing such contacts, neither Virginia nor the District of Columbia can legitimately exercise legislative jurisdiction over Kurland without running afoul of the Due Process Clause, and thus the claims under those states' blue-sky laws must be dismissed.

#### A. The Due Process Clause Requires a State to Have Sufficient Contacts with an Out-of-State Party in Order to Regulate his Conduct

According to FHFA, the contention that "a state's ability to apply its laws to a particular subject is circumscribed by the Due Process Clause," is a concept "which [the Individual Defendants] refer to as 'legislative jurisdiction.'" (Opp. at 10.) But far from a novel concept or theory, as FHFA appears to suggest, a state's legislative jurisdiction must be assessed to ensure that the state's application of its laws to the facts of a case does not offend due process. *See, e.g., American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*, 189 F.Supp.2d 1319 (M.D. Fla. 2001) (granting plaintiffs' motion for summary judgment where

---

[2] Additionally, for the reasons set forth in Section I.A of the Countrywide Defendants' Reply, FHFA cannot avail itself of the doctrine set forth in *United States v. Summerlin*, 310 U.S. 414 (1940), which held that the United States government is not bound by state statutes of limitations and repose. FHFA brings the instant suit in its capacity as a conservator over Fannie Mae and Freddie Mac, and *not* as a federal agency acting in its governmental capacity. (*See* Opp. to CW Defendants' Motion to Dismiss at 42-43.)

application of Defendant County's ordinance violated due process in the absence of sufficient contacts between plaintiff and the County).

FHFA argues in its Opposition that Kurland and the other Individual Defendants are attempting to "turn their routine personal jurisdiction arguments into an attack on 'legislative jurisdiction.'" (Opp. at 10.)  FHFA claims that, according to the Individual Defendants, the "due process inquiries for legislative jurisdiction and personal jurisdiction are *exactly the same*." (*Id.* at 11 (emphasis added) (citing cases that purportedly distinguish between the two concepts).)  This is a classic "straw man" argument:  It attributes to Kurland a position that he never took simply to allow FHFA an opportunity to refute the position.

Kurland neither contends that legislative jurisdiction is identical to personal jurisdiction, nor that one inquiry supplants the other.  Rather, as Kurland makes clear in his opening memorandum, courts, including the Ninth Circuit, have instructed that the legislative jurisdiction inquiry "often *parallels* the analysis of whether the state would have personal jurisdiction over a party in the context of a judicial proceeding." *Gerling Global Reinsurance Corp. of Am. v. Low*, 296 F.3d 832, 839 (9th Cir. 2002) (emphasis added), *judgment reversed on other grounds sub nom., American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003).

Indeed, the parallels between the two inquiries are well-established.  The Fourth Circuit in *Adventure Communications, Inc. v. Kentucky Registry of Election Fin.*, 191 F.3d 429 (4th Cir. 1999), for example, explained that "there is substantial overlap in the analysis employed in determining the presence of each kind of jurisdiction," and that "although not identical, judicial and legislative jurisdiction are determined pursuant to like guidelines." *Id.* at 436-37.  Finding the "idea of 'contacts' between the [Defendants] and [the state at issue] to be of great significance—indeed, primary significance—when analyzing legislative jurisdiction," the court closely analyzed evidence of the contacts to determine whether the state's exercise of legislative jurisdiction would be proper. *Id.* at 436-

48. *Accord American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000) (holding that "a 'minimum contacts' inquiry is necessary for determining whether the County's exercise of legislative jurisdiction, in this case, offends due process").

The Ninth Circuit has endorsed this contacts-focused inquiry. In *Gerling*, the Court explained that the legislative jurisdiction jurisprudence falls into distinct categories, including the precise category at issue here—*i.e.*, the purported regulation by a state of out-of-state parties—and it laid out the "minimum contacts" standard governing the category. *See* 296 F.3d at 839 (citing *Adventure Commc'ns*, 191 F.3d at 432 and *American Charities*, 221 F.3d at 1213). Accordingly, FHFA bears the burden of pleading facts establishing, at the very least, minimum contacts between Kurland and either Virginia or the District of Columbia. FHFA's Complaint fails to allege that Kurland has *any* such contacts.

### B. FHFA Concedes its Failure to Plead Facts Establishing Contacts Between Kurland and Virginia or the District of Columbia

In an attempt to salvage its plainly deficient state-law claims against Kurland, FHFA contends that a state's contacts with an individual defendant are simply irrelevant "[s]o long as a state is sufficiently connected to the transaction or conduct at issue such that application of its law is not arbitrary or fundamentally unfair." (Opp. at 13-14.) FHFA's analysis, however, does not comport with the law. As an initial matter, FHFA conflates the different inquiries for the different categories of cases involving legislative jurisdiction laid out by the *Gerling* Court. As discussed above, the *Gerling* Court explained that the "different categories" of "legislative jurisdiction cases" "each proscrib[e] a certain type of legislative enactment." 296 F.3d at 839. Where, as here, a state seeks to regulate an out-of-state party, the contacts between the state and the party must be assessed. *Id.* at 839-40. That inquiry is distinct from the inquiry that courts employ to determine whether a state may "apply its substantive law to affect the nature of the transaction [at issue]." *Id.*

at 841 (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308, 313 (1981) (employing a standard that assesses whether the state has a "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair")). Thus, FHFA misconstrues the standard that applies to the particular issue presented here.

