Brian E. Pastuszenski (*pro hac vice*)
bpastuszenski@goodwinprocter.com
John B. Daukas (*pro hac vice*)
jdaukas@goodwinprocter.com
Brian C. Devine (State Bar No. 222240)
bdevine@goodwinprocter.com
**GOODWIN PROCTER LLP**
53 State Street
Boston, Massachusetts  02109
Telephone:  617-570-1000
Facsimile:   617-523-1231

Daniel J. Tyukody (State Bar No. 123323)
dtyukody@goodwinprocter.com
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, CA  90017
Telephone:  213-426-2500
Facsimile:  213-623-1673

*Attorneys for Defendants*
Countrywide Financial Corp., Countrywide
Home Loans, Inc., Countrywide Capital
Markets, LLC, Countrywide Securities
Corp., CWABS, Inc., CWALT, Inc., and
CWMBS, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 11-ML-02265-MRP (MANx) **REPLY MEMORANDUM IN SUPPORT OF COUNTRYWIDE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** Date:          September 19, 2012 Time:          11:00 a.m. Courtroom:   12 Judge:         Hon. Mariana R. Pfaelzer |
| FEDERAL HOUSING FINANCE AGENCY, as conservator for THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORP., Plaintiff, v. COUNTRYWIDE FINANCIAL CORPORATION, *et al.*, Defendants. | Case No. 12-CV-01059-MRP (MANx) |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT .......................................................................................... 6

I.      IN THIS CASE, FHFA IS NOT "THE GOVERNMENT" .......................... 6

      A.      The *Summerlin* Doctrine Does Not Apply ............................. 7

      B.      FHFA Is Not Entitled To The "Benefit Of The Doubt" ....................... 12

II.     THE EXTENDER STATUTE DOES NOT APPLY TO COUNTS I-VII ..... 13

      A.      The Extender Statute Does Not Apply To Statutes Of Repose ........... 13

            1.      FHFA Misreads The Plain Language Of The Statute ................ 14

                 a.      The Headings Of Unrelated Statutes Are Not Probative . 14

                 b.      Imprecise Passing References In Unrelated Cases Are Irrelevant ......................................................................... 18

                 c.      FHFA Wrongly Disregards The References To "Accrual" .................................................................... 19

                 d.      The Extender Statute Does Not Modify Substantive Rights ........................................................................... 21

            2.      Excluding Statutes Of Repose Is Consistent With The Apparent Purpose Of The Extender Statute ............................... 23

            3.      Applying The Extender Statute To Statutes Of Repose Would Conflict With The Text And Purpose Of Repose Periods .......... 29

      B.      The Extender Statute Does Not Apply To Federal Law Claims ........... 33

            1.      FHFA Misreads The Plain Language Of The Statute ................ 33

            2.      Applying The Extender Statute To Federal Law Claims Would Lead To Absurd Results ...................................................... 39

            3.      There Is No Evidence That Congress Intended To Abandon The Policies Reflected In Federal Limitations/Repose Periods ........ 41

      C.      The Extender Statute Applies Only To Tort And Contract Claims ....... 41

      D.      Even If The Extender Statute Applied To The FHFA's 1933 Act Claims, Many Of Them Nevertheless Would Be Time-Barred ........... 43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.    *AMERICAN PIPE* TOLLING DOES NOT APPLY ......................................45

IV.    THE FANNIE MAE TOLLING AGREEMENT IS IRRELEVANT.............47

CONCLUSION ...........................................................................................48

# TABLE OF AUTHORITIES

Page(s)

CASES

*Aaron v. SEC*,
446 U.S. 680 (1980)................................................................23, 24

*Abrams v. Ciba Specialty Chem. Corp.*,
659 F. Supp. 2d 1225 (S.D. Ala. 2009) .................................17

*AG Route Seven P'ship v. United States*,
57 Fed. Cl. 521 (Fed. Cl. 2003) ...............................................7

*Albany Eng'g Corp. v. FERC*,
548 F.3d 1071 (D.C. Cir. 2008)...............................................25

*Albillo-De Leon v. Gonzales*,
410 F.3d 1090 (9th Cir. 2005) .................................................20

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
824 F. Supp. 2d 1164 (C.D. Cal. 2011).............................45, 46

*Altria Group, Inc. v. Good*,
555 U.S. 70 (2008)...................................................................30

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974).................................................................45

*Ameristar Fin. Servicing, Co. v. United States*,
75 Fed. Cl. 807 (Fed. Cl. 2007) ...............................................7

*APL Co. Pte. Ltd. v. UK Aerosols Ltd.*,
582 F.3d 947 (9th Cir. 2009) ...................................................16

*Archer v. Nissan Motor Acceptance Corp.*,
550 F.3d 506 (5th Cir. 2008) ...................................................28

*Badaracco v. Comm'r*,
464 U.S. 386 (1984).................................................................12

*Balam-Chuc v. Mukasey*,
547 F.3d 1044 (9th Cir. 2008) ...................................14, 21, 27, 28

*Baldain v. Am. Home Mortg. Servicing, Inc.*,
2010 WL 2606666 (E.D. Cal. June 28, 2010) ........................................29

*Bautista v. Star Cruises*,
396 F.3d 1289 (11th Cir. 2005) .............................................................15

*Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*,
474 U.S. 361 (1986).................................................................................24

*Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*,
131 S. Ct. 2188 (2011)........................................................................32, 41

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004).................................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................44

*Beverly Cmnty. Hosp. Ass'n v. Belshe*,
132 F.3d 1259 (9th Cir. 1997) ...............................................................15

*Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*,
331 U.S. 519 (1947).................................................................................16

*Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certificates, Series AR1*,
2010 WL 3815796 (W.D. Wash. Sept. 28, 2010) ..................................46

*BP Am. Prod. Co. v. Burton*,
549 U.S. 84 (2006)...................................................................................12

*Bradley v. United States*,
410 U.S. 605 (1973).................................................................................17

*Bresson v. C.I.R.*,
213 F.3d 1173 (9th Cir. 2000) ...............................................................22

*Cada v. Baxter Healthcare Corp.*,
920 F.2d 446 (7th Cir. 1990) .............................................................27, 29

*Cal. State Legislative Bd., United Trans. Union v. Dep't of Transp.*,
400 F.3d 760 (9th Cir. 2005) .................................................................25

*Campbell v. Allied Van Lines Inc.*,
410 F.3d 618 (9th Cir. 2005) .................................................................16

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*,
   132 S. Ct. 1670 (2012)............................................................................32

*Carter v. United States*,
   530 U.S. 255 (2000)..............................................................................16

*Casey v. Merck & Co., Inc.*,
   722 S.E.2d 842 (Va. 2012) ...................................................................47

*Caviness v. Derand Res. Corp.*,
   983 F.2d 1295 (4th Cir. 1993) ..............................................................18

*Cent. Bank of Denver, N.A. v. Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994)..............................................................................32

*Chumney v. U.S. Repeating Arms Co.*,
   196 F.R.D. 419 (M.D. Ala. 2000).........................................................22

*City of Joliet v. New West, L.P.*,
   562 F.3d 830 (7th Cir. 2009) ................................................................25

*City of L. A. v. U.S. Dept. of Commerce*,
   307 F.3d 859 (9th Cir. 2002) ................................................................39

*Comm'r v. Lundy*,
   516 U.S. 235 (1996)..............................................................................36

*Compton Unified Sch. Dist. v. Addison*,
   598 F.3d 1181 (9th Cir. 2010) ........................................................ 39-40

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
   132 S. Ct. 1414 (2012)..........................................................................32

*Cunningham v. Ins. Co. of N. Am.*,
   530 A.2d 407 (Pa. 1986).......................................................................47

*Davis v. Birr, Wilson & Co., Inc.*,
   839 F.2d 1369 (9th Cir. 1988) ..............................................................31

*Deutsch v. Turner Corp.*,
   324 F.3d 692 (9th Cir. 2003) ................................................................15

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*,
   2012 WL 1798997 (C.D. Cal. Feb. 17, 2012) ......................................45

*Dir. Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry
    Dock Co.*,
    514 U.S. 122 (1995)......................................................................................24

*Dobbs v. Anthem Blue Cross & Blue Shield*,
    600 F.3d 1275 (10th Cir. 2010) ...............................................................17

*Estate of Kennedy v. Bell Helicopter Textron, Inc.*,
    283 F.3d 1107 (9th Cir. 2002) ..................................................................27

*FDIC v. Former Officers & Dirs. Of Metro. Bank*,
    884 F.2d 1304 (9th Cir. 1989) ..................................................................12

*FDIC v. Glickman*,
    450 F.2d 416 (9th Cir. 1971) ......................................................................7

*FDIC v. Haines*,
    3 F. Supp. 2d 155 (D. Conn. 1997) ............................................................7

*FDIC v. Hinch*,
    879 F. Supp. 1099 (N.D. Okla. 1995) ......................................................42

*FDIC v. O'Melveny & Myers*,
    61 F.3d 17 (9th Cir. 1995) ...........................................................................8

*FDIC v. Wabick*,
    335 F.3d 620 (7th Cir. 2003) ....................................................................42

*FDIC v. Zibolis*,
    856 F. Supp. 57 (D.N.H. 1994) .................................................................42

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
    2012 WL 1570856 (S.D.N.Y. May 4, 2012)....................................*passim*

*FHFA v. UBS Americas, Inc.*,
    2012 WL 2400263 (S.D.N.Y. June 26, 2012).........................................44

*Fields v. Legacy Health Sys.*,
    413 F.3d 943 (9th Cir. 2005) ....................................................................27

*Finkel v. Stratton Corp.*,
    962 F.2d 169 (2d Cir. 1992) ...............................................................18, 44

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
    554 U.S. 33 (2008).....................................................................................16

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*,
   770 F. Supp. 2d 618 (S.D.N.Y. 2011) .................................................................44

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992).................................................................................................34

*Gale v. First Franklin Loan Servs.*,
   2012 WL 3764700 (9th Cir. Aug. 31, 2012) ...............................................*passim*

*Genessee Co. Emps. Ret. Sys. v. Thornburg Mortg. Secs. Trust*,
   825 F. Supp. 2d 1082 (D.N.M. 2011)....................................................................46

*Goad v. Celotex Corp.*,
   831 F.2d 508 (4th Cir. 1987) .................................................................................27

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)........................................................................................ 35-36

*Hanford Downwinders Coalition, Inc. v. Dowdle*,
   71 F.3d 1469 (9th Cir. 1995) .................................................................................33

*Harbison v. Bell*,
   556 U.S. 180 (2009)...............................................................................................34

*Herron v. Fannie Mae*,
   2012 WL 1476051(D.D.C. Apr. 30, 2012).............................................................9

*Herron v. Fed. Nat'l Mortg. Ass'n*,
   2012 WL 1476051 (D.D.C. 2012).............................................................*passim*

*Holdsworth v. Strong*,
   545 F.2d 687 (10th Cir. 1976) ...............................................................................42

*Humphreys v. Nager*,
   962 F. Supp. 347 (E.D.N.Y. 1997) .........................................................................8

*In re Boesky Sec. Litig.*,
   882 F. Supp. 1371 (S.D.N.Y. 1995) ......................................................................22

*In re Colonial Ltd. P'ship*,
   854 F. Supp. 64 (D. Conn. 1994)...........................................................................47

*In re Countrywide Fin. Corp. Sec. Litig.*,
   2009 WL 943271 (C.D. Cal. Apr. 6, 2009)......................................................44, 45

*In re Craftmatic Sec. Litig.*,
   890 F.2d 628 (3d Cir. 1990) ............................................................... 42

*In re Direxion Shares ETF Trust*,
   279 F.R.D. 221 (S.D.N.Y. 2012) ......................................................... 46

*In re Egebjerg*,
   574 F.3d 1045 (9th Cir. 2009) ................................................. 16-17, 18

*In re Elscint, Ltd. Sec. Litig.*,
   674 F. Supp. 374 (D. Mass. 1987) ....................................................... 47

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
   2005 WL 3704688 (S.D. Tex. Dec. 5, 2005) ....................................... 48

*In re Fed. Nat'l Mortg. Ass'n Sec., & Deriv., ERISA Litig.*,
   725 F. Supp. 2d 169 (D.D.C. 2010) ..................................................... 24

*In re Finisar Corp. Deriv. Litig.*,
   2012 WL 2873844 (N.D. Cal. July 12, 2012) ...................................... 29

*In re Lehman Bros. Sec. & ERISA Litig.*,
   800 F. Supp. 2d 477 (S.D.N.Y. 2011) ................................................. 14

*In re Morgan Stanley Mortg. Pass-Through Certs. Litig.*,
   810 F. Supp. 2d 650 (S.D.N.Y. 2011) ................................................. 46

*In re Mun. Mortg. & Equity, LLC, Secs.& Deriv. Litig.*,
   2012 WL 2450161 (D. Md. June 26, 2012) .......................................... 44

*In re Rufener Constr., Inc.*,
   53 F.3d 1064 (9th Cir. 1995) ............................................................... 34

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2012 WL 3155693 (N.D. Cal. Aug. 2, 2012) ....................................... 46

*In re United Ins. Mgmt., Inc.*,
   14 F.3d 1380 (9th Cir. 1994) ............................................................... 18

*In re Wells Fargo Mortg.-Backed Certs. Litig.*,
   2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) ...................................... 46

*In re WorldCom Sec. Litig.*,
   496 F.3d 245 (2d Cir. 2007) ............................................................... 18

*Johnson v. Aljian,*
    490 F.3d 778 (9th Cir. 2007) ................................................................27

*Joseph v. Wiles*,
    223 F.3d 1155 (10th Cir. 2000) ...........................................................46

*Joslin v. Grossman,*
    107 F. Supp. 2d 150 (D. Conn. 2000) .................................................42

*Kawashima v. Holder,*
    615 F.3d 1043 (9th Cir. 2010) .............................................................34

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997) .............................................................................29

*Kruse v. Wells Fargo Home Mortg., Inc.,*
    2006 WL 1212512 (E.D.N.Y. May 3, 2006) .......................................47

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
    501 U.S. 350 (1991) .......................................................................18, 28

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,*
    2006 WL 560589 (N.D. Ill. Feb. 28, 2006) ........................................29

*Ledo Fin. Corp. v. Summers*,
    122 F.3d 825 (9th Cir. 1997) .................................................................7

*Leisnoi, Inc. v. Stratman,*
    154 F.3d 1062 (9th Cir. 1998) ........................................................34, 42

*Liberty Mortg. Banking, Ltd. v. Fed. Home Loan Mortg. Corp.,*
    822 F. Supp. 956 (E.D.N.Y. 1993) .......................................................8

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    597 F.3d 84 (2d Cir. 2010) ..................................................................27

*Mass. Bricklayers and Masons Funds v. Deutsche Alt-A Secs.,*
    273 F.R.D. 363 (E.D.N.Y. 2011) .........................................................46

*McCann v. Hy-Vee, Inc.,*
    663 F.3d 926 (7th Cir. 2011) ....................................................19, 21, 32

*McDonald v. Sun Oil Co.,*
    548 F.3d 774 (9th Cir. 2008) .........................................................*passim*

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  722 F. Supp. 2d 1157 (C.D. Cal. 2010) ........................................................43, 44

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  2011 WL 4389689 (C.D. Cal. May 5, 2011) ................................................45, 46

*Merck & Co. v. Reynolds*,
  130 S. Ct. 1784 (2010) ........................................................................................19

*Midstate Horticultural Co. v. Pa. R.R. Co.*,
  320 U.S. 356 (1943) ............................................................................................21

*Mills Music, Inc. v. Snyder*,
  469 U.S. 153 (1985) ............................................................................................36

*Morton v. Mancari*,
  417 U.S. 535 (1974) ............................................................................................30

*Munoz v. Ashcroft*
  339 F.3d 950 (9th Cir. 2003) .........................................................................27, 28

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010) ......................................................46

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
  551 U.S. 644 (2007) ............................................................................................29

*Nat'l Credit Union Admin. Bd. v. RBS Securities, Inc.*,
  2012 WL 3028803 (D. Kan. July 25, 2012) ................................................*passim*

*Natural Res. Def. Council v. U.S.E.P.A.*,
  915 F.2d 1314 (9th Cir. 1990) ............................................................................15

*Nevada ex rel. Hager v. Countrywide Home Loans Servicing, LP*,
  812 F. Supp. 2d 1211 (D. Nev. 2011) ...................................................................8

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................................10

*NLRB v. Amax Coal Co.*,
  453 U.S. 322 (1981) ............................................................................................17

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*,
  416 U.S. 267 (1974) ............................................................................................32

*Norris v. Wirtz*,
   818 F.2d 1329 (7th Cir. 1987) .......................................................... 31-32

*Northstar Fin. Advisors, Inc. v. Schwab Inv.*,
   615 F.3d 1106 (9th Cir. 2010) ............................................................ 15

*O'Melveny & Myers v. FDIC*,
   512 U.S. 79 (1994) .................................................................... 7, 8, 25

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004) ................................................ 21-22, 27, 29

*Palmer v. Stassinos*,
   236 F.R.D. 460 (N.D. Cal. 2006) ....................................................... 47

*Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev.*,
   963 F. Supp. 1 (D.D.C. 1997) .............................................................. 8

*Perpetual Fin. Corp. v. United States*,
   61 Fed. Cl. 126 (Fed. Cl. 2004) ........................................................... 7