Moreover, *Allstate* and the other cases relied upon by FHFA arise in a factually and legally distinguishable context, and do not provide a basis for the Court to ignore FHFA's pleading deficiencies. In *Allstate,* the Supreme Court, as well as each of the courts below, assessed the contacts between the party and the *forum state* within the context of deciding whether to apply that forum state's law. *See* 449 U.S. at 307-20. (*See also* Opp. at 13 (citing *Sullivan v. Oracle Corp.*, 662 F.3d 1265 (9th Cir. 2011) (evaluating contacts to determine whether to apply the forum state's law)).) Similarly, in *McCluney v. Jos. Schlitz Brewing Co.*, 649 F.2d 578 (8th Cir. 1981), the court evaluated the appellant's contacts with the forum state in deciding whether to apply that state's law. In doing so, the court explained that, as in *Allstate*, where the precise issue is whether forum law could be applied, the "basic rule is the state whose law is chosen to control a case must have a substantial factual contact with the parties or the transaction giving rise to the litigation." *Id.* at 581 (citing *Allstate*, 449 U.S. at 313). Thus, those cases evaluated contacts within the specific context of deciding whether forum law should apply.

Here, in contrast, the application of forum law is simply not at issue, nor is the selection of forum law versus the law of a state with a competing interest in the action. Instead, the precise question before the Court is whether Virginia or the District of Columbia, neither of which is the forum state, can regulate Kurland's conduct as an out-of-state party where FHFA has pled *no* facts linking Kurland with either location. *Allstate* does not purport to answer this question. Nor does it alter the minimum contacts inquiry that courts employ when faced with facts similar to those at issue here.

1  FHFA further persists that "the solicitation, offer, purchase, payment, and/or
2  sale of a security within a state create sufficient contacts to allow application of that
3  state's law." (Opp. at 15.) But none of the cases that FHFA relies upon stands for
4  the proposition that a state's securities laws broadly sweep under its purview any
5  and all parties even in the absence of contact between the party and that state.
6  FHFA's own citation to *Parvin v. Davis Oil Co.*, 524 F.2d 112 (9th Cir. 1975),
7  proves the point. In *Parvin*, the court looked at the actions taken directly by the
8  defendants, evaluating "whether appellees *by their actions* brought themselves
9  within the scope of the California Securities Law." *Id.* at 117 (emphasis added).
10 Contrary to FHFA's claims, even when securities are involved, it still bears the
11 burden to plead facts establishing contacts between Kurland and Virginia or the
12 District of Columbia. And, while FHFA further claims that legislative jurisdiction is
13 essentially irrelevant because states have the unfettered ability to impose liability on
14 anyone who allegedly controls securities violations (Opp. at 16), it continues to
15 ignore the constraints the Due Process Clause imposes. Due process circumscribes
16 a state's ability to apply its laws to regulate the conduct of an out-of-state party,
17 without regard for the *type* of law the state seeks to impose.
18  Finally, FHFA seeks to construct a new "reasonable expectation" standard,
19 urging the Court to ignore FHFA's failure to plead legislative jurisdiction because
20 the federal securities laws "informed [the Individual Defendants] that they would be
21 subject to each state's regulation of fraud in connection with securities sales that
22 occurred within the state's borders." (Opp. at 17.) FHFA's standard is not the law.
23 FHFA relies upon a statutory provision of the 1933 Act that sets forth the dual
24 federal and state regulation of securities transactions, as well as cases discussing the
25 parameters of federal preemption of states' blue-sky laws. (*Id.* (citing 15 U.S.C.
26 § 77r and cases).) But the fact that states retain certain authority to regulate
27 securities transactions does not, as FHFA urges, *supplant* the fundamental
28 principle—rooted in the Due Process Clause—that states cannot exercise legislative

CALDWELL
LESLIE &
PROCTOR

-9-
REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

1 jurisdiction over an out-of-state party without first establishing that the out-of-state
2 party had sufficient contacts with the state.
3       Kurland's original Motion to Dismiss the Complaint, filed on June 8, 2012,
4 moved to dismiss the state-law claims on legislative jurisdiction grounds nearly
5 identical to those raised herein. (Dkt. No. 127.) FHFA subsequently amended its
6 Complaint on June 29, 2012. (Dkt. No. 132.) Even after having received ample
7 notice of Kurland's basis for dismissal, however, FHFA still could not muster any
8 facts to include in its Amended Complaint that establish Kurland's contacts with
9 either Virginia or the District of Columbia. In light of FHFA's continued failure to
10 plead the requisite contacts, Kurland respectfully requests that the Court dismiss the
11 state-law claims alleged against him with prejudice.

## IV. CONCLUSION

13       For the foregoing reasons, and for the reasons set forth in Kurland's opening
14 memorandum and all other Defendants' opening and reply memoranda, Kurland
15 respectfully requests that the Court grant his motion to dismiss with prejudice.

17 DATED: September 7, 2012      Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL
JEANNE A. FUGATE
JENNIFER LEE HONG

By       /s/
    JEANNE A. FUGATE
Attorneys for Defendant
STANFORD L. KURLAND