*Peter-Palican v. Govt. of Com. Of N. Mar. Is.*,
   673 F.3d 1013 (9th Cir. 2012) ........................................................... 34

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*,
   534 F.3d 779 (D.C. Cir. 2008) ............................................................. 8

*Public Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
   714 F. Supp. 2d 757 (S.D.N.Y 2010) ............................................ 11, 46

*Resolution Trust Corp. v. Olson*,
   768 F. Supp. 283 (D. Ariz. 1991) .................................................. 13, 22

*Risetto v. Plumbers & Steamfitters Local 343*,
   94 F.3d 597 (9th Cir. 1996) .............................................................. 10

*Rodriguez v. Holder*,
   619 F.3d 1077 (9th Cir. 2010) ........................................................... 39

*Rodriguez v. United States*,
   480 U.S. 522 (1987) ..................................................................... 24, 27

*RTC v. Gardner*,
   798 F. Supp. 790 (D.D.C. 1992) ........................................................ 42

*Russ v. Wilkins,*
  624 F.2d 914 (9th Cir. 1980) ................................................................. 16

*Russell v. Merit Sys. Prot. Bd.,*
  324 F. App'x 872 (Fed. Cir. 2008) ........................................................ 37

*Russello v. United States,*
  464 U.S. 16 (1983) ............................................................................ 32-33

*S.E.C. v. Seaboard Corp.,*
  677 F.2d 1301 (9th Cir. 1982) ............................................................. 18

*Sch. Dist. No. 1J, Multnomah County v. AC & S, Inc.,*
  5 F.3d 1255 (9th Cir. 1993) ................................................................. 27

*Schock v. FDIC,*
  118 F. Supp. 2d 165 (D.R.I. 2000) ........................................................ 7

*SEC v. Mudd,*
  2012 WL 3306961 (S.D.N.Y. Aug. 10, 2012) ....................................... 1

*SEC v. Willis,*
  777 F. Supp. 1165 (S.D.N.Y. 1991) .................................................... 11

*SEC v. Wyly,*
  788 F. Supp. 2d 92 (S.D.N.Y. 2011) ................................................... 28

*Short v. Belleville Shoe Mfg. Co.,*
  908 F.2d 1385 (7th Cir. 1990) ............................................................. 31

*Silvers v. Sony Pictures Entm't, Inc.,*
  402 F.3d 881 (9th Cir. 2005) ............................................................... 42

*Singh v. Gonzales,*
  499 F.3d 969 (9th Cir. 2007) ............................................................... 15

*Smith v. FDIC,*
  61 F.3d 1552 (11th Cir. 1995) ............................................................. 42

*Sosa v. Alvarez-Machain,*
  542 U.S. 692 (2004) ............................................................................ 36

*Sprint Telephony PCS, L.P. v. County of San Diego,*
  543 F.3d 571 (9th Cir. 2008) ............................................................... 36

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........................................................27, 45

*Stonehedge/Fasa-Tex. JDC v. Miller*,
  110 F.3d 793 (5th Cir. 1997) ....................................................................22

*Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*,
  288 F.3d 405 (9th Cir. 2002) ..........................................................20, 22, 26

*United States v. Beszborn*,
  21 F.3d 62 (5th Cir. 1994) ...........................................................................7

*United States v. California*,
  507 U.S. 746 (1993)....................................................................................11

*United States v. Cha*,
  837 F.2d 392 (9th Cir. 1988) ...................................................................16

*United States v. City & County*,
  446 F. Supp. 2d 1140 (E.D. Cal. 2006) ...................................................11

*United States v. City of Palm Beach Gardens*,
  635 F.2d 337 (5th Cir. 1981) ...................................................................43

*United States v. Ely*,
  142 F.3d 1113 (9th Cir. 1997) ....................................................................7

*United States v. Global Mortg. Funding, Inc.*,
  2008 WL 5264986 (C.D. Cal. May 15, 2008).........................................11

*United States v. Heffner*,
  85 F.3d 435 (9th Cir. 1996) .........................................................................7

*United States v. Liquidators of European Fed. Credit Bank*,
  630 F.3d 1139 (9th Cir. 2011) ..................................................................10

*United States v. Lutheran Med. Ctr.*,
  524 F. Supp. 421 (D. Neb. 1981) ..............................................................43

*United States v. Maciel-Alcala*,
  612 F.3d 1092 (9th Cir. 2010) ..................................................................36

*United States v. Morton*,
  467 U.S. 822 (1984).....................................................................................34

*United States v. Peoples Household Furnishings, Inc.,*
  75 F.3d 252 (6th Cir. 1996) ................................................................. 11

*United States v. Summerlin,*
  310 U.S. 414 (1940) ...................................................................*passim*

*United States v. Talley,*
  16 F.3d 972 (8th Cir. 1994) ................................................................. 25

*United States v. Tri-No Enters., Inc.,*
  819 F.2d 154 (7th Cir. 1987) ............................................................... 43

*United States v. Uzzell,*
  648 F. Supp. 1362 (D.D.C. 1986) ....................................................... 28

*Valentine-Johnson v. Roche,*
  386 F.3d 800 (6th Cir. 2004) ............................................................... 10

*Walters v. Edgar,*
  163 F.3d 430 (7th Cir. 1998) ............................................................... 46

*Westwood Apex v. Contreras,*
  644 F.3d 799 (9th Cir. 2011) ............................................................... 34

*Whaley v. Belleque,*
  520 F.3d 997 (9th Cir. 2008) ............................................................... 10

*Whitman v. Am. Trucking Ass'n, Inc.,*
  531 U.S. 457 (2001) ............................................................................. 32

*Wigod v. Wells Fargo Bank, N.A.,*
  673 F.3d 547 (7th Cir. 2012) ............................................................... 25

*Williams v. Fed. Nat'l Mortg. Ass'n,*
  2006 WL 1774252 (D.D.C. June 26, 2006) .......................................... 8

*Wilson v. Garcia,*
  471 U.S. 261 (1985) ............................................................................. 29

*Wilson v. Saintine Exploration & Drilling Corp.,*
  872 F.2d 1124 (2d Cir. 1989) .............................................................. 42

*Yniguez v. Arizona,*
  939 F.2d 727 (9th Cir. 1991) ............................................................... 10

**STATUTES**

12 U.S.C. § 1716b .................................................................................................8

12 U.S.C. § 4617(i)(5) ..........................................................................................36

12 U.S.C. § 4617(i)(7)(A)(iii) ...............................................................................36

12 U.S.C. § 4617(a)(1) ..........................................................................................36

12 U.S.C. § 4617(a)(3)(B)(i) .................................................................................36

12 U.S.C. § 4617(b)(2) ..........................................................................................23

12 U.S.C. § 4617(b)(12) .........................................................................14, 17, 29, 40

12 U.S.C. § 4617(b)(12)(A) ...................................................................................33

12 U.S.C. § 4617(b)(12)(A)(i)-(ii) ...........................................................35, 38, 42

12 U.S.C. § 4617(b)(13) ........................................................................................36

12 U.S.C. § 4617(b)(13)(A) ...................................................................................38

12 U.S.C. § 4617(d)(8)(A) .....................................................................................36

12 U.S.C. § 4617(d)(8)(C)(i) ..................................................................................36

12 U.S.C. § 4617(d)(8)(E) .....................................................................................36

12 U.S.C. § 4617(e)(1) ...........................................................................................36

15 U.S.C. § 77m .....................................................................................................29

28 U.S.C. § 1441(b) ...............................................................................................25

28 U.S.C. § 1658(b)(1) ..........................................................................................19

28 U.S.C. § 1658(b)(2) ..........................................................................................19

28 U.S.C. § 2415 ....................................................................................................43

49 U.S.C. § 16(3)(e) ...............................................................................................21

**REGULATIONS AND RULES**

17 C.F.R. § 229.512(a)(1)-(2) (2005) ...........................................................44

17 C.F.R. § 230.430B(f)(2) .........................................................................45

Fed. R. Civ. Pro. 54(b) .................................................................................22

**OTHER AUTHORITIES**

1A, 2A Norman J. Singer, Sutherland on Statutes and Statutory Construction (7th ed. 2007) ...............................................................................................15

**PRELIMINARY STATEMENT**

FHFA's claims under the Securities Act of 1933 ("1933 Act"), the Virginia Securities Act, and the District of Columbia Securities Act (Count I-VII) are time-barred and must be dismissed.  FHFA concedes in its Opposition that, absent some legal doctrine that extended or suspended the applicable limitations or repose periods, these periods expired long before this action was filed.  Instead, FHFA's principal argument is that its claims are timely under the "extender" provision of the Housing and Economic Recovery Act of 2008 ("HERA").  But each of the arguments in FHFA's Opposition should be rejected, for the following reasons[1]:

***In This Case, FHFA Is <u>Not</u> "The Government"***:  FHFA argues that it is entitled to special privileges and presumptions applicable to the federal government with respect to the timeliness of its claims.  More specifically, FHFA contends that it is "an agency of the Federal government" and is entitled to "the benefit of the doubt" as to the scope of the extender statute, and alternatively is not subject to state law statutes of limitations or repose at all.  In this case, however, FHFA is *not* the government.  Instead, as FHFA itself successfully argued in *Herron v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 1476051, at *5-8 (D.D.C. Apr. 30, 2012), when as here FHFA acts as conservator of Fannie Mae (or Freddie Mac), FHFA is not a governmental entity but

---

[1] On August 10, 2012, the district court denied the defendants' motions to dismiss in *SEC v. Mudd*, 2012 WL 3306961 (S.D.N.Y. Aug. 10, 2012), an enforcement action against former top executives at Fannie Mae.  In this ruling, the court held that the SEC had adequately alleged facts showing that Fannie Mae knowingly concealed its exposure to inherently risky subprime and reduced documentation "Alt-A" loans, including by failing to disclose $28.5 billion in loans purchased from Countrywide's subprime division.  *Id.* at *2, 9, 11.  The district court also referenced in its decision a Fannie Mae internal staff meeting at which "it was reported that lender-selected low documentation loans from Countrywide's Fast & Easy program performed as poorly as some of the loans that were included in FNMA's Alt-A disclosures."  *Id.* at *12.  That loan program was the product of an "alliance agreement" that Fannie Mae and Countrywide earlier had entered into.  *Id.* at *3.  Like the other background materials referenced in the Countrywide Defendants' opening brief (Op. Br. at 7-11), these facts show that Fannie Mae knew the risks associated with the loans that backed the MBS it purchased, contrary to its allegations in this suit.  FHFA offers no response to these facts in its Opposition, other than to claim they are "irrelevant."  Opp. at 13 n.6.

1   merely stands in the shoes of these private, government-sponsored corporations.

2   FHFA is therefore subject to the same defenses to which those entities would be sub-

3   ject if they sued on their own behalf.  In FHFA's own words in its motion to dismiss

4   the *Herron* case:  "FHFA as Conservator . . . is *not* the United States," RJN Ex. 112 at

5   7, and "does not act in a governmental capacity."  *Id.* at 21.  Thus, aside from the lim-

6   ited benefits expressly conferred by the extender statute, FHFA is not entitled to any

7   special rights or privileges that may otherwise be afforded to the government in its

8   sovereign capacity.

9       ***The Extender Statute Does Not Apply To Statutes Of Repose***:  FHFA con-

10  cedes in its Opposition that the plain language of the extender statute refers only to

11  "statutes of limitations," not "statutes of repose."  FHFA further concedes that "stat-

12  utes of limitations" and "statutes of repose" are fundamentally different—in form,

13  substance, and effect.  Yet despite these undisputed differences, FHFA argues that the

14  phrase "statute of limitations" in the extender statute means "statutes of limitations

15  *and repose*," notwithstanding the statutory plain language to the contrary.  In an at-

16  tempt to support this assertion, FHFA cites (1) the headings of unrelated statutes that

17  contain the word "limitations" yet include a repose period in their text, and (2) cases

18  in unrelated contexts where courts in passing have made imprecise references to stat-

19  utes of repose as "statutes of limitations."  But these citations do not support FHFA's

20  argument.  First, the headings of statutes are not part of the legislation, and do not re-

21  flect every last detail of the statutory text.  At most, a heading may be used to inter-

22  pret *ambiguities* that exist in the statute that bears the heading.  But a heading may not

23  be used to create ambiguities where none exist, and the heading of one statute may

24  not be used to interpret the *text* of an entirely different statute (such as the extender

25  statute).  Here, the plain language of the extender statute is clear, and FHFA cannot

26  ignore the plain text by pointing to the headings of unrelated statutes.  FHFA's reli-

27  ance on imprecise passing references to "statutes of limitations" in other cases is simi-

28  larly improper.  None of the cases FHFA cites considered the proposition that FHFA

seeks to support here (*i.e.*, the phrase "statute of limitations" can mean "statute of limitations *and repose*"), and they do not displace the well-settled case law (which FHFA does not dispute) that holds that "statutes of limitations" and "statutes of repose" are different as a matter of law. Indeed, FHFA's core textual argument is refuted by an *amicus curiae* brief recently filed by the United States government (in its sovereign capacity) in *Waldburger v. CTS Corp.*, No. 12-1290 (4th Cir., filed Aug. 16, 2012) (RJN Ex. 113). In *Waldburger*, the United States takes *exactly the opposite position* from FHFA in regard to a substantially similar statute, explaining that "the term 'statute of limitations' has never been thought to encompass [repose] provisions of the type at issue here."

FHFA also essentially ignores the reference to "accrual" in the text of the extender statute. But FHFA does not dispute that statutes of *limitations* are typically measured from the date of "accrual," or that statutes of *repose* run without regard for whether a claim has "accrued." The fact that the extender statute sets a "statute of limitations" period that runs from the date of "accrual" thus further confirms that the extender statute does not apply to statutes of repose.

FHFA next argues that the "purpose" of the extender statute warrants interpreting it so that it will apply to statutes of repose. But it is inappropriate to interpret statutory text based on a statute's supposed "purpose" when that text is clear (as it is here). Even where consideration of statutory purpose is appropriate (which is not the case here), excluding repose periods from the scope of the extender statute is not inconsistent with HERA's supposed purpose (to give FHFA more time to investigate and assert its claims) because statutes of repose run regardless of the amount of time a plaintiff may have had to pursue its claims. Interpreting the extender statute consistently with its plain language to apply only to statutes of limitations gives FHFA more time to investigate and pursue its claims than it otherwise would have under state law limitations periods, but treats Fannie Mae and Freddie Mac (into whose shoes FHFA has stepped) like every other private entity in regard to statutes of repose and also

does not interfere with the important legislative policies that underlie these substantive provisions.  In short, FHFA's argument boils down to this:  because the supposed purpose of the extender statute was "to give FHFA more time," then any dispute should be resolved in favor of giving FHFA more time.  But this ignores the plain text of the statute, disregards the important policies underlying statutes of repose, and violates the Supreme Court's instructions as to how statutory text is to be interpreted.

***The Extender Statute Does Not Apply To Federal Law Claims***:  FHFA contends that the extender statute applies to federal law claims because the term "any action" in the statute's preamble supposedly indicates that it applies to all claims in every case.  But FHFA is inappropriately reading the term "any action" in isolation and ignoring the text that follows, which qualifies and limits the preamble.  When viewed as an integrated whole (as it must be), the extender statute plainly applies only to state law claims for which there is a limitations "period applicable under State law."  But federal law claims (such as the 1933 Act claims here) are governed by *federal* limitations periods, and thus there is no "period applicable under State law."  In order to read the extender statute as applying to federal law claims, FHFA must give the word "applicable" two different meanings when it appears in different places within the extender statute.  According to FHFA, "applicable" means "that applies" in its first use ("the *applicable* statute of limitations with regard to any action brought by the Agency as conservator . . . "), but means "that *may* apply" or "*if* it applies" when it appears for a second time just a few lines later ("the period *applicable* under State law").  Such inconsistency is forbidden by well-settled canons of statutory construction.  Moreover, FHFA nowhere addresses the fact that Congress expressly referred to "Federal law" *eight times* throughout HERA, but chose not to do so in the extender statute.  This omission was intentional, and confirms that the extender statute applies only to state law claims.

FHFA also argues that the title of HERA's statute of limitations revival provision (which references state law claims) means that the extender statute must apply to

both federal and state law claims.  But the relevant language of the extender and revival provisions is *exactly the same*—both refer to the "period applicable under State law."  Again, FHFA's proposed reading of the extender statute as applying to federal law claims would require giving different meanings to the word "applicable" when it appears in the extender provision and then when it appears just a few lines later in the revival provision.  Because there is no dispute that this phrase in the revival provision refers to the period "that applies" under state law, then the same phrase must mean the same thing in the extender provision.  This in turn necessarily means the extender statute applies only to state law claims, because that is the only kind of claim for which there is a "period applicable under State law."  FHFA also fails to explain why Congress would choose to *extend* both federal and state law claims, but *revive* only state law fraud claims.  Why not also revive fraud claims under Section 10(b) of the Securities Exchange Act of 1934?  Because there would be no reason for such inconsistent treatment, the only logical conclusion is that *neither* the extender statute nor the revival statute applies to federal law claims.  In addition, FHFA does not deny that applying the extender statute to federal law claims would in some cases result in FHFA having *less* time than other potential plaintiffs.  FHFA tries to characterize such results as "intentional," but any such results clearly would be at odds with both the text and apparent purpose of the extender statute.  Because courts will not interpret statutes in a way that would lead to illogical results (which is what FHFA's proposed reading would yield), the extender statute must be read in accordance with its plain language as applying only to state law claims, for which there will always be a "period applicable under State law."

> **The Extender Statute Does Not Apply To "Sui Generis" Statutory Claims**:
FHFA also does not dispute that its claims under the federal and state securities laws are neither "tort" nor "contract" claims, but rather *sui generis* statutory claims.  Instead, FHFA again tries to rely on the "any action" preamble language to argue that such statutory claims are covered as well.  But in doing so FHFA again ignores the

plain language of the extender statute and improperly reads the "any action" language in isolation from the limiting text that follows.

*FHFA's Remaining Arguments Also Lack Merit*:  Even if the extender statute did apply to FHFA's federal law claims and to statutes of repose (and it does not), FHFA's Section 11 claims nevertheless would be barred by the statute of repose as to 24 of the 86 MBS that Fannie Mae and Freddie Mac bought.  FHFA argues that these claims are timely because the three-year repose period should be measured from the date of the prospectus supplement, not the date of the shelf registration statement. But FHFA ignores this Court's prior rulings in which it held precisely the opposite. In addition, FHFA asserts that its 1933 Act claims were tolled under *American Pipe*, yet it concedes that such tolling is inapplicable under this Court's prior rulings and identifies no persuasive reason why the Court should depart from those rulings.  And the tolling agreement between Fannie Mae and the Countrywide Defendants does not alter this result.  FHFA effectively concedes that this tolling agreement did not suspend applicable statutes of repose, and because the extender statute does not apply to federal law or statutory claims the 1933 Act and District of Columbia Securities Act one-year limitations periods expired before this tolling agreement took effect.

For all of these reasons, Counts I-VII of the Amended Complaint are time-barred and must be dismissed with prejudice.

## ARGUMENT

## I.   IN THIS CASE, FHFA IS NOT "THE GOVERNMENT."

Throughout its Opposition, FHFA emphasizes that it is an "agency of the Federal Government," with "extensive powers" and "a public purpose," and argues that it is therefore entitled to special rights and privileges with respect to statutes of limitations and repose that private plaintiffs do not receive.  Opp. at 8, 20-21, 30, 42-44. But in this litigation, however, *FHFA is not the government*.  Rather, in its role as conservator, FHFA is merely standing in the shoes of two private entities—and, aside from the limited benefits conferred to it by the plain language of the HERA extender

1  statute, FHFA is not entitled to any special rights or privileges that those private enti-

2  ties would not have had if they brought this action on their own.

3      **A.**     **The *Summerlin* Doctrine Does Not Apply.**

4      FHFA first argues that its Virginia and District of Columbia Securities Act

5  claims are timely because, as "an agency of the Federal Government," "FHFA is not

6  bound by state statutes of limitations or repose" under *United States v. Summerlin*,

7  310 U.S. 414 (1940).  Opp. at 42-43.  That argument is baseless and must be rejected.

8      By its own terms, the *Summerlin* doctrine applies only where the United States

9  government or a federal agency is "acting in its governmental capacity."  *Summerlin*,

10  310 U.S. at 417.  It is well-settled, however, that a federal agency acting as conserva-

11  tor or receiver for a private institution "steps into the shoes" of the failed institution,

12  and "is not the United States."  *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85-86

13  (1994).  Rather than asserting its own rights as a federal agency, it is asserting the

14  rights of the private institution.  Thus, "[i]n its capacity as [conservator or] receiver,"

15  the agency "stands as a private, non-governmental entity and is not the Government."

16  *United States v. Beszborn*, 21 F.3d 62, 68 (5th Cir. 1994).[2]  As a result, "any defense

17

18  _____

[2] *Accord United States v. Ely*, 142 F.3d 1113, 1121 (9th Cir. 1997) ("the FDIC did not sue the defendants as the United States," but "only as the receiver of a failed institu-

19  tion"); *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 829 (9th Cir. 1997) ("[T]he FDIC is simply acting as receiver of the failed [savings and loan].  It is not pursuing the in-

20  terests of the United States."); *United States v. Heffner*, 85 F.3d 435, 439 (9th Cir. 1996) ("[t]he RTC in its corporate character as receiver is not the federal sovereign");

21  *FDIC v. Glickman*, 450 F.2d 416, 418 (9th Cir. 1971) (as receiver, "FDIC stands in the shoes of the insolvent bank," and is not acting as the government); *Perpetual Fin.*

22  *Corp. v. United States*, 61 Fed. Cl. 126, 145 (Fed. Cl. 2004) ("When acting in its cor- porate capacity, the FDIC is an agency of the United States.  When acting in its re-

23  ceivership capacity, the FDIC is not an agency of the United States."); *AG Route Sev- en P'ship v. United States*, 57 Fed. Cl. 521, 534 (Fed. Cl. 2003) ("In its capacity as

24  receiver," "the FDIC's attendant role herein is tantamount to that of a private party, and not the government *per se.*"); *Ameristar Fin. Servicing, Co. v. United States*, 75

25  Fed. Cl. 807, 812 (Fed. Cl. 2007) ("as its conservator, the FDIC 'stepped into the shoes' of Superior Federal . . . and was not acting as the United States"); *Schock v.*

26  *FDIC*, 118 F. Supp. 2d 165, 169-70 (D.R.I. 2000) ("As a receiver, the FDIC does not act on behalf of the United States government. . . .  Instead, it acts on behalf of the

27  failed bank. . ."); *FDIC v. Haines*, 3 F. Supp. 2d 155, 165 (D. Conn. 1997) ("The FDIC as receiver 'steps into the shoes' of the failed institution.  It is not pursuing the

28  interest of the Federal Government.").

1   good against the original party is good against the [conservator or] receiver,"

2   *O'Melveny*, 512 U.S. at 86, including statutes of limitations and repose.[3]  Here, FHFA

3   filed this lawsuit solely in its capacity as conservator for two private entities, Fannie

4   Mae and Freddie Mac.[4]  The *Summerlin* doctrine is therefore inapplicable.

5        Indeed, *FHFA itself* has argued that it is *not* a "government actor" in its capaci-

6   ty as conservator for Fannie Mae and Freddie Mac.  In *Herron v. Fannie Mae*, No. 10-

7   00943 (RMC) (D.D.C. 2010), an employment lawsuit alleging violations of constitu-

8   tional rights by Fannie Mae (known as a "*Bivens*" claim), FHFA intervened in its ca-

9   pacity as conservator for Fannie Mae and argued that the case should be dismissed be-

10  cause neither it nor Fannie Mae were governmental actors:

11       Fannie Mae is a *private entity*, and appointment of a Conservator to oversee it

12       has not transformed Fannie Mae into a government actor. . . .  A conservator or

13       receiver . . . *steps into the shoes of the private institution* for the duration of the

14       conservatorship. . . .  [It] does not transform the private financial institution into

15       a government actor for the duration of conservatorship. . . .  Likewise, upon the

16       inception of the Fannie Mae conservatorship, *the FHFA Conservator assumed*

17   [3] *Accord FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995) ("a receiver oc-
18   cupies no better position than that which was occupied by the person or party for
     whom he acts . . . and any defense good against the original party is good against the
19   receiver," subject only to certain equitable exceptions not relevant here).

20   [4] It is well-settled that Fannie Mae and Freddie Mac are private entities.  *See, e.g.*, 12
     U.S.C. § 1716b (Fannie Mae is "a Government-sponsored private corporation"); *Pi-*
21   *relli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*, 534 F.3d 779, 783,
     787 n.4 (D.C. Cir. 2008) ("[i]nitially established as a public entity, Fannie Mae was
22   privatized in 1968," and "has shareholders, directors, and officers like other non-
     governmental corporations"; "Freddie Mac . . . was originally created as a private en-
     tity"); *Nevada ex rel. Hager v. Countrywide Home Loans Servicing, LP*, 812 F. Supp.
23   2d 1211, 1217 (D. Nev. 2011) ("Fannie Mae is a private, for-profit entity, that is
     owned by its private shareholders"); *Williams v. Fed. Nat'l Mortg. Ass'n*, 2006 WL
24   1774252, at *4 n.3 (D.D.C. June 26, 2006) ("it is well-established that Fannie Mae is
     a private, for-profit entity"); *Humphreys v. Nager*, 962 F. Supp. 347, 351 (E.D.N.Y.
25   1997) ("[s]ince 1989, Freddie Mac has had the attributes of a private corporation not a
     governmental entity"; "[p]rivate parties like Freddie Mac . . . are not state actors");
26   *Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 963 F. Supp. 1, 7 (D.D.C. 1997)
     ("Fannie Mae is not a government agency," it "is a private corporation, owned by its
27   private shareholders"); *Liberty Mortg. Banking, Ltd. v. Fed. Home Loan Mortg.
     Corp.*, 822 F. Supp. 956, 958 (E.D.N.Y. 1993) ("Since 1989, Freddie Mac has the at-
28   tributes of a private corporation, not a government agency.").

*Fannie Mae's private attributes*.  Fannie Mae did not thereby become a government actor for purposes of constitutional claims, and *when FHFA acted in its capacity as Conservator it was not functioning as a government actor for such purposes*.  Indeed, *courts have repeatedly held that when a conservator or receiver acts in such capacity it is not a government actor*. . . .

RJN Ex. 111 at 1-2, 18-19; *accord id*. at 19-21 (citing "decisions holding that a government agency exercising its . . . authority as conservator or receiver is properly deemed a *non-government-actor*"), 26 ("[t]he conservatorship/receivership model . . . cannot survive if entities in conservatorships or receiverships (*or conservators or receivers*) are deemed to be federal actors with all the rights and limitations of the government") (emphases added).  Thus, even according to FHFA itself, "FHFA as Conservator—like the FDIC as Receiver—is *not* the United States."  RJN Ex. 112 at 7.[5]

And FHFA's arguments that it is not acting as a "government actor" in its capacity as conservator were successful.  In *Herron v. Fannie Mae*, 2012 WL 1476051, at *5-8 (D.D.C. Apr. 30, 2012), Judge Collyer adopted FHFA's position in its entirety:

Thus, like the FDIC when it serves as a conservator or receiver of a private entity, *FHFA when it serves as conservator 'steps into the shoes' of the private corporation*, Fannie Mae. . . .  Fannie Mae was not converted into a government entity when it was placed into conservatorship; instead, FHFA stepped into the shoes of Fannie Mae.  *FHFA as conservator for Fannie Mae is not a government actor*. . . .  Fannie Mae was a private entity; when FHFA took over as conservator of Fannie Mae, *it stepped into Fannie Mae's private role*.  In sum,

---

[5] *Accord* RJN Ex. 112 at 1 (arguing "conservators and receivers succeed to the private status of the entity," and "'step[] into the shoes' of the pre-existing institution"), 4 (same), 5 (Plaintiff "makes no attempt to refute the established legal principle that conservators and receivers are *not* the United States"), 6 ("Dispositive Case Law Confirms That the Conservator Adopts the Role of a Non-Governmental Actor"), 11 ("many cases hold[] that the acts of a federal conservator . . . simply are not properly considered acts of the federal government"); 20 ("the Conservator succeeded to the private attributes of Fannie Mae"), 21 ("the Conservator does not act in a governmental capacity").

1    *FHFA as conservator of Fannie Mae is not a government actor*, and Ms. Her-

2    ron's *Bivens* claim will be dismissed.

3    (Emphasis added.)

4        Given FHFA's own arguments and the court's ruling in *Herron*, FHFA's 180-

5    degree-opposite argument here—that a federal conservator *is* a "government actor"

6    for purposes of the *Summerlin* doctrine—is at the very least disingenuous.  And the

7    Court should preclude FHFA from taking this blatantly inconsistent position under the

8    doctrine of judicial estoppel.  As the Supreme Court held in *New Hampshire v. Maine*,

9    532 U.S. 742, 749 (2001), "where a party assumes a certain position in a legal pro-

10   ceeding, and succeeds in maintaining that position, [it] may not thereafter, simply be-

11   cause [its] interests have changed, assume a contrary position."[6]

12       FHFA does not mention *Herron* anywhere in its Opposition.[7]  Instead, it argues

13   that *Summerlin* has been applied "where a government agency is acting for a public

14   purpose pursuant to a federal statute authorizing it to assert claims previously held by

15   a private entity."  Opp. at 43.  But *none* of the five cases cited by FHFA involves a

16   government agency acting as *conservator of a private entity*.  Rather, in each of those

17   cases, the government was asserting its own rights, in its sovereign capacity, not

18   standing in the shoes of a private corporation and pursuing claims on its behalf.[8]  In

_____

19   [6] *Accord United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139,

20   1147-49 (9th Cir. 2011) (federal government estopped from arguing that claimants'
     legal challenges could not be raised in ancillary proceeding, when it had successfully

21   argued in main proceeding that opposite was true); *Whaley v. Belleque*, 520 F.3d 997,
     1002 (9th Cir. 2008) (state government estopped from taking position before federal

22   habeas court contrary to that advocated in state court); *Valentine-Johnson v. Roche*,
     386 F.3d 800, 811-12 (6th Cir. 2004) (U.S. Air Force estopped from taking position in

23   federal court where it had argued different position to agency); *Yniguez v. Arizona*,
     939 F.2d 727, 738-39 (9th Cir. 1991) (state attorney general estopped from seeking to

24   intervene in appeal where he won dismissal from case in lower court); *Risetto v.
     Plumbers & Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996) ("judicial estop-

25   pel is not confined to inconsistent positions taken in the same litigation").

     [7] Not bringing *Herron* to the Court's attention is all the more glaring given that

26   FHFA's position in *Herron* was raised in the *UBS* case just three months ago.  *See*
     RJN Ex. 114 at 2, 4.

27   [8] *See United States v. Global Mortg. Funding, Inc.*, 2008 WL 5264986, at *3 (C.D.

28   Cal. May 15, 2008) (government enforcing prohibitions of Telemarketing Act "on be-
     half of the Federal Trade Commission"); *United States v. City & County of S.F.*, 446

the briefs it filed in *Herron*, FHFA criticized the plaintiff for citing "facially inapplicable cases, neither of which involves an institution . . . in conservatorship or receivership." RJN Ex. 112 at 2. Yet that is precisely what FHFA has done here.

In fact, the only case FHFA cites that actually involves a private entity—*United States v. California*, 507 U.S. 746, 756-59 (1993)—refutes FHFA's argument. In *California*, the Supreme Court held that *Summerlin* did not apply where the government was pursuing an equitable subrogation claim, *i.e.*, where it stood in the shoes of a private contractor it had indemnified. Because the contractor's claim was time-barred by the state statute of limitations before the government sued, so too was the government's subrogation claim. *Id.* at 758-59. If *Summerlin* does not apply where the government is suing to recover *public* funds paid on behalf of a private contractor it indemnified, it certainly does not apply where a government agency is asserting the claims of a *private* entity solely as that entity's conservator.[9]

Moreover, FHFA ignores the fact that its argument would render the HERA extender statute superfluous. If *Summerlin* did apply to actions filed by FHFA in its capacity as conservator for Fannie Mae and Freddie Mac, and FHFA was not bound by state statutes of limitations, then there would be no need for Congress to enact a statute to *extend* those limitations periods for FHFA's benefit. The very existence of the extender statute proves that FHFA is bound by state statutes of limitations in its role as conservator for Fannie Mae and Freddie Mac.

---

F. Supp. 2d 1140, 1146 (E.D. Cal. 2006) (in suit to recover costs of fighting fire in national forest, "the United States is acting as the sovereign, as the caretaker of public lands"); *SEC v. Willis*, 777 F. Supp. 1165, 1175 (S.D.N.Y. 1991) (SEC action to enforce securities laws); *United States v. Peoples Household Furnishings, Inc.*, 75 F.3d 252, 255-56 (6th Cir. 1996) (in suit to collect money judgment, "the United States was acting in a governmental or sovereign capacity").

[9] FHFA also incorrectly argues that it should be considered a government actor for purposes of *Summerlin* merely because it is "acting for a public purpose." Opp. at 43. As FHFA itself argued in *Herron*, the "assertion that the Fannie Mae conservatorship has a public mission is irrelevant, because all federal . . . conservatorships and receiverships have a public mission," yet courts have repeatedly declined to treat other federal conservators as government actors. RJN Ex. 112 at 9 (capitalization omitted).

## B.     FHFA Is Not Entitled To The "Benefit Of the Doubt."

FHFA also argues that, if there is any ambiguity in the scope of the HERA extender statute, it is entitled to "the benefit of the doubt" because "[s]tatutes of limitations sought to be applied to bar rights of the Government[] must receive a strict construction in favor of the Government." Opp. at 30. Once again, this argument rests on a plainly false premise. Here, as FHFA itself admitted in *Herron*, it is not asserting "rights of the Government" and "does not act in a governmental capacity." RJN Ex. 112 at 21; *accord Herron*, 2012 WL 1476051, at *5-8. FHFA is thus not entitled to "the benefit of the doubt" by virtue of a special privilege that applies to the government when it brings suit in its sovereign capacity.

As with its *Summerlin* argument, FHFA again cites cases that did not involve a federal agency acting as conservator or receiver of a private entity. *See BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 96 (2006) ("*the sovereign* is given the benefit of the doubt if the scope of the statute is ambiguous") (emphasis added); *Badaracco v. Comm'r*, 464 U.S. 386, 391 (1984) (federal government sued for tax refund); *FDIC v. Former Officers & Dirs. Of Metro. Bank*, 884 F.2d 1304, 1306 (9th Cir. 1989) (FDIC suing "in its corporate capacity," not "its capacity as receiver"). The only conservatorship case cited by FHFA is *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 2012 WL 3028803, at *17 (D. Kan. July 25, 2012) ("*NCUA Kansas*"), and in that case the fact that federal conservators are not treated as government actors was neither raised by the defendants nor addressed by the court.[10]

In short, FHFA's attempt to cloak Fannie Mae and Freddie Mac with the special rights and privileges of the federal government is without merit and must be rejected. Indeed, FHFA's reliance on those special rights and privileges only underscores the

---

[10] Moreover, even the government in its sovereign capacity is at most entitled to "the benefit of the doubt," and then only where the relevant statute of limitations is "ambiguous." *Burton*, 549 U.S. at 96. Here, however, there is no ambiguity. By its plain language, the extender statute does not apply to statutes of repose, federal law claims, or *sui generis* statutory claims. *See infra*, at 13-43.

1    weakness of its interpretation of the scope of the extender statute.

2    **II.        THE EXTENDER STATUTE DOES NOT APPLY TO COUNTS I-VII.**

3            FHFA does not dispute that its 1933 Act, Virginia Securities Act, and District

4    of Columbia Securities Act claims (Counts I-VII) are time-barred absent application

5    of some statutory or case law doctrine that would extend or suspend the applicable

6    limitations and repose periods. *See* Op. Br. at 12-16; Opp. at 12-13. FHFA's princi-

7    pal argument is that its claims are "timely under HERA," because the extender statute

8    supposedly "affords FHFA three years from the date of conservatorship to bring suit

9    . . . irrespective of any other provision of law." Opp. at 13-15. But the extender stat-

10   ute cannot save FHFA's untimely claims, because: (1) it applies only to statutes of

11   *limitations*, not statutes of *repose*; (2) it does not apply to federal law claims, such as

12   1933 Act claims; and (3) it applies only to common law "tort" and "contract" claims,

13   not *sui generis* statutory securities claims like those asserted here.

14           **A.        The Extender Statute Does Not Apply To Statutes Of Repose.**

15           As other courts have held with respect to the virtually identical wording of the

16   FIRREA and FCUA extender statutes, the HERA extender statute does not apply to

17   statutes of repose. *See Nat'l Credit Union Admin. Bd. v. RBS Securities, Inc.*, No. 11-

18   CV-5887-GW (JEMx) (C.D. Cal.), RJN Ex. 55 at 14 (Dec. 19, 2011), RJN Ex. 56 at

19   1-2 (Jan. 30, 2012); *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, No. 11-

20   CV-6521-GW (JEMx) (C.D. Cal.), RJN Ex. 59 at 6-8 (Mar. 15, 2012); *Resolution*

21   *Trust Corp. v. Olson*, 768 F. Supp. 283, 285 (D. Ariz. 1991).[11] FHFA's arguments to

22   the contrary are meritless, and the cases it principally cites—*Fed. Hous. Fin. Agency*

23   *v. UBS Ams., Inc.*, 2012 WL 1570856 (S.D.N.Y. May 4, 2012), and *NCUA Kansas*—

24   should not be followed.

25   _____

26   [11] Judge Wu's tentative rulings have now been confirmed, including his ruling that the FCUA extender statute does not apply to statutes of repose. *See Goldman, Sachs*, RJN Ex. 116 (Sept. 4, 2012); *RBS Securities*, RJN Ex. 115 (Mar. 15, 2012); RJN Ex.

27   117 (Mar. 15, 2012 Hearing Tr.) at 7, 13, 30-31. In confirming his prior rulings, Judge Wu specifically noted that he had reviewed and considered Judge Cote's opin-

28   ion in *UBS*. *See Goldman, Sachs*, RJN Ex. 116 at 1.

1.     **FHFA Misreads The Plain Language Of The Statute.**

FHFA concedes that the plain language of the extender statute refers explicitly to "*statute[s] of limitations*" and makes no mention whatsoever of "statutes of repose." *See* 12 U.S.C. § 4617(b)(12); Opp. at 16.  FHFA also concedes that "[t]here is a *crucial distinction* in the law between 'statutes of limitations' and 'statutes of repose,'" *Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1048 (9th Cir. 2008) (emphasis added), and that it is well-settled that these two types of statutes are "fundamentally different," *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. 2011), and "distinct legal concepts with distinct effects." *McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008).  Opp. at 18 (noting distinction is "undisputed").

Despite these fundamental differences that it does not dispute, FHFA nonetheless argues that the term "statute of limitations" in the extender statute was actually intended to mean "statutes of limitations *and repose*," contending that "the term 'limitations' is commonly used to encompass both time restrictions."  Opp. at 18.  To try to support this argument that the Court should ignore the statutory plain language, FHFA refers the Court to two groups of citations:  (1) statutes construed by courts to be statutes of repose that have headings containing the word "limitations" (or some variation thereof); and (2) cases that in passing and in entirely unrelated contexts make imprecise references to statutes of repose as "statutes of limitations."  *See* Opp. at 15-19, 21-22.  These citations do not support FHFA's reading of the statute.

a.     **The Headings Of Unrelated Statutes Are Not Probative**.

FHFA cites several statutes that have headings containing some form of the word "limitations"—*e.g.*, "Limitations of actions," "Time limitations on civil actions," "Statute of limitations," "Time limit for exercise of right"—and that courts have construed to be (or include) a statute of repose.  FHFA then argues that these headings show that the word "limitations" is "routinely use[d]" to encompass both statutes of limitations and statutes of repose.  Opp. at 15-19.  FHFA is wrong.

<u>First</u>, the Ninth Circuit has held that "statutory titles are not part of the legisla-

tion." *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007).[12] As such, they are of limited utility. A title or heading "cannot limit the plain meaning of the text. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase." *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1120 (9th Cir. 2010). And although a heading may be used to aid interpretation when a statute is ambiguous, "they cannot *create* an ambiguity where none otherwise would exist." *Natural Res. Def. Council v. U.S.E.P.A.*, 915 F.2d 1314, 1321 (9th Cir. 1990) (emphasis in original). "[W]here the meaning of a statutory provision is clear," courts "do not rely upon the headings and titles of sections in such circumstances." *Deutsch v. Turner Corp.*, 324 F.3d 692, 707-08 (9th Cir. 2003).[13] Here, there is no ambiguity. As FHFA itself admits, there is a long, unbroken line of cases explicitly distinguishing "statutes of limitations" from "statutes of repose," *see* Op. Br. at 19-22, and FHFA may not manufacture an ambiguity here merely by pointing to a handful of statutory captions with the word "limitations" in them. FHFA's attempt to rely on titles and headings of other statutes in order to ignore the extender statute's plain language is unsupportable and inappropriate.[14]

      <u>Second</u>, even where it may be appropriate to consider statutory titles and headings (which it is not here), captions are relevant only to aid interpretation of ambiguities *in the specific statute that bears the caption*—not to interpret the text of an entirely different and unrelated statute. *See, e.g.*, *Carter v. United States*, 530 U.S. 255, 267

---

[12] *Accord Beverly Cmnty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1266 n.6 (9th Cir. 1997) ("titles of acts are not part of the law"); 1A, 2A Norman J. Singer, Sutherland on Statutes and Statutory Construction §§ 21:4 ("[a] caption is not part of a statute"), 47:03 ("[t]he descriptive heading . . . does not constitute part of the statute and is not controlling regarding its construction or interpretation") (7th ed. 2007).

[13] *Accord* 1A, 2A Singer, Statutory Construction §§ 18:07 ("[a] statute's title may be used only to resolve existing doubts or ambiguities . . . not to create ambiguity where none existed"), 47:14 ("where the meaning of the act is clear and unambiguous without resort to [headings], courts will not consider them"); *Bautista v. Star Cruises*, 396 F.3d 1289, 1298 n.12 (11th Cir. 2005) ("section heading . . . may not be used as a means of creating ambiguity when the body of the act itself is clear").

[14] FHFA does not even *assert* that there is an ambiguity here. *See* Opp. at 15-16 (relying on "plain language" of extender statute).

(2000) ("the title of a statute is of use only when it sheds light on some ambiguous word or phrase *in the statute itself*"); *United States v. Cha*, 837 F.2d 392, 394 (9th Cir. 1988) ("[a] statute's title may also aid in construing any ambiguities *in the statute*"); *Russ v. Wilkins*, 624 F.2d 914, 922 (9th Cir. 1980) ("title may be helpful in interpreting ambiguities *within the context of the Act*") (emphases added); *accord APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 953 (9th Cir. 2009) ("words used in one statute . . . do not necessarily denote an identical meaning when used in another and different statute").  Here, the statutes cited by FHFA are wholly unrelated to HERA— they were enacted by different Congresses, at different times, and in different contexts.  As a result, their headings provide no insight into what Congress meant when it used the term "statute of limitations" in the HERA extender statute in 2008.

Third, the Supreme Court has warned that a statutory heading often "fails to refer to *all the matters* which the framers of that section wrote into the text," and that many matters reflected in the text are "frequently *unreflected* in the headings."  *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528 (1947) (emphasis added).  As such, "headings and titles are not meant to take the place of the detailed provisions of the text," and "do no more than indicate the provisions in a most general manner."  *Id.*; *accord Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 621 (9th Cir. 2005) (same).  Given the at best limited probativeness of statutory headings, the mere use of the word "limitations" in the *heading* of an unrelated statute containing a repose period does not mean that Congress intended the term "statute of limitations" to encompass statutes of repose in the *text* of the HERA extender statute.[15]  Rather, the proper way to interpret a statute's text is to "presume that when Congress legislates, it is aware of past judicial interpretations and practices," *In re Egebjerg*, 574 F.3d 1045, 1050 (9th Cir. 2009), and "uses familiar legal expressions in their familiar legal

---

[15] *Accord Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("a . . . heading cannot substitute for the operative text of the statute"); *Bhd. of R.R. Trainmen*, 331 U.S. at 528 (headings "cannot limit the plain meaning of the text").

1   sense," *Bradley v. United States*, 410 U.S. 605, 609 (1973).[16]  Here, as FHFA itself

2   concedes, it is well-settled that "statutes of limitations" are fundamentally different—

3   in both form and substance—from "statutes of repose."  *See* Opp. at 18.[17]

4        <u>Fourth</u>, FHFA conflates the term "statute of limitations" in the extender statute

5   with broader phrases like "time limit," "time limitations," "limitations of actions,"

6   and "limitations period" in the headings it cites.  Opp. at 16-19 & n.9.  These terms

7   are not the same, however, and cannot be used interchangeably as support for the no-

8   tion that "statute of limitations" means "statutes of limitations *and repose*."  Indeed,

9   in one case cited by FHFA, *Abrams v. Ciba Specialty Chem. Corp.*, 659 F. Supp. 2d

10  1225, 1233 (S.D. Ala. 2009), the district court held "there is an important difference

11  between the terms 'limitations period' and 'statute of limitations,'" and that it was

12  "the term 'limitations period'"—*not* "statute of limitations"—that "is commonly un-

13  derstood . . . to encompass traditional statutes of limitations as well as rules and stat-

14  utes of repose."  Here, however, the plain text of the HERA extender statute (and the

15  companion revival statute) refers to "the applicable *statute of limitations*."  12 U.S.C.

16  § 4617(b)(12).  Even if it were appropriate to look to the headings of unrelated stat-

17  utes to interpret the text of the HERA extender statute (and it is not), phrases like

18  "limitations period," "time limit," "time limitations," and "limitations of actions" in

19  these other statutes are broader than "statute of limitations," which is a specific term

20

21             [16] *Accord NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981) (where a term has a

22  "settled meaning under . . . the common law, a court must infer, unless the statute oth-
    erwise dictates, that Congress means to incorporate the established meaning"); *Dobbs*

23  *v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1282 (10th Cir. 2010) ("[w]hen
    Congress enacts a statute using a phrase that has a settled judicial interpretation, it is

24  presumed to be aware of the prior interpretation").

25  [17] For this reason, FHFA's assertion that there are no headings in the U.S. Code that
    use the term "statute of repose" (Opp. at 23) is a red herring.  The Court must apply

26  the well-established meaning of the language Congress actually used ("statute of limi-
    tations"), regardless of whether a related term ("statute of repose") appears elsewhere

27  in the Code.  In any event, the public law (RJN Ex. 89) and draft legislation identified
    in the Countrywide Defendants' opening brief (Op. Br. at 28-29) show that Congress

28  knew how to draft legislation that specifically addressed statutes of repose, yet it
    chose not to do so in the extender statute.

1   with a specific meaning that does not include "statutes of repose."[18]

2   **b.   Imprecise Passing References In Unrelated Cases Are Irrelevant**.

3   FHFA next cites some cases that have, in passing, described Section 13 of the

4   1933 Act as providing "one- and three-year statutes of limitations," or some variant

5   thereof.  *See* Opp. at 21-22 & n.11; *In re WorldCom Sec. Litig.*, 496 F.3d 245, 250 (2d

6   Cir. 2007).  *But none of these cases considered the issue FHFA raises here—i.e.*,

7   whether the term "statute of limitations" can be interpreted to include "statutes of re-

8   pose."  Rather, these cases are simply isolated examples of imprecise language in un-

9   related contexts,[19] thus providing no basis for interpreting the term "statute of limita-

10  tions" as used in the HERA extender statute.  And they certainly do not displace the

11  long line of cases—that FHFA does not dispute—holding that "statutes of limitations"

12  and "statutes of repose" are fundamentally different as a matter of law.[20]

---

13  [18] As the Countrywide Defendants noted in their opening brief, *McDonald* is not rele-
    vant here because it held only that the phrase "statute of limitations" was ambiguous
14  "when [CERCLA] was enacted *in 1986*."  548 F.3d at 781 (emphasis added).  As
    FHFA concedes, however, the distinction between a "statute of limitations" and a
15  "statute of repose" was well-settled by the time HERA was enacted *more than 20
    years later in 2008*, as the Court in *McDonald* itself observed.  *See id.* at 779-80.
16  FHFA's suggestion that the Court should analyze the state of the law in 1989 (when
    the FIRREA extender statute was enacted) (*see* Opp. at 22 n.12), and ignore nearly 20
17  years of law that provide context for the passage of HERA in 2008, is untenable.  *See
    Egebjerg*, 574 F.3d at 1050.  In any event, as Judge Wu held in *RBS Securities*, it
18  "cannot be disputed" "that there was an important distinction between statutes of limi-
    tation and statutes of repose in the nation's securities legislation by *1989*."  RJN Ex.
19  55 at 16 n.19 (emphasis added).

20  [19] *See, e.g., Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350,
    359-60 (1991) (analyzing which statute applies to § 10(b) claims); *WorldCom*, 496
21  F.3d at 252 (addressing applicability of *American Pipe* tolling); *In re United Ins.
    Mgmt., Inc.*, 14 F.3d 1380, 1385 (9th Cir. 1994) (addressing applicability of equitable
22  tolling in bankruptcy action); *Finkel v. Stratton Corp.*, 962 F.2d 169, 172 (2d Cir.
    1992) (addressing whether repose period ran from "contract of sale" or from "disposi-
23  tion of security"); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982) (hold-
    ing that both "three-year bar" under 1933 Act and Cal. Corp. Code four-year repose
24  period are "absolute"); *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1300 & n.7
    (4th Cir. 1993) (addressing meaning of "sale"; "Section 13 actually incorporates both
25  a statute of limitation . . . and a statute of repose").

26  [20] Contrary to FHFA's suggestion, *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010),
    did *not* "use[] the term 'statute of limitations' 'as a generic label for statutes that im-
27  pose deadlines for filing suit.'"  Opp. at 22.  Rather, *Merck* only used the term in ref-
    erence to 28 U.S.C. § 1658(b)(1), the two-year statute of limitations applicable to se-
28  curities fraud claims—not the five-year statute of repose in § 1658(b)(2).  The com-
    ment on *Merck* in *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 932 (7th Cir. 2011), is both

1    FHFA's argument that this Court should ignore HERA's plain language on the

2  basis of headings used in unrelated statutes or other courts' imprecise language is fur-

3  ther undermined by an *amicus curiae* appellate brief recently filed by the United

4  States (in its sovereign capacity) in *Waldburger v. CTS Corp.*, No. 12-1290 (4th Cir.

5  Aug. 2012) (RJN Ex. 113).  As in *Abrams* and *McDonald*, the issue in *Waldburger* is

6  whether the term "statute of limitations" in § 309 of CERCLA encompasses statutes

7  of repose.  In its brief, the government argues that "[s]tatutes of limitations and stat-

8  utes of repose are fundamentally distinct from each other," "courts . . . have long rec-

9  ognized the distinction," and "*the term 'statute of limitations' has never been thought*

10  *to encompass [repose] provisions of the type at issue here.*"  *Id*. at 8-9 (emphasis add-

11  ed).  The government also argues that, by using the term "statute of limitations," the

12  "plain text makes clear that it has no application to statutes of repose."  *Id*. at 9.  In

13  short, although FHFA tries to present its views as the official position of the United

14  States government, the *actual* United States government is taking ***exactly the opposite***

15  ***position*** in *Waldburger*, refuting each of FHFA's arguments here.[21]

16    **c.    FHFA Wrongly Disregards The References To "Accrual**."

17    FHFA concedes that the plain language of the extender statute measures the

18  "applicable statute of limitations" from "the date on which the claim accrues."  12

19  U.S.C. § 4617(b)(12).  FHFA also does not dispute that statutes of *limitations* typical-

20  ly run from the date of "accrual," while statutes of *repose* run "regardless of when the

21  cause of action accrued," *Albillo-De Leon v. Gonzales*, 410 F.3d 1090, 1097 n.5 (9th

22

---

23  incorrect and dictum.  The *McCann* court was merely trying to harmonize *Merck* with its view that § 1658(b)(1) is a statute of repose, not a statute of limitations, while ex-

24  pressly noting that it was "not ruling" on § 1658(b)(1).

25  [21] *See also id*. at 22 (even if "a bifurcated statute containing both a statute of limita-tions and a statute of repose . . . . could be characterized as containing a statute of lim-itations, *there would be no basis for applying that label to the portion of the statute*

26  *that operates as a statute of repose*") (emphasis added); *id*. at 22, 25 (refuting plain-tiffs' argument that "reading the provision consistent with its plain text would some-

27  how frustrate CERCLA's purpose," because the decision to displace statutes of limi-tations but not statutes of repose "reflects Congress's legislative balancing of compet-

28  ing objectives"); *see infra*, at 22-31.

1    Cir. 2005), and "can bar a suit even before the cause of action could have accrued,"

2    *Underwood Cotton Co., Inc. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405,

3    408 (9th Cir. 2002); Op. Br. at 24-26 (collecting cases).  Instead, FHFA argues that

4    the statute's reference to accrual should be disregarded as somehow not indicating

5    that Congress intended to exclude statutes of repose.  *See* Opp. at 24-25.

6          But the cases FHFA cites do not support this argument.  First, FHFA badly

7    mischaracterizes *McDonald*.  In *McDonald*, unlike here, the word "accrues" did not

8    appear in the statute being interpreted, but in a *committee report* in the legislative his-

9    tory (which, as a whole, indicated an intent to include statutes of repose).  548 F.3d at

10   783.  Also, contrary to what FHFA states in its brief, the *McDonald* court did *not* hold

11   "that the term 'accrual' 'says nothing about whether Congress intended that [the stat-

12   ute] apply to statutes of repose.'"  Opp. at 24.  The correct quotation is as follows:

13         For example, in *Freier v. Westinghouse Elec. Corp.* [citation omitted], the court

14         stated that it is 'indisputedly clear that Congress intended [to] . . . preempt state

15         law accrual rules. . . .'  However, this says nothing about whether Congress in-

16         tended that § 309 apply to statutes of repose.  Statements that Congress clearly

17         intended § 309 to preempt state law accrual rules are not evidence that those are

18         the only rules it intended to preempt.

19   *McDonald*, 548 F.3d at 783.  Viewed in context, it is clear that *McDonald* was merely

20   distinguishing the *Freier* case, not concluding that the term "accrues" was irrelevant

21   to the issue of whether the statute in question applied to statutes of repose.  To the

22   contrary, as FHFA acknowledges (Opp. at 24), *McDonald* noted that the term "ac-

23   crues" "typically applies to discovery of injury in *statutes of limitations* cases."  *Id*.

24         *McCann* (Opp. at 25) similarly does not help FHFA.  There, the court *agreed*

25   that "the starting gate in *statutes of limitations* is usually expressed as the date on

26   which 'such claim accrues.'"  663 F.3d at 932 (emphasis added).  Because the statute

27   at issue ran from the date of the "violation" instead of "accrual," this suggested it was

28   a statute of repose, not a statute of limitations.  *Id*.  Although the court ultimately

1   based its conclusion that the statute was a repose period on other grounds, it recog-

2   nized that the term "accrues" is typically associated with statutes of limitations.  The

3   *NCUA Kansas* court (Opp. at 25) likewise did not dispute that "accrues" is a concept

4   associated only with statutes of limitations.  It merely held that the FCUA extender

5   statute's use of the term "accrues" "does not outweigh" the other considerations it cit-

6   ed as a basis for applying the FCUA extender statute to statutes of repose (considera-

7   tions that should not be followed here).  2012 WL 3028803, at *17.[22]

8       In short, FHFA does not dispute that statutes of *limitations* are generally meas-

9   ured from the date of "accru[al]," while statutes of *repose* "cut[] off a cause of action

10  at a certain time irrespective of the time of accrual." *Balam-Chuc*, 547 F.3d at 1049.

11  Thus, because the extender statute expressly provides a "limitations" period that runs

12  from "the date  on which the claim accrues," the statutory plain language shows that

13  Congress intended it to apply to statutes of limitations only, not statutes of repose.

14              **d.    The Extender Statute Does Not Modify Substantive Rights.**

15      FHFA does not dispute that a statute of limitations "bear[s] on the availability

16  of remedies," while a statute of repose "is not a limitation of a plaintiff's remedy" but

17  rather "affect[s] the availability of the underlying right." *P. Stolz Family P'ship L.P.*

18  *v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004).  As the Ninth Circuit explained, "a statute

19  of limitations does not take away rights"; "the right (moral or legal) goes on, but the

20  plaintiff simply cannot go to court in order to enforce it." *Underwood*, 288 F.3d at

21  408.  Statutes of repose, on the other hand, have "a more substantive effect . . . . [and]

22  can be said to destroy the right itself." *Id.*; Op. Br. at 19-20.

23

24  [22] FHFA cites only one instance where a statute of repose was measured from the date
    of "accrual"—a case from 1943 applying a transportation statute enacted in 1924.  *See*
25  *Midstate Horticultural Co. v. Pa. R.R. Co.*, 320 U.S. 356 (1943); Opp. at 25.  But
    what FHFA did not tell this Court is that—unlike its ordinary meaning today—the
26  word "accru[al]" in that statute was *not* defined as the date on which the plaintiff dis-
    covered or could first assert its claim.  Rather, consistent with other statutes of repose,
27  this statute expressly defined "accru[al]" as a fixed date (the date of delivery).  *See*
    Pub. L. No. 68-247, 43 Stat. 633 (codified at 49 U.S.C. § 16(3)(e) (1925-26 ed.)).
28  When viewed in this context, the statute addressed in *Midstate* does not support the
    argument FHFA seeks to make here.

1      Here, however, the extender statute contains no language indicating that it is

2  modifying or enlarging the substantive rights of Fannie Mae and Freddie Mac by vir-

3  tue of the conservatorship, and FHFA points to none.  To the contrary, as FHFA itself

4  argued in *Herron*, FHFA is merely standing in the shoes of Fannie Mae and Freddie

5  Mac and asserting their pre-existing rights on their behalf.  Thus, the only reading of

6  the extender statute consistent with its plain language is that it extends the time in

7  which FHFA may pursue a *remedy*, but does not alter Fannie Mae and Freddie Mac's

8  *substantive rights*.  In other words, the extender statute applies only to statutes of limi-

9  tations, and does not displace statutes of repose.  For all of these reasons, the Court

10  should follow *RBS Securities*, *Goldman Sachs*, and *Olson* and conclude that the plain

11  language of the extender statute does not apply to statutes of repose.[23]

12              **2.      Excluding Statutes Of Repose Is Consistent With
                          The Apparent Purpose Of The Extender Statute.**

13

14      FHFA next argues that the "purpose" of the extender statute requires the Court

15  to conclude that it was intended to supersede statutes of repose, contending that any

16  other reading would "undercut" that purpose, "hamstr[i]ng" FHFA, and "eviscerate

17  HERA."  Opp. at 26-30, 35.  This hyperbolic argument fails for several reasons.

18      First, because the statutory plain language is clear, it is both unnecessary and

19  improper to analyze its legislative purpose—let alone for that purpose to be the prima-

20  ry factor driving the proposed interpretation of the statute.  As the Supreme Court has

21  held, the Court's "inquiry begins with the statutory text, and ends there as well if the

22  ─────────────────
[23] FHFA's criticisms of *RBS Securities*, *Goldman Sachs*, and *Olson* are without merit.
23  *See* Opp. at 19-21.  First, Judge Wu's rulings have been confirmed, and are no longer
    tentative.  *See supra*, at n.11.  Although they are not binding on this Court and are
24  subject to revision until final judgment, the same is true of both *UBS* and *NCUA Kan-
    sas*.  *See* Fed. R. Civ. P. 54(b).  With respect to *Olson*, FHFA cites one case that ad-
25  dresses *Olson* only in unpublished dicta (*Stonehedge/Fasa-Tex. JDC v. Miller*, 110
    F.3d 793, at *3 (5th Cir. 1997)), two cases that address *Olson*'s relation back analysis
26  and not its ruling on the extender statute (*Chumney v. U.S. Repeating Arms Co., Inc.*,
    196 F.R.D. 419 ,427 (M.D. Ala. 2000); *In re Boesky Sec. Litig.*, 882 F. Supp. 1371,
27  1380-81 (S.D.N.Y. 1995)), and one case that does not mention *Olson* at all and is in-
    apposite because it concerns the *Summerlin* doctrine, which is inapplicable here
28  (*Bresson v. C.I.R.*, 213 F.3d 1173, 1178 (9th Cir. 2000)).

text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).[24]

<u>Second</u>, even if it were proper to consider the purpose of the extender statute, there is no independent source—*other than the text of the extender statute itself*—that reflects Congress's purpose here.  It is undisputed that there is nothing in HERA's legislative history that addresses the extender statute, its purpose, or its scope.  *See* Op. Br. at 29 n.38.  FHFA points to 12 U.S.C. § 4617(b)(2) ("Powers and duties of the Agency as conservator"), which authorizes FHFA to take action to "put the [GSEs] in a sound and solvent condition," "preserve and conserve [GSE] assets," and "collect all obligations and money due to the [GSEs]."  Opp. at 26.  But these provisions do not support the sweeping arguments FHFA makes here.  These provisions say nothing about the purpose or scope of the *extender statute*—which, by definition, serves to *limit* FHFA's "powers" by imposing time restrictions on its lawsuits—and they say nothing about whether the claims of Fannie Mae and Freddie Mac should be exempt from otherwise applicable statutes of repose simply because those private entities are now under conservatorship.  FHFA also cites *UBS*, 2012 WL 1570856, at *5, and *In re Fed. Nat'l Mortg. Ass'n Sec., & Deriv., ERISA Litig.*, 725 F. Supp. 2d 169, 177-78 (D.D.C. 2010), which posited that the extender statute is intended to "give FHFA more time to decide whether and how to pursue any claims it inherited as the GSEs' newly-appointed conservator."  But those cases inferred this purpose solely from the statutory text, not from any legislative history.  *See id.*[25]  As such, these cases provide no insight beyond the text itself as to whether the extender statute was intended to apply to statutes of repose.  The Court thus should interpret the extender statute based on its plain language, not on vague, unsupported assertions about its "purpose."

---

[24] *Accord Aaron v. SEC*, 446 U.S. 680, 695 (1980) ("if the language of a provision . . . is sufficiently clear in its context and not at odds with the legislative history, it is unnecessary to examine the additional considerations of 'policy' . . . that may have influenced the lawmakers in their formulation of the statute").

[25] For example, in *Fed. Nat'l Mortg. Ass'n*, the court acknowledged it was inferring the statute's purpose from its text.  *See id.* ("[b]y extending the limitations period, Congress *seems to have contemplated* that FHFA might need more time to decide whether and how to pursue any claims it inherited") (emphasis added).

1        *Third*, it is well-settled that the supposedly "broad purposes" of a statute cannot

2   be considered in a vacuum, without reference to the specific statutory language that

3   implemented those purposes and balanced the competing policies considered by Con-

4   gress.  As the Supreme Court, the Ninth Circuit, and many other courts have held:

5            *[N]o legislation pursues its purposes at all costs.*  Deciding what competing

6            values will or will not be sacrificed to the achievement of a particular objective

7            is the very essence of legislative choice—and *it frustrates rather than effectu-*

8            *ates legislative intent simplistically to assume that whatever furthers the stat-*

9            *ute's primary objective must be the law.*

10  *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (emphasis added).[26]

11       Yet that is precisely what FHFA argues here:  because the supposedly broad

12  purpose of the extender statute was to "give FHFA more time," it argues that *any* dis-

13  pute over the scope of the extender statute should be resolved in favor of giving FHFA

14  more time.  Opp. at 27.  But this argument violates the Supreme Court's holding in

15  *Rodriguez.*  Contrary to *Rodriguez* and its progeny, this argument focuses solely on

16  the claimed purpose of the extender statute in isolation, ignores the plain text, and im-

17  properly assumes that "giv[ing] FHFA more time" to pursue the claims of these two

18  _____

19  [26] *Accord Dir., Office of Workers' Comp. Programs v. Newport News Ship-building & Dry Dock Co.*, 514 U.S. 122, 136 (1995) ("[e]very statute purposes, not only to achieve certain ends, but also to achieve them by particular means"); *Bd. of Gover-nors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 373-74 (1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action."); *Aaron*, 446 U.S. at 695 ("generalized references to the 'remedial purposes' of the securities laws will not justify reading a provision more broadly than its language and the statutory scheme reasonably permit"); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 580 (7th Cir. 2012) (quoting *Rodriguez*); *City of Joliet v. New West, L.P.*, 562 F.3d 830, 836 (7th Cir. 2009) ("'purpose' clauses are common in federal statutes. . . .  [T]hey are usually sweeping in scope and declare an urgent need to solve a problem.  But in legislation details matter.  How far will the legislature go, and what costs will it bear, to achieve its ends?"); *Cal. State Legislative Bd., United Trans. Union v. Dep't of Transp.*, 400 F.3d 760, 764 (9th Cir. 2005) (quoting *Rodriguez*); *United States v. Talley*, 16 F.3d 972, 976 n.8 (8th Cir. 1994) (same); *In re County of Orange*, 31 F. Supp. 2d 768, 785 (C.D. Cal. 1998) ("a broad purpose, however, cannot be invoked to overcome the plain language of the statute and express intent of the legislature").

private entities was Congress's overriding objective at the expense of all other competing policies—including the longstanding, important policies underlying statutes of repose. Because FHFA's argument makes the "interpretive error" of "treat[ing] [the] statute's primary or precipitating object as its sole object," it should be rejected. *Albany Eng'g Corp. v. FERC*, 548 F.3d 1071, 1076 (D.C. Cir. 2008). Contrary to what FHFA seems to be suggesting, "there is no federal policy that the [FHFA] should always win." *O'Melveny*, 512 U.S. at 88.

Fourth, FHFA's argument also proves too much. If the "overriding objective" of the extender statute truly was "to maximize the ability of FHFA to 'put the GSEs in a sound and solvent condition,'" as FHFA contends and the *UBS* court held, Opp. at 29, then Congress simply would have abolished all time limits altogether for actions brought by FHFA as conservator. But Congress did not do that, and FHFA concedes that it is bound by certain time limits on the face of the statute. *See* Opp. at 13. The very existence of these time limits proves that Congress did *not* elevate FHFA's ability to "put the GSEs in a sound and solvent condition" above all other policies, including the important congressional policies underlying statutes of repose.

Fifth, excluding statutes of repose from the scope of the extender statute in accordance with its plain language does not "undermine" or "eviscerate" the claimed purpose of HERA. This interpretation does not prevent FHFA from taking appropriate actions to "preserve and conserve [GSE] assets" or "collect all obligations and money due to the [GSEs]," including by bringing lawsuits that assert valid, timely claims. Rather, it only prevents FHFA from asserting claims that are clearly time-barred by the applicable statutes of repose. Put another way, this interpretation of the extender statute does not obstruct FHFA's mission or take away substantive rights belonging to Fannie Mae and Freddie Mac; instead, it simply puts these two private entity plaintiffs (and their conservator) *in exactly the same position as every other private plaintiff* with respect to the applicable repose periods.[27] FHFA's assertion to the con-

---

[27] FHFA's argument here is similar to the argument the FDIC made and this Court re-

trary is again based on the false premise that Fannie Mae and Freddie Mac are entitled to special privileges—*i.e.*, they are entitled to bring federal and state securities claims years after the relevant offerings and sales and years after repose periods have run— merely because they are in conservatorship.  Absent clear evidence that Congress intended to bestow such privileges on them, however, this argument must be rejected.

Sixth, even assuming that the purpose of the extender statute was to "give FHFA more time to decide whether and how to pursue any claims it inherited as the GSEs' newly-appointed conservator," Opp. at 27, interpreting the extender statute as inapplicable to statutes of repose is *not inconsistent with that purpose*.  As the Countrywide Defendants explained in their opening brief, statutes of repose are not concerned with how much time a plaintiff has to discover, assess, or investigate its claims.  *See* Op. Br. at 20-22, 29-31.  Rather, a repose period is premised on the legislature's determination that "there is a time when allowing people to put their wrongful conduct behind them . . . is more important than providing those wronged with a legal remedy, even if the victims never had the opportunity to pursue one."  *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 200 (3d Cir. 2007).  That is why a statute of repose is "usually measured from one of the defendant's acts," *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 88 n.4 (2d Cir. 2010), and runs "even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action," *P. Stolz*, 355 F.3d at 102-03, "even if equitable considerations would warrant tolling," *id.*, and "even if the injury has not yet occurred," *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1130 (C.D. Cal. 2011).[28]

---

jected in *United Western Bank* that applying the plain language grant of federal question jurisdiction in 28 U.S.C. § 1441(b) would "eviscerate" the non-removal provision in section 22(a) of the 1933 Act.  *See FDIC v. Countrywide Fin. Corp.*, 11-CV-10400-MRP (MANx), RJN Ex. 118 at 3 (C.D. Cal. Mar. 20, 2012).

[28] *Accord Balam-Chuc*, 547 F.3d at 1049 ("a statute of repose is a fixed, statutory cut-off date, usually independent of any variable, such as claimant's awareness of a violation"); *Johnson v. Aljian*, 490 F.3d 778, 781 n.12 (9th Cir. 2007) (repose period "terminates a right of action . . . even if the injury has not yet occurred"); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 952 n.7 (9th Cir. 2005) (same); *Munoz v. Ashcroft* 339 F.3d 950, 957 (9th Cir. 2003) (same); *Estate of Kennedy v. Bell Helicopter Textron,*

1    Against this backdrop—which FHFA does not dispute—it makes perfect sense

2    that Congress designed the extender statute so that it applies to certain statutes of limi-

3    tations (to ensure that FHFA has sufficient time to investigate and assert potential

4    claims) but not to statutes of repose (which run without regard to the amount of time a

5    litigant has to investigate or assert its claims).  In response, FHFA merely argues that

6    there is "no evidence" that "Congress was 'concerned with the defendant's peace'

7    when it enacted HERA."  Opp. at 28-29.  But FHFA is again "simplistically . . . as-

8    sum[ing] that whatever furthers the statute's primary objective must be the law."  *Ro-*

9    *driguez*, 480 U.S. at 526.  The "evidence" here is the plain language of the statute it-

10   self, which shows that Congress balanced these policies in precisely this way.

11   <u>Seventh</u>, FHFA ignores the fact that—like the extender statute here—numerous

12   legal doctrines designed to provide litigants with sufficient time to investigate and

13   identify their claims (*e.g.*, the discovery rule, equitable tolling, and equitable estoppel)

14   apply only to statutes of limitations, but not to statutes of repose.  *See* Op. Br. at 29-

15   31.  FHFA has no response to this fact, except to say that some statutes of repose

16   "have been construed as being subject to supposedly incompatible concepts of notice

17   and equitable tolling."  Opp. at 29-30.  But FHFA nowhere cites any examples of such

18   unidentified statutes.  Instead, it simply cites *NCUA Kansas*, 2012 WL 3028803, at

19   *17, as "collecting cases."  Opp. at 30.  But the two cases the *NCUA Kansas* court cit-

20   ed for this proposition involved statutes of *limitations*, not statutes of *repose*.  *See SEC*

21   *v. Wyly*, 788 F. Supp. 2d 92, 114-15 (S.D.N.Y. 2011) ("[S]ection 21A is not a statute

22   of repose"); *United States v. Uzzell*, 648 F. Supp. 1362, 1366-68 (D.D.C. 1986) (ap-

23

24   *Inc.*, 283 F.3d 1107, 1111 (9th Cir. 2002) (statute of repose "declares that nobody
     should be liable at all after a certain amount of time has passed, and that it is unjust to
     allow an action to proceed after that"); *Sch. Dist. No. 1J, Multnomah County v. AC &*
25   *S, Inc.*, 5 F.3d 1255, 1259 (9th Cir. 1993) (statute of repose "reflects the policy judg-
     ment . . . to relieve a [defendant] of the risk of loss . . . after a substantial period of
26   time"); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (statute
     of repose's "very purpose is to set an outer limit unaffected by what the plaintiff
27   knows"); *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987) ("In contrast to
     statutes of limitation, statutes of repose serve primarily to relieve potential defendants
28   from anxiety over liability for acts committed long ago.").

COUNTRYWIDE DEFENDANTS' REPLY MEM. IN SUPPORT OF MOTION TO DISMISS

plying equitable tolling to "False Claims Act statute of limitations").  And FHFA also ignores the extensive case law confirming that these doctrines whose purpose is to provide litigants with time to investigate and identify their claims do not apply to statutes of repose.[29]  Because FHFA argues that the extender statute has the very same purpose, analogizing to these doctrines is appropriate and probative.[30]

### 3.     Applying The Extender Statute To Statutes Of Repose Would Conflict With The Text And Purpose Of Repose Periods.

FHFA also argues that applying the extender statute to statutes of repose "does no harm to the Securities Act" (or the Virginia and District of Columbia Securities Acts), because it only would "se[t] a new period for one plaintiff, FHFA as conservator," and the three-year repose period of "Section 13 would remain operative for every other private plaintiff."  Opp. at 28.  FHFA is wrong for at least three reasons.

<u>First</u>, eliminating the statute of repose *even for one plaintiff only* would still directly conflict with the text of the 1933 Act.  As the Countrywide Defendants explained in their opening brief, Section 13 states that "*[i]n no event*" may a claim be brought more than three years after the offering or sale.  15 U.S.C. § 77m.  There are

---

[29] *See Lampf*, 501 U.S. at 363 ("equitable tolling . . . is fundamentally inconsistent with" a period of repose); *Balam-Chuc*, 547 F.3d at 1048 ("Statutes of repose are not subject to equitable tolling."); *Munoz*, 339 F.3d at 957 (same); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) ("discovery rule does not apply to . . . . statute of repose"); *P. Stolz*, 355 F.3d at 102-03 (repose period runs "even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action"); *Cada*, 920 F.2d at 451 (equitable estoppel does not apply to statutes of repose); *In re Finisar Corp. Deriv. Litig.*, 2012 WL 2873844, at *8 (N.D. Cal. July 12, 2012) ("equitable tolling is unavailable" for statute of repose); *Baldain v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 2606666, at *6 n.6 (E.D. Cal. June 28, 2010) ("statute of repose . . . cannot be extended through tolling, estoppel, relation back, or related doctrines"); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2006 WL 560589, at *1 (N.D. Ill. Feb. 28, 2006) ("tolling principles—equitable estoppel and equitable tolling—do not apply to the statute of repose for securities fraud claims").

[30] FHFA cites *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), and *Wilson v. Garcia*, 471 U.S. 261 (1985) (Opp. at 29) for the proposition that both statutes of limitations and statutes of repose provide a defendant with peace.  Although it is true that both types of statutes ultimately cut off claims and in that sense provide a defendant with peace, these cases do not say (as FHFA suggests) that the purposes underlying statutes of repose are the same as those for statutes of limitations, which *unlike repose periods* are also concerned with fairness to the plaintiff.

no exceptions.  Although Congress has the power to make an exception for a particular plaintiff, it must indicate its intent to do so clearly.  As the Supreme Court held in *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007), a federal statute will not be construed to amend or repeal an earlier enacted federal statute "unless the later enacted statute expressly contradict[s] the original act or unless such a construction . . . is *absolutely necessary* in order that the words of the later statute shall have *any meaning at all*."  (Emphasis added.)  Implicit amendment or repeal of an existing statute (which is essentially what FHFA is arguing the extender statute did to existing federal limitations and repose periods) is "not favored" and will not be found to have occurred unless the statutes are "irreconcilable" or "unless the legislature's intention to repeal is clear and manifest."  *Id.* at 662-63.  Instead, "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  *Morton v. Mancari*, 417 U.S. 535, 551 (1974); Op. Br. at 33 n.43 (collecting cases).[31]

Here, the extender statute does not "expressly contradict" the 1933 Act statute of repose, the two statutes are not "irreconcilable," and amending or repealing the 1933 Act statute of repose is not "absolutely necessary" for the words of the extender statute to "have any meaning at all."  To the contrary, the two statutes are undeniably "capable of co-existence" when the extender statute is read as not applying to statutes of repose.  *Id.*  But FHFA's proposed interpretation—*i.e.*, that the extender statute and the 1933 Act statute of repose can "co-exist" only by viewing the former as an exception to the latter—must be rejected because there is no "clearly expressed congressional intention" that would support such an exception.  *Morton*, 417 U.S. at 551.[32]

---

[31] The same is true with respect to state law statutes of repose.  There is a presumption against preemption, and state law is "not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress."  *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008).

[32] FHFA misconstrues the relevance of the "implied repeal" doctrine.  Contrary to what FHFA suggests, the Countrywide Defendants are *not* asking the Court to find an implied repeal of Section 13.  *See* Opp. at 27-28.  Rather, it is *FHFA's* reading of the

<u>Second</u>, FHFA's proposed elimination of the statute of repose would not be limited to "just one plaintiff" as FHFA contends.  In the context of the HERA extender statute, it would benefit at least two plaintiffs, Fannie Mae and Freddie Mac.  Moreover, because the FIRREA and FCUA extender statutes contain virtually identical language, the logical implication of FHFA's proposed interpretation is that *hundreds* of failed banks and credit unions and their conservators should be exempted from the 1933 Act statute of repose (and corresponding state law statutes of repose across the country).  Thus, FHFA's assertion that "Section 13 would remain operative for every other private plaintiff" is just not true, and its argument that its reading of the extender statute "does no harm to the Securities Act" is baseless.  Because the *UBS* court adopted FHFA's flawed reasoning on this issue, *see* 2012 WL 1570856, at *5 n.8, its ruling should be similarly disregarded.

<u>Third</u>, by focusing exclusively on the supposed purpose behind the extender statute, FHFA wholly ignores the equally important policy considerations underlying the 1933 Act, Virginia Securities Act, and District of Columbia Securities Act statutes of repose.  FHFA does not dispute that statutes of repose serve an important purpose in the framework of federal and state securities laws.  By providing an absolute cut-off date for liability, they give potential defendants finality and peace after a fixed period of time, eliminate the "fear that lingering liabilities would disrupt normal business and facilitate false claims," *Davis v. Birr, Wilson & Co., Inc.*, 839 F.2d 1369, 1374 (9th Cir. 1988) (Aldisert, J., concurring), and prevent investors from using the securities laws as insurance by waiting to see how their investments perform over time before deciding whether to sue, *see Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (7th Cir. 1990).  The importance of such policies is all the greater in the interplay of the liability provisions found in Sections 11 and 12(a)(2) of the 1933 Act and the repose period found in Section 13 of the Act.  These liability provisions do not require

---

extender statute that would require finding an implied amendment or repeal, a finding plainly not warranted here.

plaintiffs to plead or prove scienter, reliance, or loss causation, creating potentially very expansive liability, and through its adoption of the repose period Congress provided a counterweight, cutting off potentially unlimited liability. *See, e.g.*, *Norris v. Wirtz*, 818 F.2d 1329, 1333 (7th Cir. 1987) (statutes of repose "deal with the problems of proof—and the invitation to file claims easier to advance than to refute—that arise if long-delayed litigation is permissible"); Op. Br. at 34 n.44 (collecting cases).

Yet FHFA does not identify any reason why Congress would silently abandon these important, longstanding policies for failed private entities that are in conservatorship. It cannot be that Congress intended to give federal conservators a longer opportunity to investigate and assert their claims—repose periods have never been extended or set aside on that basis. *See supra*, at 27-28. And it cannot be that Congress intended to provide temporary relief from repose periods for distressed entities in conservatorship. "Extending" a repose period is a contradiction in terms—a repose period serves as "an unyielding and absolute barrier" that is not subject to extension or tolling. *See McCann*, 663 F.3d at 930. And FHFA itself concedes that its view of the extender provision would not simply "extend" repose periods but eliminate them altogether, such that potential liability could extend many years after an offering or sale. *See* Opp. at 15-16.

In short, FHFA asserts that Congress undertook a substantial policy shift when it enacted the extender statute. But "[i]f Congress intended a result so drastic, it is not unreasonable to expect that it would have said so expressly," *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 284 n.13 (1974), not through a statute that refers only to "statute[s] of limitations" and "accru[al]."[33]

---

[33] FHFA cites *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 132 S. Ct. 1670, 1682 (2012), arguing that "the Supreme Court has rejected this same 'could have been clearer' mode of analysis." Opp. at 24, 35. But *Caraco* noted only that "the mere possibility of clearer phrasing cannot defeat the *most natural reading* of a statute." 132 S. Ct. at 1682 (emphasis added). It did not prohibit courts from rejecting an *unnatural* reading of a statute by reasoning that Congress would have expressed its intent more clearly. That mode of statutory analysis, which is the one relevant here, has long been approved by the Supreme Court. *See, e.g.*, *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) ("Had Congress intended this result, it most

**B.**     **The Extender Statute Does Not Apply To Federal Law Claims.**

The extender statute also does not apply to federal law claims, such as FHFA's claims under the 1933 Act.  Thus, Counts I-III are time-barred and must be dismissed.  All of FHFA's arguments to the contrary are without merit.

**1.**     **FHFA Misreads The Plain Language Of The Statute.**

<u>First</u>, in arguing that the extender statute applies to federal law claims, FHFA relies heavily—indeed, almost exclusively—on the phrase "any action" in the statute's preamble.  Opp. at 30-31.[34]  Citing *UBS* and *NCUA Kansas*, FHFA contends that Congress "had no need to specify whether the HERA claims period applied specifically to state or federal law claims, because it had already stated . . . that [it] applied to 'whatever kind' of action FHFA may bring."  *Id*. at 31.

This argument is fatally flawed.  As an initial matter, FHFA is reading the words "any action" in isolation, as if they were the only words in the statute.  The words that follow, however, necessarily qualify and limit the preamble's reference to "any action."  For example, the extender statute does *not* broadly state that "in any action brought by FHFA as conservator, the applicable statute of limitations shall be three years."  Instead, it is far more limited and specific, providing that:

- "[I]n the case of any contract claim," the limitations period shall be the longer of six years or "the period applicable under State law."

- "[I]n the case of any tort claim," the limitations period shall be the longer

---

certainly would have said so."); *Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 131 S. Ct. 2188, 2198-99 (2011) ("if Congress had intended such a sea change in intellectual property rights it would have said so clearly—not obliquely"); *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.  But it did not."); *Russello v. United States*, 464 U.S. 16, 25 (1983) ("If this was Congress's intent, one would expect it to have said so in clear and understandable terms").

[34] *See* 12 U.S.C. § 4617(b)(12)(A) ("the applicable statute of limitations with regard to any action brought by the [FHFA] as conservator or receiver shall be . . . .").

of three years or "the period applicable under State law."
12 U.S.C. § 4617(b)(12)(A). In other words, the phrase "any action" standing alone is effectively meaningless. Rather, it is defined and bounded by subsections (A)(i) and (A)(ii), which provide context and expressly limit the extender statute's scope to "any action" *that* asserts "contract claim[s]" or "tort claim[s]" *that* have a limitations "period applicable under State law." *See id*. Thus, when the statutory text is read as a whole, it is clear that federal 1933 Act claims—which are subject to a specific federal statute of limitations (and therefore have no "period applicable under State law") and also are neither "tort" nor "contract" claims—are outside the extender statute's scope.

It is well-settled that courts "interpret statutes, not by viewing individual words in isolation, but rather by reading the relevant statutory provisions as a whole." *Leisnoi, Inc. v. Stratman*, 154 F.3d 1062, 1066 (9th Cir. 1998).[35] Indeed, "[o]ften, although a phrase sweeps broadly when read in isolation, surrounding statutory text clarifies that Congress actually intended a narrower meaning." *Kawashima v. Holder*, 615 F.3d 1043, 1047 (9th Cir. 2010) (Graber, J., dissenting). Such is the case here. FHFA "reads one phrase of the statute in isolation ["any action"], ignoring the very next phrase[s] in the same sentence." *Id*. at 1050. But that interpretation "simply is not tenable in light of the [extender statute's] surrounding provisions." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 99 (1992). Thus, because FHFA's reading of the statute impermissibly "view[s] words or sub-sections in isolation," rather than "reading the relevant statutory provisions as a whole," it must be rejected. *In re Rufener Constr., Inc.*, 53 F.3d 1064, 1067 (9th Cir. 1995).[36]

---

[35] *Accord Harbison v. Bell*, 556 U.S. 180, 196 (2009) (Roberts, C.J., concurring) ("we do not . . . construe statutory phrases in isolation; we read statutes as a whole"); *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text"); *Peter-Palican v. Govt. of Com. Of N. Mar. I.*, 673 F.3d 1013, 1018 (9th Cir. 2012) ("statute . . . must be read as a whole, and not as isolated words"); *Westwood Apex v. Contreras*, 644 F.3d 799, 804 (9th Cir. 2011) ("We believe it inappropriate to construe a statute by reading related clauses in isolation or taking parts of a whole statute out of their context.").

[36] *Accord United States v. Morton*, 467 U.S. 822, 828 (1984) ("We do not . . . construe statutory phrases in isolation. . . . Thus, the [term] must be read in light of the

<u>Second</u>, FHFA's interpretation requires giving two different—and fundamentally inconsistent—meanings to the word "applicable" in the same statute. As explained in the Countrywide Defendants' opening brief, the extender statute's reference to "the period applicable under State law" logically requires there be a state law limitations period that is "*applicable*." Op. Br. at 35-36. The statute does not say "the period applicable under State *or Federal* law," "the period under State law, *if applicable*," or "the period *otherwise* applicable *under law*." *Id*. at 35. Instead, it says "the period *applicable* under *State law*," indicating that federal law claims governed by federal statutes of limitations (*i.e.*, claims for which there is no "period applicable under State law") are excluded. *Id*. at 35-36. FHFA disagrees, again pointing to the "any action" language. *See* Opp. at 30-32.

But FHFA's interpretation would require the word "applicable" to have two different meanings within the same statute. First, FHFA itself emphasizes that subsection (A) specifies the period for actions brought by FHFA as conservator: "*the applicable* statute of limitations with regard to *any action* brought by the Agency as conservator [shall be. . .]*" Id*. at 35 (emphasis in original). In this context, FHFA reads the word "applicable" to mean "that applies"—*i.e.*, the "statute of limitations [that applies] with regard to any action brought by the Agency [shall be]. . ." 12 U.S.C. § 4617(b)(12)(A). Just a few lines later, subsections (A)(i) and (A)(ii) reference "the period *applicable* under State law." In that context, however, FHFA reads the word "applicable" to mean something different—here, FHFA reads it to mean "that *may* apply" or "*if* it applies." But the same word cannot mean different things in the same statute, and this fundamental inconsistency undermines FHFA's proposed interpretation. Indeed, as the Supreme Court has held, it is a "normal rule of statutory construc-

---

immediately following phrase . . . ."); *Gale v. First Franklin Loan Servs.*, 2012 WL 3764700, at *3 (9th Cir. Aug. 31, 2012) (plaintiff's "argument has surface appeal if we take a blindered view of the statute and read the language he highlights in isolation," but "we start with the premise that the words of a statute must be read in their context").

1  tion that identical words used in different parts of the same act are intended to have

2  the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995).[37]  Here, there

3  would be no reason for the word "applicable" to have one meaning when it appears

4  for the first time and a different meaning just a few lines later *in the same sentence*.

5  Rather, the more natural reading is that the word "applicable" means "that applies" in

6  both places, confirming that Congress intended the extender statute to apply only to

7  state law claims, *i.e.*, where an "applicable" state law period actually exists.[38]

8      Third, FHFA does not dispute—in fact, it completely ignores—that Congress

9  expressly referred to the applicability of "Federal law" *eight times* elsewhere in HE-

10  RA, yet it chose *not* to reference federal law in the extender provision.  For example,

11  in 12 U.S.C. § 4617(a)(1), HERA provides a rule to be followed "[n]otwithstanding

12  any other provision of *Federal* or State law. . . ."[39]  But in the extender statute, Con-

13  gress did not refer to the period otherwise "applicable under State *or Federal* law,"

14  nor did it specify a period that would apply "*notwithstanding*" the limitations period

15  that "Federal law" otherwise would provide.  Instead, despite referring to "Federal"

16  law elsewhere in the same statute, Congress referred solely to the "period applicable

17  under *State* law."

---

18  [37] *Accord Comm'r v. Lundy*, 516 U.S. 235, 250 (1996) (same); *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164-65 (1985) ("It is logical to assume that the same word has

19  the same meaning when it is twice used earlier in the same sentence."); *United States v. Maciel-Alcala*, 612 F.3d 1092, 1098 (9th Cir. 2010) (courts "interpret identical

20  phrases used in the same statute to bear the same meaning," particularly when they are in "close proximity"); *Sprint Telephony PCS, L.P. v. County of San Diego*, 543

21  F.3d 571, 578 (9th Cir. 2008) ("When Congress uses the same text in the same statute, we presume that it intended the same meaning.").

22  [38] This argument was neither raised by the parties nor addressed by the court in either

23  *UBS* or *NCUA Kansas*.

24  [39] *See* 12 U.S.C. § 4617(a)(1); 12 U.S.C. § 4617(a)(3)(B)(i) ("any violation of any provision of *Federal* or State law"); 12 U.S.C. § 4617(d)(8)(A) ("notwithstanding any

25  other provision of this chapter . . . any other *Federal law*, or the law of any State"); 12 U.S.C. § 4617(d)(8)(C)(i) ("Notwithstanding paragraph (11), or any other provision

26  of *Federal* or State law"); 12 U.S.C. § 4617(d)(8)(E) ("Notwithstanding any other provision of this section, any other *Federal law*, or the law of any State"); 12 U.S.C.

27  § 4617(e)(1) ("Notwithstanding any other provision of *Federal law* or the law of any State"); 12 U.S.C. § 4617(i)(5) ("Notwithstanding any other provision of *Federal* or

28  State law"); 12 U.S.C. § 4617(i)(7)(A)(iii) ("The transfer . . . shall be effective without any further approval under *Federal* or State law").

1    These references to federal law elsewhere in HERA confirm that the omission

2    of any reference to federal law in the extender statute was intentional.  *See* Op. Br. at

3    36-37.  As the Supreme Court has recognized and FHFA itself acknowledges (Opp. at

4    32), "when the legislature uses certain language in one part of the statute and different

5    language in another, the court assumes different meanings were intended."  *Sosa v.*

6    *Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004).  By referring to "the period applica-

7    ble under State law" instead of "the period applicable under State *or Federal* law," the

8    only logical conclusion from the plain language is that Congress intended to exclude

9    federal law claims from the extender statute.[40]

10    FHFA in its Opposition fails even to mention Congress's choice to refer to fed-

11    eral law in eight other places in HERA but not in the extender statute, let alone ex-

12    plain how its proposed reading of the extender statute could be consistent with those

13    references.  Nor were Congress's explicit references to federal law elsewhere in HE-

14    RA addressed by the courts in *UBS* or *NCUA Kansas*.  In short, when Congress in-

15    tended to reference "Federal law" in HERA, it did so—and it intentionally chose not

16    to do so in the extender statute.

17    <u>Fourth</u>, FHFA argues that HERA's revival provision "expressly applies only to

18    'state causes of action,' whereas the [extender provision] includes no such limiting

19    language," supposedly indicating "that no such limitation applies."  Opp. at 32.  Not

20    only is FHFA's reading of the revival provision incorrect, but the plain language of

21    the revival provision affirmatively supports the Countrywide Defendants' interpreta-

22    tion of the extender statute.  First, the relevant language of the extender provision and

23    the revival provision is *exactly the same*.  Just like the extender provision, the revival

24    provision expressly requires that there be a limitations period "applicable under State

25    law," and makes no mention of federal law:

26

27    _____

[40] *See Russell v. Merit Sys. Prot. Bd.*, 324 F. App'x 872, 877 (Fed. Cir. 2008) (Dyk,

28    J.) ("The explicit reference to 'State' law and the absence of any reference to federal law suggest that this provision was not intended to implicitly repeal federal law.").

- <u>12 U.S.C. § 4617(b)(12)(A)(ii)(II)</u>:  For "any tort claim," the limitations period shall be three years or "the period *applicable under State law*."

- <u>12 U.S.C. § 4617(b)(13)(A)</u>:  For intentional tort claims, where "the statute of limitations *applicable under State law* . . . has expired not more than 5 years before the appointment of the [FHFA] as conservator," FHFA may bring an action "without regard to the expiration of the statute of limitations *applicable under State law*."

This identical language further confirms that both provisions were intended to have an identical scope, and that neither applies to federal law claims.  Once again, FHFA is asking the Court to read the caption in isolation[41] and to give the word "applicable" two entirely different meanings—"that applies" in (b)(13), and "that *may* apply" or "*if it applies*" in (b)(12)—within the span of a few lines of statutory text.

In addition, FHFA fails to explain why Congress would *extend* both state and federal law claims, but *revive* only state law fraud claims.  For instance, Section 10(b) of the 1934 Act addresses statements made with the intent to defraud, just as state law fraud claims do.  There is no logical reason for treating federal and state law fraud claims inconsistently, and FHFA suggests no such reason.  Instead, the only reasonable conclusion is that *neither* the extender provision *nor* the revival provision applies to federal law claims, reflecting Congress's policy choice to displace state law limitations periods for actions brought on behalf of private entities in conservatorship while not disturbing the important policies that led Congress to adopt existing federal limitations periods.[42]

---

[41] Contrary to what FHFA argues, the caption of the revival provision—"Revival of expired state causes of action"—is not "limiting language" that suggests the extender provision applies to federal law claims.  Opp. at 32.  As an initial matter, the caption is not part of the statute.  *See supra*, at 15.  Even if it were, this caption merely reflects that the reference to claims with limitations periods "applicable under State law" is a reference to "state causes of action."  Thus, because the "applicable under State law" language appears in *both* the extender and the revival provisions, the caption is further evidence that the extender provision also applies to "state causes of action" only.

[42] FHFA also argues that the revival provision is "not relevant here."  Opp. at 32.  But that is just another attempt to divorce the extender provision from its statutory context.

1        Fifth, because it sets the limitations period at either three/six years "*or*" the "pe-

2   riod applicable under State law," FHFA argues that the extender statute is disjunctive

3   and that the Countrywide Defendants' interpretation "disregards half of the relevant

4   statutory language."  Opp. at 31-32.  In fact, just the opposite is true.  If the extender

5   statute applied to federal law claims as FHFA contends, then FHFA's proposed read-

6   ing would render this very language superfluous in any case alleging federal claims.

7   In other words, under FHFA's proposed reading, Congress provided a choice of two

8   possible time measurements for state law claims but no choice for federal law claims.

9   In the case of federal claims, the period would always be three or six years—even if

10  the period otherwise "applicable under Federal law" would be longer.  Such a reading

11  would make no sense given the statute's supposed purpose of giving FHFA *more* time

12  to sue, and also would violate the "cardinal principle of statutory construction" that "a

13  statute ought, upon the whole, [] be so construed that . . . no clause, sentence, or word

14  shall be superfluous, void, or insignificant."  *City of L.A. v. U.S. Dept. of Commerce*,

15  307 F.3d 859, 870 (9th Cir. 2002).  Interpreting the plain language of the extender

16  statute as applicable only to state law claims, on the other hand, would give meaning

17  to both provisions of the disjunctive in every case where the statute applies.

     **2.**     **Applying The Extender Statute To Federal Law Claims
Would Lead To Absurd Results.**

20       FHFA does not dispute that applying the extender statute to federal law claims

21  would (1) treat federal law claims and state law claims inconsistently by using a "dis-

22  junctive" method for determining the applicable limitations period for state law claims

23  but a fixed period (three years for tort claims/six years for contract) for federal law

24  claims; and (2) in some cases would result in the *shortening*—not extending—of ex-

<hr>

26  The revival provision is clearly relevant, as the Court must "interpret each provision to
fit harmoniously as part of a symmetrical and coherent statutory scheme."  *Rodriguez
v. Holder*, 619 F.3d 1077, 1079 (9th Cir. 2010).  Here, the only way to construe these
provisions consistently is to hold that neither of them applies to federal law claims.[43]
Contrary to FHFA's suggestion (*see* Opp. at 34), neither the *NCUA Kansas* nor the
*UBS* court addressed the flexible structure of the extender statute.

isting federal limitations periods.  Instead, FHFA merely argues that these results were *intended* by Congress.  *See* Opp. at 33-35.  That argument cannot be squared with either the text of the extender statute or its claimed purpose.

First, FHFA concedes that its reading of the extender statute would result in federal law claims asserted by FHFA being subject to a fixed limitations period of three or six years, regardless of how long the otherwise applicable federal statute of limitations might be.  Citing *NCUA Kansas*, 2012 WL 3028803, at *15, FHFA argues that this fixed limitations period "is an intended feature, not an oversight," because Congress's purpose in enacting the statute was supposedly to afford FHFA "a practical but fixed amount of time to bring an action."  Opp. at 34.

But that is just not true.  If Congress had wished to provide for a "fixed amount of time," the extender statute would have been very simple—it would have set the applicable limitations period as three/six years from the date of conservatorship for all claims, no matter what.  It did not do that.  Instead, the statute is designed to be flexible.  It sets the applicable limitations period as three/six years "*or*" "the period applicable under State law," whichever is "*longer*," and then runs that period from either "the date of [FHFA's] appointment" "*or*" "the date on which the cause of action accrues," whichever is "*later*."  12 U.S.C. § 4617(b)(12) (emphasis added).  Thus, where the statute applies, the three/six years was clearly intended to be a *minimum* (allowing for a longer limitations period or later accrual date if permitted by "applicable" "State law"), not a "fixed amount."  As such, FHFA's argument is in direct conflict with the plain language and structure of the statute.

FHFA's argument also makes no sense.  FHFA fails to explain why Congress would have provided for such flexibility for state law claims but simultaneously established a rigid, fixed limitations period for federal law claims—even where the otherwise applicable federal statute of limitations would be longer.  And no reason for such an inconsistency exists.  Because courts have a duty to "avoid statutory interpretations which would produce absurd results," the only reasonable conclusion is that

1   Congress did not intend for the extender statute to apply to federal law claims. *Comp-*

2   *ton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1184 (9th Cir. 2010).[43]

3       <u>Second</u>, FHFA also concedes that its interpretation of the extender statute will,

4   for certain federal law claims, result in FHFA being subject to a *shorter* limitations

5   period than all other potential plaintiffs. *See* Op. Br. at 40; Opp. at 33. Again citing

6   *NCUA Kansas* and *UBS*, FHFA asserts that so long as it has three years from the date

7   of the conservatorship to bring an action, "[i]f this result varies in some instances

8   from the limitations provisions governing most parties, it does not seem like a 'per-

9   verse' or 'absurd' result." Opp. at 33. FHFA, however, cannot have it both ways.

10  Elsewhere in its Opposition, FHFA states in absolute terms that the purpose of the ex-

11  tender statute was "to give FHFA '*more time* to decide whether and how to pursue

12  any claims it inherited as . . . conservator." *Id*. at 27 (emphasis added). If the purpose

13  of the extender statute was to give FHFA "more time," then any reading that results in

14  FHFA having *less time* than it otherwise would have is by definition an "absurd re-

15  sult." After all, it is known as the *extender* statute.

16      Nor is this problem "hypothetical," as FHFA contends, merely because FHFA

17  is not asserting a claim in this case that is subject to a federal statute of limitations ex-

18  ceeding three years. Opp. at 33-34. The issue here is how the extender statute should

19  be interpreted consistently in *all* cases alleging federal law claims, not just this one

20  case. The fact that FHFA's proposed reading of the statute would lead to absurd re-

21  sults in *some* cases is plainly relevant to show that Congress could not have intended

22  the extender statute to apply to federal law claims in *any* case.[44]

---

23  [43] Contrary to FHFA's suggestion (*see* Opp. at 34), neither the *NCUA Kansas* nor the
24  *UBS* court addressed the flexible structure of the extender statute.

25  [44] FHFA further contends that the illogical results its proposed interpretation would
    yield are unimportant because FHFA would only be subject to a shortened limitations
    period for claims accruing "after September 6, 2007." Opp. at 33. But that is irrele-
26  vant. Even assuming *arguendo* that absurd results would occur only as to claims ac-
    cruing after September 6, 2007—a universe of potential claims that FHFA does not
27  dispute could be enormous—such absurd results nevertheless prove that FHFA's in-
    terpretation of the extender statute is fundamentally flawed with respect to all cases
28  asserting federal law claims.

If Congress had truly intended the extender statute to apply to federal law claims, simply changing the second phrase of the disjunctive to "the period applicable under State *or Federal* law" easily would have avoided the absurd results and textual inconsistencies inherent in FHFA's proposed reading.  Those two additional words would have prevented any inconsistency in the treatment of state law claims and federal law claims, given FHFA the benefit of existing federal law periods greater than three/six years, and eliminated the possibility of FHFA being subject to a shorter limitations period than other plaintiffs asserting the same claims.  Yet, although those two words ("Federal law") appear *in eight other places throughout HERA*, *supra* at n.39, Congress chose not to add them to the extender statute.  The reason is clear:  Congress did not intend for the extender statute to apply to federal law claims.

### 3. There Is No Evidence That Congress Intended To Abandon The Policies Reflected In Federal Limitations/Repose Periods.

FHFA does not dispute that federal statutes of limitations and repose (such as Section 13 of the 1933 Act) are the result of thoughtful deliberation by Congress, and reflect a careful balancing of competing policies.  *See* Op. Br. at 40-41.  Yet, as it argues with respect to statutes of repose, FHFA contends that applying the extender statute to federal law claims will not harm any other federal policy, because it supposedly "created a new period for [a] single plaintiff."  Opp. at 35-36.  As detailed above, however, this argument is without merit.  *See supra*, at 28-31.  There is simply no reason to believe that Congress intended to grant Fannie Mae and Freddie Mac special privileges at the expense of the longstanding policies underlying existing federal limitations and repose periods:  "if Congress had intended such a sea change," "it would have said so clearly."  *Roche Molecular Sys., Inc.*, 131 S. Ct. at 2198-99.

### C. The Extender Statute Applies Only To Tort And Contract Claims.

FHFA does not dispute that its 1933 Act, Virginia Securities Act, and District of Columbia Securities Act claims are *sui generis* statutory claims, not "tort" or "con-

1   tract" claims.  *See* Opp. at 36-37.[45]  These claims were not created by contract or by

2   common law tort principles; they were created by *statute*, as part of a unique, complex

3   regulatory scheme aimed at promoting full disclosure in the securities markets.  *See*

4   Op. Br. at 42-43.  Nor does FHFA dispute that, on their face, subsections (A)(i) and

5   (ii) of the extender statute expressly reference only "contract" claims and "tort"

6   claims.  12 U.S.C. § 4617(b)(12)(A)(i)-(ii).  Instead, FHFA again relies on the phrase

7   "any action" in the statute's preamble, arguing that this language shows that the ex-

8   tender statute applies to "statutory claims . . . that are not traditionally conceived as

9   'tort' or 'contract' claims."  Opp. at 36.

10          This argument fails here for the same reason it fails as to federal law claims:

11   the phrase "any action" cannot be read in isolation.  *See supra*, at 32-34; *Leisnoi*, 154

12   F.3d at 1066.  Rather, its meaning is qualified and limited by the express references to

13   "contract" and "tort" claims that immediately follow.  As the Ninth Circuit has held,

14   "under traditional principles of statutory interpretation, Congress' explicit listing of

15   [certain categories] should be understood as an exclusion of others."  *Silvers v. Sony*

16   *Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005).  Thus, by specifying certain

17   applicable limitations periods for "contract" and "tort" claims only, the only logical

18   conclusion is that Congress intended to exclude all other types of claims—including

19   *sui generis* statutory claims under the federal and state securities laws.[46]

20

21   [45] FHFA cites *Holdsworth v. Strong*, 545 F.2d 687, 694 n.3 (10th Cir. 1976), which
     analogized Section 10(b) of the Securities Exchange Act of 1934 to a "statutory tort."
22   Opp. at 37.  But there are no Section 10(b) claims at issue here, and FHFA fails to ex-
     plain why its asserted claims should be considered "torts."  *See In re Craftmatic Sec.*
23   *Litig.*, 890 F.2d 628, 637 (3d Cir. 1990) (Section 12(a)(2) claims are "not analogous
     to . . . tort law"); *Wilson v. Saintine Exploration & Drilling Corp.*, 872 F.2d 1124,
24   1127 (2d Cir. 1989) (Section 12(a)(2) is "not derived from tort law principles").

25   [46] Many of the cases FHFA cites (*see* Opp. at 36-37) are inapposite, either because
     they involved common law claims (not statutory claims), *see FDIC v. Wabick*, 335
26   F.3d 620, 624 (7th Cir. 2003); *Smith v. FDIC*, 61 F.3d 1552, 1556 (11th Cir. 1995);
     *RTC v. Gardner*, 798 F. Supp. 790, 792 (D.D.C. 1992), or because neither the parties
27   nor the court addressed whether the FIRREA extender statute applies to statutory
     claims, *see Joslin v. Grossman*, 107 F. Supp. 2d 150, 154-55 (D. Conn. 2000); *FDIC*
28   *v. Hinch*, 879 F. Supp. 1099, 1108 (N.D. Okla. 1995).  The remaining cases cited by
     FHFA—*UBS*, *NCUA Kansas*, and *FDIC v. Zibolis*, 856 F. Supp. 57 (D.N.H. 1994)—

FHFA's analogy to 28 U.S.C. § 2415 (the default statute of limitations for "actions brought by the United States" for money damages) is also misplaced.  *See* Opp. at 37.  For one thing, as FHFA itself successfully argued in *Herron*, FHFA "is not the United States" in its capacity as conservator.  *See supra*, at 8-12.  In addition, although courts have analogized certain statutory claims to either "tort" or "contract" claims for purposes of applying § 2415, other statutory claims have been held to be *neither* "tort" nor "contract" and therefore outside the scope of § 2415.  *See United States v. Tri-No Enters., Inc.*, 819 F.2d 154, 158-59 (7th Cir. 1987); *United States v. City of Palm Beach Gardens*, 635 F.2d 337, 339-41 (5th Cir. 1981); *United States v. Lutheran Med. Ctr.*, 524 F. Supp. 421, 424-26 (D. Neb. 1981).  Because FHFA's federal and state securities law claims are truly *sui generis* and cannot be characterized as either "tort" or "contract" claims, the same result must follow here.

### D.    Even If The Extender Statute Applied To FHFA's 1933 Act Claims, Many Of Them Nevertheless Would Be Time-Barred.

Even if the extender statute applied to statutes of repose, federal law claims, and *sui generis* statutory claims—which it does not—FHFA concedes that its Section 11 claims as to any MBS that were "bona fide offered to the public" before September 6, 2005 (more than three years before FHFA was appointed conservator) would be time-barred by the 1933 Act statute of repose.  Opp. at 40-42.  FHFA argues, however, that none of the 86 MBS at issue was "bona fide offered to the public" before that date, because all the relevant *prospectus supplements* were issued after September 6, 2005.  This argument ignores entirely this Court's previous rulings and should be rejected.

As this Court explained in *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1165 n.8 (C.D. Cal. 2010), for shelf registration statements filed prior to December 1, 2005, the relevant "offering" date for issuers and underwriters is "the effective date of the *registration statement*."  For shelf registrations on or after De-

---

were wrongly decided, as they placed undue emphasis on the "any action" language in the preamble without regard to the limiting words that follow.

1    cember 1, 2005 (effective date of the Securities Offering Reform), the relevant "offer-

2    ing" date is "the date of the *prospectus supplement*."[47]   The Court has applied this rule

3    repeatedly and consistently throughout the *Countrywide MBS MDL*.  Yet FHFA fails

4    even to acknowledge it here.

5            Instead, FHFA makes two arguments, both of which are meritless.  First, it as-

6    serts that the Amended Complaint alleges that all 86 MBS were "bona fide offered"

7    after September 6, 2005, and "this Court must take [that allegation] as true for purpos-

8    es of this motion."  Opp. at 40.  That assertion borders on frivolous, however, as such

9    allegations are plainly legal conclusions that need not be accepted as true on a motion

10    to dismiss.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

11            Second, as ostensible support for its argument, FHFA cites *FHFA v. UBS Ams.,*

12    *Inc.*, 2012 WL 2400263, at *4-5 (S.D.N.Y. June 26, 2012), which held that the 1933

13    Act repose period was not triggered until the date of the prospectus supplement, even

14    for shelf registrations before December 1, 2005.  Citing this Court's ruling in *In re*

15    *Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 943271, at *6 (C.D. Cal. Apr. 6, 2009),

16    the *UBS* court reasoned that even before the Securities Offering Reform, "a new offer-

17    ing date was triggered by a filing that represented a 'fundamental change' in the regis-

18    tration statement."  2012 WL 2400263, at *4.  But the *UBS* court appears to have mis-

19    read this Court's *Countrywide* decision.  As this Court actually held in *Countrywide*

20    (and in later decisions, *see, e.g.*, *Me. State*, 722 F. Supp. 2d at 1165 n.8), prior to the

21    Securities Offering Reform a new offering date was not triggered by just any "filing"

22    reflecting a fundamental change, but only by a "*post-effective amendment to th[e] reg-*

23    *istration statement*"—*i.e.*, not a prospectus supplement.  17 C.F.R. § 229.512(a)(1)-

24    (2); *Countrywide*, 2009 WL 943271, at *6-7 ("initial bona fide offering date" reset

25    when "a *post-effective amendment* was filed to reflect a fundamental change") (em-

26    _____

[47] *Accord Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992); *In re Mun.*
27    *Mortg. & Equity, LLC, Sec. & Deriv. Litig.*, 2012 WL 2450161, at *30-31 (D. Md. June 26, 2012); *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d
28    618, 623 (S.D.N.Y. 2011).

1   phases added).  This was later changed as part of the Securities Offering Reform, such

2   that the date of the prospectus supplement became the "initial bona fide offering" date,

3   *see* 17 C.F.R. § 230.430B(f)(2), but this Court has held that this rule change was not

4   retroactive.  *See Countrywide*, 2009 WL 943271, at *5.

5       In short, there is no reason for this Court to revisit the rule it has applied con-

6   sistently in the *Countrywide MBS MDL*.  As a result, even if the extender statute ap-

7   plied (which it does not), FHFA's Section 11 claims would still be time-barred with

8   respect to 24 of the 86 MBS at issue because the shelf registration statements for those

9   24 MBS were issued prior to September 6, 2005.  *See* AC ¶¶ 401, 409.[48]

10  ### III.   *AMERICAN PIPE* TOLLING DOES NOT APPLY.

11      FHFA next argues that its 1933 Act claims were tolled by the filing of the *Lu-*

12  *ther*, *Washington State*, and *Maine State* class actions pursuant to *Am. Pipe & Constr.*

13  *Co. v. Utah*, 414 U.S. 538 (1974).  *See* Opp. at 44-45.  FHFA concedes, however, that

14  *American Pipe* tolling is inapplicable under this Court's prior rulings.  *See id.*

15      More specifically, FHFA concedes that this Court has repeatedly held that

16  "*American Pipe* tolling applies only when the named plaintiffs in the prior class action

17  purchased from *both* the same securitization *and* the same tranche as the class member

18  asserting tolling."  Opp. at 44 n.15; *accord Allstate Ins. Co. v. Countrywide Fin.*

19  *Corp.*, 824 F. Supp. 2d 1164, 1178-79 (C.D. Cal. 2011).[49]  By its silence, FHFA fur-

20  ther concedes that:  (1) the Amended Complaint fails to allege that Fannie Mae or

21  Freddie Mac purchased any of the same MBS tranches that were purchased by the *Lu-*

22  *ther/Washington State* named plaintiffs (*see* AC ¶¶ 264-73); and (2) in fact, none of

23  the *Luther/Washington State* named plaintiffs purchased any of the 48 MBS tranches

24  _____

    [48] FHFA does not dispute that Freddie Mac's Section 12(a)(2) claim as to one MBS ex-
25  pired under the three-year repose period because its purchase occurred prior to Septem-
    ber 6, 2005.  *See* AC ¶ 257; Op. Br. at 46 n.53 (CWL 2005-8).

26  [49] *Accord Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *2-8
    (C.D. Cal. May 5, 2011); *Stichting*, 802 F. Supp. 2d at 1131; *Progressive*, RJN Ex. 54
27  at 2-3; *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, 2012 WL 1798997, at *2
    (C.D. Cal. Feb. 17, 2012); *Omnibus Dismissal Order*, RJN Ex. 57 at 3-8, 10; *Western*
28  *& Southern*, RJN Ex. 58 at 3-4.

purchased by Fannie Mae or any of the 62 MBS tranches purchased by Freddie Mac. *See* Opp. at 44-45; AC ¶¶ 257-58; RJN Exs. 16-21.[50]

Instead, FHFA asks the Court to reconsider its prior rulings. But in doing so, FHFA merely repeats the same arguments this Court has already considered and rejected. For instance, FHFA argues that conditioning tolling on a named plaintiff's standing would result in absent class members filing "a needless multiplicity of actions." Opp. at 44-45. But the Court rejected this exact argument in *Maine State*, *Allstate*, and *Stichting*, among other cases. FHFA also cites *Genessee County Emps. Ret. Sys. v. Thornburg Mortg. Secs. Trust*, 825 F. Supp. 2d 1082 (D.N.M. 2011), and *In re Morgan Stanley Mortg. Pass-Through Certs. Litig.*, 810 F. Supp. 2d 650 (S.D.N.Y. 2011), but then admits that this Court distinguished those cases in its *Omnibus Dismissal Order*, RJN Ex. 57 at 6-8. *See* Opp. at 45 n.16. Finally, FHFA argues that it "reasonably relied on Luther's alleged standing," yet concedes that this Court has concluded that "no potential plaintiff could have reasonably relied on *Luther*." *Id*. In short, FHFA has not identified any reason why the Court should revisit its prior rulings, which "apply with equal force here."[51] *Allstate*, 824 F. Supp. 2d at 1178.

---

[50] FHFA's attempt to assert tolling based on *Maine State* fails for two reasons: (1) as with *Luther/Washington State*, FHFA fails to allege that any *Maine State* named plaintiff purchased the same MBS tranches as Fannie Mae or Freddie Mac (*see* AC ¶¶ 264-73); and (2) unless the applicable limitations and repose periods were tolled by the filing of *Luther/Washington State* (and they were not), FHFA's 1933 Act claims already expired by the time *Maine State* was filed in 2010, before any potential tolling could have begun. Indeed, in *Maine State* itself, plaintiffs' claims as to all but eight of the thousands of MBS tranches at issue were dismissed for lack of standing or because they were already time-barred. *See Me. State*, 2011 WL 4389689, at *2-8.

[51] FHFA also wrongly characterizes its position as "the majority view" on *American Pipe* tolling. Opp. at 44. In fact, the cases are split fairly evenly on this issue. In addition to this Court, numerous other courts around the country have concluded that class action tolling is inapplicable where the named plaintiff lacks standing. *See, e.g.*, *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000); *Walters v. Edgar*, 163 F.3d 430 (7th Cir. 1998); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 3155693 (N.D. Cal. Aug. 2, 2012); *In re Direxion Shares ETF Trust*, 279 F.R.D. 221 (S.D.N.Y. 2012); *Mass. Bricklayers & Masons Funds v. Deutsche Alt-A Sec.*, 273 F.R.D. 363 (E.D.N.Y. 2011); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010); *In re Wells Fargo Mortg.-Backed Certs. Litig.*, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010); *Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Certs., Series AR1*, 748 F. Supp. 2d 1246 (W.D. Wash. 2010); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 714 F. Supp. 2d 475

## IV. <u>THE FANNIE MAE TOLLING AGREEMENT IS IRRELEVANT</u>.

FHFA's attempt to invoke the tolling agreement entered into between Fannie Mae and the Countrywide Defendants (RJN Ex. 6) is without merit for two reasons. <u>First</u>, the one-year statute of limitations of both the 1933 Act and the District of Columbia Securities Act had already expired before the July 13, 2009 effective date of the tolling agreement. *See* Op. Br. at 49; RJN Ex. 6 at ¶ 1 ("Nothing in this Agreement shall be interpreted to extend any statute of limitations that may have already expired"). In its Opposition, FHFA argues that these limitations periods had not yet expired as of July 13, 2009, asserting that the HERA extender statute extended them as of September 6, 2008 and claiming that the Countrywide Defendants have "never disputed" that HERA "applies to extend statutes of limitations." Opp. at 46. Of course, the opposite is true. In their opening brief and in this brief, the Countrywide Defendants vigorously dispute that HERA applies to extend the statutes of limitations of the *1933 Act* or the *District of Columbia Securities Act*, because HERA does not apply to federal law claims or *sui generis* statutory claims. *See supra*, at 32-43. In any event, FHFA is effectively acknowledging that the tolling agreement is irrelevant to the limitations analysis here, because it is subsumed by the parties' dispute over the scope of the extender statute.[52]

<u>Second</u>, FHFA does not dispute—and therefore concedes—that the Fannie Mae tolling agreement did not suspend the running of the applicable statutes of repose. *See* Op. Br. at 49-50; Opp. at 45-46; RJN Ex. 6 at ¶ 1 (providing that the time after July 13, 2009 "shall not be included in calculating any statute of *limitations* that might be

---

(S.D.N.Y. 2010); *Palmer v. Stassinos*, 236 F.R.D. 460 (N.D. Cal. 2006); *Kruse v. Wells Fargo Home Mortg., Inc.*, 2006 WL 1212512 (E.D.N.Y. May 3, 2006); *In re Colonial Ltd. P'ship*, 854 F. Supp. 64 (D. Conn. 1994); *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374 (D. Mass. 1987); *Cunningham v. Ins. Co. of N. Am.*, 530 A.2d 407 (Pa. 1987).

[52] In other words, if the Court concludes that the extender statute does not apply to federal law claims or *sui generis* statutory claims, then the applicable limitations periods expired before the effective date of the tolling agreement and Fannie Mae's claims are time-barred. If the Court concludes otherwise, then the limitations periods would have been extended under HERA even without the tolling agreement.

1  applicable to the Tolled Claims") (emphasis added).[53]  Because the applicable three-

2  year repose periods expired before this action was filed on September 2, 2011, *see su-*

3  *pra* at 13, and the HERA extender statute does not apply to statutes of repose, *see su-*

4  *pra* at 13-31, FHFA's 1933 Act and District of Columbia Securities Act claims are

5  time-barred as to all 48 MBS purchased by Fannie Mae, and the Fannie Mae tolling

6  agreement cannot save these untimely claims.

7                                      **CONCLUSION**

8         For all of these reasons, the Countrywide Defendants respectfully request that

9  Counts I-VII of the Amended Complaint be dismissed with prejudice.

10  Dated:  September 7, 2012              **GOODWIN PROCTER LLP**

11                                        /s/ Brian E. Pastuszenski
                                          Brian E. Pastuszenski (*pro hac vice*)
12                                        Daniel J. Tyukody (State Bar No. 123323)
                                          John B. Daukas (*pro hac vice*)
13                                        Brian C. Devine (State Bar No. 222240)

14                                        *Counsel for the Countrywide Defendants*

15

16

17

18

19

20

21

22

23

24

---

25  [53] Nor does FHFA dispute that statutes of repose cannot be waived by agreement in
     any event, *see* Op. Br. at 50 n.60 (collecting cases), aside from a cryptic citation to *In*
26  *re Enron Corp. Sec., Deriv. & ERISA Litig.*, 2005 WL 3704688, at *7 n.42 (S.D. Tex.
     Dec. 5, 2005).  *See* Opp. at 46.  All that *Enron* held, however, is that the applicable
27  repose period expired before the effective date of the tolling agreement, barring the
     claims at issue there.  The defendants did not argue that statutes of repose can never
28  be waived by agreement, and the court did not consider or address the issue.