Brian E. Pastuszenski (*pro hac vice*)
bpastuszenski@goodwinprocter.com
John B. Daukas (*pro hac vice*)
jdaukas@goodwinprocter.com
Brian C. Devine (State Bar No. 222240)
bdevine@goodwinprocter.com
**GOODWIN PROCTER LLP**
53 State Street
Boston, Massachusetts  02109
Telephone:  617-570-1000
Facsimile:   617-523-1231

Daniel J. Tyukody (State Bar No. 123323)
dtyukody@goodwinprocter.com
601 S. Figueroa Street, 41st Floor
Los Angeles, CA  90017
Telephone:  213-426-2500
Facsimile:  213-623-1673

*Attorneys for Defendants*
Countrywide Financial Corp., Countrywide
Home Loans, Inc., Countrywide Capital Markets
LLC, Countrywide Securities Corp., CWABS,
Inc., CWALT, Inc., and CWMBS, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 11-ML-02265-MRP (MANx)<br><br>**MEMORANDUM IN SUPPORT OF COUNTRYWIDE DEFENDANTS' MOTION FOR RECONSIDERATION OF OCTOBER 18, 2012 ORDER**<br><br>Date:           February 24, 2014<br>Time:          11:00 a.m.<br>Courtroom:  12<br>Judge:        Hon. Mariana R. Pfaelzer |
| FEDERAL HOUSING FINANCE AGENCY, as conservator for THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br>               Plaintiff,<br>     v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br>               Defendants. | Case No. 12-CV-01059-MRP (MANx) |

# <u>Table of Contents</u>

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................... 4

ARGUMENT ........................................................................................................ 7

I.   THE HERA EXTENDER PROVISION DOES NOT PREEMPT THE
     VIRGINIA AND D.C. SECURITIES ACT STATUTES OF REPOSE ........ 7

     A.   Claims Under The Virginia Securities Act And D.C. Securities
          Act Are Subject To Statutes Of Repose................................................. 8

     B.   There Is A Strong Presumption Against Preemption Of State
          Law ..................................................................................................... 10

     C.   There Is No Evidence Of "Clear And Manifest" Intent To
          Preempt ............................................................................................... 11

          1.   FHFA Cannot Establish Express Preemption........................... 12

          2.   FHFA Cannot Establish Implied Preemption............................ 15

II.  THE HERA EXTENDER PROVISION DOES NOT IMPLICITLY
     AMEND THE 1933 ACT STATUTE OF REPOSE ................................... 17

CONCLUSION.................................................................................................... 23

## Table of Authorities

CASES                                                                                    Page(s)

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
   513 U.S. 265 (1995) ...................................................................... 13

*Altria Grp., Inc. v. Good*,
   555 U.S. 70 (2008) ........................................................................ 10

*Blanchette v. Conn. Gen. Ins. Corps.*,
   419 U.S. 102 (1974) ...................................................................... 21

*Carlucci v. Han*,
   886 F. Supp. 2d 497 (E.D. Va. 2012) ................................................ 9

*Caviness v. DeRand Res. Corp.*,
   983 F.2d 1295 (4th Cir. 1993) ........................................................ 9

*Cipollone v. Liggett Grp., Inc.*,
   505 U.S. 504 (1992) ...................................................................... 11

*Cors v. Langham*,
   683 F. Supp. 1056 (E.D. Va. 1988) .................................................. 9

*Doe v. Kamehameha Schs.*,
   470 F.3d 827 (9th Cir. 2006) (en banc) ........................................... 21

*FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp.*,
   No. 12-cv-08558, 2013 WL 4536177 (C.D. Cal. Aug. 26, 2013)..............*passim*

*FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp.*,
   No. 12-cv-8558, 2013 WL 6706090 (C.D. Cal. Dec. 19, 2013) ................*passim*

*FHFA v. Countrywide Fin. Corp.*,
   900 F. Supp. 2d 1055 (C.D. Cal. 2012) .......................................*passim*

*Firebaugh Canal Co. v. United States*,
   203 F.3d 568 (9th Cir. 2000) ......................................................... 20

*Goldstein v. Malcolm G. Fries & Assocs., Inc.*,
   72 F. Supp. 2d 620 (E.D. Va. 1999) ................................................. 9

*Gordon v. Virtumundo*,
   575 F.3d 1040 (9th Cir. 2009) ......................................................... 5

*Greenless v. Almond,*
   277 F.3d 601 (1st Cir. 2002) ........................................................................21

*Gregory v. Ashcroft,*
   501 U.S. 452 (1991) ........................................................................11

*Hess v. Snyder Hunt Corp.,*
   392 S.E.2d 817 (Va. 1990) ........................................................................14

*Hite v. Leeds Weld Equity Partner,s IV, L.P.,*
   429 F. Supp. 2d 110 (D.D.C. 2006) ........................................................................9

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996) ........................................................................11

*Morton v. Mancari,*
   417 U.S. 535 (1974) ........................................................................20, 22

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,*
   551 U.S. 644 (2007) ........................................................................19, 20, 22

*O'Melveny & Myers v. FDIC,*
   512 U.S. 79 (1994) ........................................................................14, 16

*Peters v. Riggs Nat'l Bank, N.A.,*
   942 A.2d 1163 (D.C. 2008) ........................................................................14

*Posadas v. Nat'l City Bank of N.Y.,*
   296 U.S. 497 (1936) ........................................................................20

*Rodriguez v. Holder,*
   619 F.3d 1077 (9th Cir. 2010) ........................................................................20

*Rodriguez v. United States,*
   480 U.S. 522 (1987) ........................................................................16, 19

*Samuels v. Dist. Of Columbia,*
   770 F.2d 184 (D.C. Cir. 1985) ........................................................................21

*Silver v. N.Y. Stock. Exch.,*
   373 U.S. 341 (1963) ........................................................................20

*Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.,*
   288 F.3d 405 (9th Cir. 2002) ........................................................................8

*United States v. Comprehensive Drug Testing, Inc.,*
   473 F.3d 915 (9th Cir. 2006) ............................................................ 7

*United States v. Hansen*,
   772 F.2d 940 (D.C. Cir. 1985)................................................... 21, 22

*United States v. Maes*,
   546 F.3d 1066 (9th Cir. 2008) ......................................................... 20

*Williams v. Chamer*,
   1993 WL 13032232 (Va. Cir. Ct. Mar. 25, 1993) ............................... 9

**STATUTES**

12 U.S.C. § 1821(d)(14) ................................................................ 1, 5

12 U.S.C. § 1821(k)(3) ...................................................................... 14

12 U.S.C. § 4617(b)(2)(A) ............................................................... 13

12 U.S.C. § 4617(b)(2)(D) ............................................................... 16

12 U.S.C. § 4617(b)(12) .............................................................. 1, 2, 15

12 U.S.C. § 4617(b)(12)(A) ............................................................. 12

12 U.S.C. § 4617(g)(2) ..................................................................... 14

15 U.S.C. § 77m .......................................................................*passim*

Act of Mar. 23, 1916, ch. 499, 1916 Va. Acts 835 (1916) ...................... 10

Pub. L. No. 88-503, 78 Stat. 620 (1964) ............................................ 10

**OTHER AUTHORITIES**

1A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction
   § 23:9-10 (7th ed. 2007) .............................................................. 21

C.D. Cal. L.R. 7–18 .................................................................... 1, 7

Under Local Rule 7–18 of the Local Rules of the Central District of California, the Countrywide Defendants[1] respectfully request reconsideration of this Court's October 18, 2012 Order regarding their motion to dismiss FHFA's Amended Complaint, *FHFA v. Countrywide Financial Corp.*, 900 F. Supp. 2d 1055 (C.D. Cal. 2012) (the "*FHFA* Order").

## PRELIMINARY STATEMENT

Reconsideration of the *FHFA* Order is appropriate following this Court's December 19, 2013 order denying reconsideration of its earlier August 26, 2013 order dismissing all claims in *FDIC as Receiver for Guaranty Bank v. Countrywide Securities Corp.*, No. 12-cv-08558, 2013 WL 4536177 (C.D. Cal. Aug. 26, 2013) ("*Guaranty Bank I*") and 2013 WL 6706090 (C.D. Cal. Dec. 19, 2013) ("*Guaranty Bank II*") (together, the "*Guaranty Bank* Orders").  In the *Guaranty Bank* Orders, this Court dismissed the FDIC's state blue sky law claims as time-barred because the statute of limitations extender provision of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(14), does not preempt blue sky law statutes of repose.  This holding applies with equal force here:  FHFA's claims under the Virginia Securities Act and the District of Columbia Securities Act are untimely because the extender provision of the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4617(b)(12), does not preempt the Virginia and D.C. blue sky law statutes of repose.  In addition, the preemption analysis this Court applied in *Guaranty Bank* is substantially identical to the analysis applicable under longstanding Supreme Court case law when (as here) a later-enacted federal statute (the HERA extender provision) is argued to displace or modify an earlier-enacted federal statute (the 1933 Act statute of repose).  As such, the

---

[1] This memorandum refers to Defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Capital Markets, LLC, Countrywide Securities Corporation, CWABS, Inc., CWALT, Inc., and CWMBS, Inc., collectively, as the "Countrywide Defendants"; and to Plaintiff Federal Housing Finance Agency as conservator for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation as "FHFA."

Countrywide Defendants respectfully submit that the evolution of the Court's thinking reflected in the *Guaranty Bank* Orders should lead the Court to conclude that the HERA extender provision also does not implicitly amend or repeal the 1933 Act's statute of repose.  For all of these reasons, the Court should reconsider its earlier rulings as to the timeliness of FHFA's claims under the Virginia Securities Act, D.C. Securities Act, and 1933 Act, and it should dismiss all of these claims as time-barred.

Indeed, the present case is analytically indistinguishable from *Guaranty Bank*. The statutory text and apparent purpose of the HERA extender provision are virtually identical to the text and purpose of the FIRREA extender provision.  And this Court already has implicitly recognized that the *FHFA* Order must be altered based on the reasoning of the *Guaranty Bank* Orders:

> Plaintiffs contend that *Guaranty Bank* is clearly erroneous because it contravenes prior decisions of this Court [*i.e.*, the *FHFA* Order]. . . .  The Court believes that *Guaranty Bank* correctly recognizes that the FDIC's interpretation of the extender statute implicates preemption and employs the proper analysis required under such circumstances. . . .  Thus, to the extent *Guaranty Bank* is at odds with prior decisions of this Court, if at all, *the pertinent question is not whether those decisions require reconsideration of* Guaranty Bank*, but whether* Guaranty Bank *requires reconsideration of those prior decisions*.

*Guaranty Bank II*, 2013 WL 6706090, at *10 (emphasis added).[2]

More specifically, the Court explained in the *Guaranty Bank* Orders that there is a longstanding, strong presumption against the preemption of state law, and that courts may only find that federal law displaces state law where Congress expressed a

_____

[2] *Accord id.* at *9 ("FHFA has used 12 U.S.C. § [4617(b)(12)] in this and other courts to supplant limitation periods in Virginia and the District of Columbia," and where "a party alleges that federal law supersedes a conflicting state law, courts must employ the requisite preemption analysis . . . before overriding the delicate balance between state and federal law"); Declaration of Adam Slutsky ("Slutsky Decl.") Ex. A (*Guaranty Bank* July 30, 2013 Hr'g Tr.) at 30 ("we've really got to do our best with this whole thing even if something that this court has done would have to be altered").

1    "clear and manifest" intent to do so.  Here, as in *Guaranty Bank*, there is no evidence

2    suggesting that Congress intended the HERA extender provision to preempt the

3    Virginia and D.C. Securities Act statutes of repose.  First, as this Court has already

4    held in both the *FHFA* Order and the *Guaranty Bank* Orders, the text of the HERA

5    extender provision is ambiguous as to whether it applies to statutes of repose.  As in

6    *Guaranty Bank*, such ambiguity by definition precludes any finding of the requisite

7    "clear and manifest" intent to supplant state statutes of repose.  In addition, HERA's

8    legislative history does not even reference the extender provision at all, much less

9    statutes of repose, and provides no basis to conclude that the extender provision was

10   intended to preempt statutes of repose.  Nor is there any basis for implied preemption.

11   In that regard, as the Court explained in the *Guaranty Bank* Orders with respect to the

12   FIRREA extender provision, the HERA extender provision does not "occupy the

13   legislative field," it was not "impossible" for FHFA to comply with the applicable

14   Virginia and D.C. statutes of repose, and there is no "sharp conflict" between the state

15   statutes of repose and the accomplishment of the federal objectives underlying HERA.

16          In short, just as the FIRREA extender provision does not preempt state blue sky

17   statutes of repose, the virtually identical HERA extender provision does not preempt

18   state blue sky statutes of repose for the same reasons.  FHFA's Virginia and D.C. blue

19   sky claims are thus time-barred under the applicable state law repose periods.

20          Because of the nearly identical analytical framework applicable to the

21   relationship between the 1933 Act statute of repose and the HERA extender provision,

22   the Court's analysis and ultimate holding in the *Guaranty Bank* Orders also requires

23   the conclusion that the HERA extender provision does not displace the 1933 Act

24   statute of repose.  When analyzing whether a federal law displaces a state law, courts

25   presume that there is no preemption unless there is evidence of "clear and manifest"

26   Congressional intent to the contrary.  Likewise, when analyzing whether a later-in-

27   time federal statute displaces an earlier-in-time federal statute, courts similarly

28   presume that the later statute has not modified or repealed the earlier statute unless

1   there is evidence of "clear and manifest" Congressional intent to do so.  Just as the

2   presumption against preemption is rooted in respect for the enactments of state

3   legislatures, the strong presumption against implied amendment/repeal of earlier

4   federal statutes is similarly grounded in judicial respect for the ultimate authority of

5   the federal legislature to make laws.  The Supreme Court has warned that courts may

6   not pick and choose which of Congress' laws to enforce, and the presumption against

7   implied amendment/repeal ensures that a later statute will supplant or amend an earlier

8   statute only if Congress' intent to do so was "clear and manifest."  Otherwise, federal

9   laws must be interpreted harmoniously, to give effect to each.

10      Here, for the same reasons that led this Court to find no preemption in the

11  *Guaranty Bank* Orders—including the ambiguity of the statutory text and the absence

12  of any relevant legislative history, the Court should now conclude that there is no

13  "clear and manifest" Congressional intent that the HERA extender provision supplant

14  the 1933 Act statute of repose.  As a result, FHFA's 1933 Act claims, like its Virginia

15  and D.C. Securities Act claims, are untimely under the applicable repose period and

16  must be dismissed with prejudice.

17                          **BACKGROUND**

18      FHFA's claims arise from the GSEs' alleged purchases of approximately $26.6

19  billion of Countrywide RMBS between August 30, 2005 and January 23, 2008.  *See*

20  *FHFA* Order, 900 F. Supp. 2d at 1059.  On September 2, 2011—more than three years

21  after the last of those purchases—FHFA sued the Countrywide Defendants.  *Id.*

22      On July 13, 2012, the Countrywide Defendants moved to dismiss FHFA's

23  claims under the 1933 Act, Virginia Securities Act, and D.C. Securities Act as time-

24  barred.  *See id* at 1059-60.  The Countrywide Defendants argued that because "FHFA

25  did not sue with[in] three years of purchase, Section 13 [of the 1933 Act] and the

26  Virginia and D.C. Securities Act bar the first seven counts."[3]  *Id.* at 1061.  The

27  _____

28  [3] FHFA brings Counts 1, 2, and 3 of the Amended Complaint under the 1933 Act,
Counts 4 and 5 under the Virginia Securities Act (based on Freddie Mac's 29 RMBS
purchases on or after September 6, 2006), and Counts 6 and 7 under the D.C.

Countrywide Defendants also argued that the HERA extender provision does not apply because, among other reasons, "extending statutes of repose would affect 'repeal by implication' of Section 13" and would result in preemption of the Virginia and D.C. Securities Acts. *Id.* at 1066; *see FHFA*, Hr'g Tr. at 35 (Sept. 19, 2012) (Slutsky Decl. Ex. B) (arguing that FHFA is asking the Court "implicitly to preempt state law repose periods" against the backdrop of the "presumption against preemption," as the Ninth Circuit described in *Gordon v. Virtumundo*, 575 F.3d 1040, 1060 (9th Cir. 2009)). On October 18, 2012, this Court held that "HERA applies to statutes of repose" without distinguishing between the statutes of repose under the 1933 Act, Virginia Securities Act, and D.C. Securities Act. *FHFA Order*, 900 F. Supp. 2d at 1061-67.

Nine months later, the Court asked the parties in another case in this multidistrict litigation proceeding to address at a motion-to-dismiss hearing whether "the doctrine of federal preemption should affect the Court's interpretation of [the FIRREA extender provision] and its application to state statutes of repose." *See Guaranty Bank*, No. 12-cv-08558, Minute Order (C.D. Cal. July 24, 2013) (Dkt. No. 82). At the hearing on that motion, the Court noted that it had thought "long and hard" about preemption considerations and statutes of repose, and stated that "we've really got to do our best with this whole thing even if something that this court has done would have to be altered." Slutsky Decl. Ex. A at 30. The Court later reiterated in *Guaranty Bank I* that it had not addressed explicitly whether the extender provision "extends *state* statutes of repose, a question that has troubled the Court for some time. The Court now takes the opportunity to address this issue in detail." *Guaranty Bank I*, 2013 WL 4536177, at *4 (emphasis in original).

In *Guaranty Bank I*, the Court held that the language, history, and purposes of FIRREA, particularly its extender provision, 12 U.S.C. § 1821(d)(14), did not

---

Securities Act (based on Fannie Mae's 48 RMBS purchases). *See FHFA* Order, 900 F. Supp. 2d at 1060-61; Am. Compl. ¶¶ 257-58, 401, 415, 435, 451, 469, 485, 503.

evince the requisite "clear and manifest" Congressional intent to supersede blue sky law statutes of repose and overcome the well-settled, strong presumption against preemption.  2013 WL 4536177, at *6.  The Court considered in turn all forms of federal preemption—express and implied, field and conflict, impossibility and obstacle—before concluding that it could not find the requisite "clear and manifest" Congressional intent to supplant state legislatures' decisions through statutes of repose to terminate the substantive rights they had created in their blue sky statutes after fixed time periods.  *Id.* at *5-9.  In reaching this conclusion, the Court noted that the presumption against preemption that the U.S. Supreme Court had established in various decisions was particularly strong in this context in light of the historic role that state blue sky laws have played in the regulation of securities transactions.  *Id.* at *5.  In short, the Court found nothing in the text of the extender provision or its legislative history indicating that Congress clearly manifested an intent to allow the FDIC as receiver for failed banks "to substantively redefine state [blue sky law] causes of action in furtherance of" what the FDIC described as FIRREA's dollar-recovery objective.  *Id.* at *7-8.

On September 10, 2013, the FDIC moved for reconsideration of *Guaranty Bank I*.  On December 19, 2013, the Court reaffirmed its *Guaranty Bank I* ruling and denied the FDIC's motion for reconsideration in *Guaranty Bank II*.  *See* 2013 WL 6706090, at *12.  Addressing the FDIC's arguments for reconsideration, the Court first held that preemption is the proper framework for analyzing FIRREA's extender provision.  *Id.* at *7.  The Court rejected the FDIC's characterization of that provision as simply a limited exception that applies only to the FDIC and does not implicate preemption analysis.  *Id.* at *7-9.  The Court also concluded that the FDIC did not identify any evidence of  "clear and manifest" Congressional intent to preempt state statutes of repose, noting among other things the absence of any reference in the statutory text to statutes of repose and examining in great detail Congress' understanding of the distinction between a "statute of limitations" (*i.e.*, the term that Congress used in

FIRREA's extender provision) and a "statute of repose" (*i.e.*, a term that Congress has used in other legislation but not FIRREA). *Id.* at *4-6, 9-10. Third, the Court rejected the FDIC's argument that its *Guaranty Bank I* ruling was at odds with its prior rulings. The Court explained that "to the extent *Guaranty Bank* is at odds with prior decisions of this Court, if at all, the pertinent question is not whether those decisions require reconsideration of *Guaranty Bank*, but whether *Guaranty Bank* requires reconsideration of those prior decisions." *Id.* at *10. With the Court having resolved the FDIC's motion for reconsideration, the Countrywide Defendants now move for reconsideration of the *FHFA* Order based on the reasoning and holdings of the *Guaranty Bank* Orders.

## ARGUMENT

Under Local Rule 7–18(b), a motion for reconsideration of a decision is appropriate following "the emergence of new material facts or a change of law occurring after the time of such decision." C.D. Cal. L.R. 7-18(b). This Court's *Guaranty Bank* Orders constitute "a change of law" that require reconsideration of the *FHFA* Order.[4]

## I.    THE HERA EXTENDER PROVISION DOES NOT PREEMPT THE VIRGINIA AND D.C. SECURITIES ACT STATUTES OF REPOSE.

The *Guaranty Bank* Orders warrant reconsideration of this Court's rulings with respect to the timeliness of FHFA's blue sky law claims. FHFA's blue sky claims under both the Virginia Securities Act and D.C. Securities Act contain statutes of

---

[4] Although "Local Rule 7–18 does not expressly set a time frame in which to file a motion for reconsideration[,] . . . the rule has been read to 'provid[e] for a reasonable time within which to seek reconsideration.'" *United States v. Comprehensive Drug Testing, Inc.,* 473 F.3d 915, 928 (9th Cir. 2006), *superseded on other grounds,* 513 F.3d 1085, 1098 (9th Cir. 2008) (quoting *Meredith v. Erath,* 2001 WL 1729626, at *1 (C.D. Cal. Sept. 19, 2001)). Because the Court issued *Guaranty Bank II* on December 19, 2013, the Countrywide Defendants' motion for reconsideration here—filed less than thirty days from that Order—is timely. *See id.* at 928-29 (reasonable to file motion for reconsideration two months after order).

repose that FHFA contends the HERA extender statute supplants.  This Court's

holdings in *Guaranty Bank* require that those claims now be dismissed as time-barred.

**A.    Claims Under The Virginia Securities Act and D.C. Securities Act Are Subject To Statutes Of Repose.**

The threshold issue under this Court's *Guaranty Bank* Orders is whether the

Virginia Securities Act and D.C. Securities Act include statutes of repose.  *See*

*Guaranty Bank I*, 2013 WL 4536177, at *4 ("The Court must first determine whether

the TSA's five-year limitations provision is, in fact, a statute of repose.").  As this

Court has explained, statutes of limitations "require[] a lawsuit to be filed within a

specific period of time after a legal right has been violated," whereas statutes of

repose terminate the substantive legal right altogether.  *Id*. at *3.  Statutes of repose

operate "as a 'fixed, statutory cutoff date, usually independent of any variable, such as

claimant's awareness of a violation,'" and "afford[] defendants a measure of finality

by creating an absolute time limit on potential liability."  *Id*. (quoting *Munoz v.*

*Ashcroft*, 339 F.2d 950, 957 (9th Cir. 2003)).  Unlike statutes of limitations, statutes of

repose define and limit the substantive rights underlying the claim:  upon expiration,

they terminate the plaintiff's substantive right and "create a substantive right in [the

defendant] to be free from liability after a legislatively-determined period of time."

*Id*. (quoting *Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721

F.3d 95, 106 (2d Cir. 2013)).[5]

Here, it is clear that Section 13.1–522(D) of the Virginia Securities Act and

Section 31–5606.05(f) of the D.C. Securities Act are both statutes of repose.  By their

plain language, these statutes "function[] like a statute of repose because [each]

---

[5] *Accord FHFA* Order, 900 F. Supp. 2d at 1062 (quoting *Balum-Chuc v. Mukasey*, 547 F.3d 1044, 1049 (9th Cir. 2008) (statutes of repose turn on "the defendant's interests rather than the plaintiff's, and prohibit[] litigation based upon some fixed start point, rather than a variable time dependent on when the plaintiff's 'legal right has been violated'"); *Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405, 408 (9th Cir. 2002) (statutes of repose have "a substantive effect because [they] can bar a suit even before the cause of action has accrued, or, for that matter, retroactively after the cause of action has accrued").

establishes a fixed cut-off point . . . regardless of when the plaintiff discovered, or should have discovered, the alleged harm." *Id*. at *4. Under Section 13.1-522(D) of the Virginia Securities Act, "[n]o suit shall be maintained to enforce any liability created under this section unless brought within two years after the transaction upon which it is based," regardless of when the plaintiff learned of its claim or alleged injury. Under Section 31-5606.05(f) of the D.C. Securities Act, "[a] person may not sue . . . after the earlier of 3 years after the contract of sale or purchase, or . . . within one year after the discovery of the untrue statement or omission or after the discovery should have been made by the exercise of reasonable diligence." This mirrors Section 13 of the 1933 Act, providing for both a one-year limitations period and a three-year repose period.

Courts interpreting these statutes—including this Court—have held that these provisions operate as statutes of repose. *See Caviness v. DeRand Res. Corp.*, 983 F.2d 1295, 1305-06 (4th Cir. 1993) (interpreting Section 13.1-522(D) of the Virginia Securities Act as "an absolute cutoff" and "unqualified[]" two-year time limit); *Hite v. Leeds Weld Equity Partners, IV, L.P.*, 429 F. Supp. 2d 110, 114-15 (D.D.C. 2006) (applying 1933 Act standards to Section 31-5606.05(f) of D.C. Securities Act because it "is the closest analogue").[6] In the *FHFA* Order, this Court concluded that these statutes were "statutes of repose" in light of "the 'three years after the offer or sale' language in . . . [the] D.C. Securities Act, and the 'two years after the transaction' language in the Virginia Securities Act." *FHFA* Order, 900 F. Supp. 2d at 1062.

---

[6] *Accord Carlucci v. Han*, 886 F. Supp. 2d 497, 516 (E.D. Va. 2012) (following *Caviness*); *Goldstein v. Malcolm G. Fries & Assocs., Inc.*, 72 F. Supp. 2d 620, 627-28 (E.D. Va. 1999) (same); *Cors v. Langham*, 683 F. Supp. 1056, 1058 (E.D. Va. 1988) ("The Virginia statute . . . has apparently taken the deliberate step of providing a hard and fast period of limitations for its Securities law."); *Williams v. Chamer*, 1993 WL 13032232, at *9 (Va. Cir. Ct. Mar. 25, 1993) ("[T]he express inclusion by the General Assembly of language in Section 13.1– 522(D) providing when a Virginia Securities Act claim accrues, *i.e.*, two years after the subject transaction, necessarily negates a legislative intent that . . . the Virginia 'discovery rule'[] applies to such claims.").

**B.** __There Is A Strong Presumption Against Preemption Of State Law__.

It is undisputed that absent the application of the HERA extender provision, both the Virginia and D.C. Securities Act statutes of repose expired before this action was filed and FHFA's blue sky claims would be time-barred. *Id.* at 1061. To avoid dismissal, FHFA has argued that the Virginia and D.C. Securities Act statutes of repose were supplanted and preempted by the HERA extender provision. Am. Compl. ¶¶ 412, 433, 449, 467, 483, 501, 517; *Guaranty Bank II*, 2013 WL 6706090, at *9.

As the Court explained in the *Guaranty Bank* Orders, however, the Supreme Court has held that there is a "presumption against preemption," and courts must "address[] claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *Guaranty Bank I*, 2013 WL 4536177, at *5 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995)). This presumption "is grounded in concerns for state sovereignty" and "respect for the states as independent sovereigns in our federal system." *Id.* at *5 n.5 (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009)). Thus, courts must "assume that Congress does not cavalierly pre-empt state-law causes of action" and, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption." *Guaranty Bank I*, 2013 WL 4536177, at *5 & n.5 (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008)).

The presumption against preemption "applies with particular force when Congress has legislated in a field traditionally occupied by the States," *Altria*, 555 U.S. at 77, such as regulation of securities transactions. As this Court recognized in the *Guaranty Bank* Orders, "the states have historically regulated the sale of securities under various 'blue-sky' laws." *Guaranty Bank I*, 2013 WL 4536177, at *4. Indeed, Virginia enacted its first blue sky statute in 1916 (well before even the federal securities laws were passed), and the D.C. Securities Act was passed 50 years ago, in 1964. *See* Act of Mar. 23, 1916, ch. 499, 1916 Va. Acts 835 (1916); Pub. L. No. 88-

1   503, 78 Stat. 620 (1964).  In short, because the Virginia and D.C. blue sky laws are
2   "areas of historic state regulation," the presumption against preemption applies with
3   particular force here.  *Guaranty Bank II*, 2013 WL 6706090, at *9-10.

4   **C.**   **There Is No Evidence Of "Clear And Manifest" Intent To Preempt.**

5          To overcome the strong presumption against preemption, FHFA must show that
6   it was "the clear and manifest purpose of Congress" for the HERA extender provision
7   to displace the Virginia and D.C. Securities Act statutes of repose.  *Guaranty Bank I*,
8   2013 WL 4536177, at *4-5 (quoting *Altria*, 555 U.S. at 77); *accord Guaranty Bank II*,
9   2013 WL 6706090, at *2 ("[T]he Court was unable to find 'clear and manifest'
10  Congressional intent to displace the TSA's statute of repose."); *Medtronic, Inc. v.
11  Lohr*, 518 U.S. 470, 485 (1996) (no preemption "unless that was the clear and
12  manifest purpose of Congress"); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516
13  (1992) ("[T]he purpose of Congress is the ultimate touchstone of pre-emption
14  analysis.").  As the Supreme Court held in *Gregory v. Ashcroft*, 501 U.S. 452, 460
15  (1991):

16          [Preemption] is an extraordinary power in a federalist system.  It is a power that
17          we must assume Congress does not exercise lightly. . . .  Congressional
18          interference with a [decision of the State] would upset the usual constitutional
19          balance of federal and state powers.  For this reason, it is incumbent upon the
20          federal courts to be certain of Congress' intent before finding that federal law
21          overrides this balance.  We explained recently:  "[I]f Congress intends to alter
22          the usual constitutional balance between the States and the Federal
23          Government, it must make its intention to do so unmistakably clear. . . ."

24          Here, the text of the HERA extender provision is identical to the text of the
25  FIRREA extender provision, and the Court's preemption analysis in the *Guaranty
26  Bank* Orders applies identically here as well.  As in *Guaranty Bank*, there is no
27  evidence that it was "the clear and manifest purpose of Congress" that the HERA
28  extender provision would displace the Virginia and D.C. Securities Act statutes of

repose.  Just as the Court held in the *Guaranty Bank* Orders that the FIRREA extender provision does not preempt the Texas blue sky statute of repose, FHFA likewise cannot overcome the strong presumption against preemption here.  Because the HERA extender provision does not preempt the Virginia and D.C. Securities Act statutes of repose, those claims are now time-barred.

### 1.   FHFA Cannot Establish Express Preemption.

To establish express preemption, FHFA must show that the requisite "clear and manifest" Congressional intent is evident in either the plain language of the HERA extender provision or its legislative history.  *See Guaranty Bank I*, 2013 WL 4536177, at *5.  It cannot do so here.

<u>First</u>, as the Court held in both the *FHFA* Order and the *Guaranty Bank* Orders, the term "statute of limitations" as used "[i]n the context of HERA's extender provision"[7] is "ambiguous with respect to whether [it] included statutes of repose," because "Congress and federal courts continued to confuse the terms 'statute of limitations' and 'statute of repose' in 2008" when HERA was passed.  *Guaranty Bank I*, 2013 WL 4536177, at *5; *accord Guaranty Bank II*, 2013 WL 6706090, at *4, 6; *FHFA* Order, 900 F. Supp. 2d at 1063-66.  The Court reached this conclusion after conducting an exhaustive review of relevant case law and other Congressional statutes.  *See id*.  Indeed, the Court noted that the fact "Congress' intent is ultimately ambiguous" "is underscored by the current landscape of judicial interpretation on the issue," since "[t]he fact that respected federal judges have reached widely divergent interpretations of identical extender statutes suggests that at least some degree of ambiguity surrounds this question."  *Guaranty Bank II*, 2013 WL 6706090, at *4, 6.

The ambiguity of the HERA extender provision is fatal to a finding of express preemption.  "Ambiguous" is the polar opposite of "clear and manifest."  As the

---

[7] *See* 12 U.S.C. § 4617(b)(12)(A) ("the applicable *statute of limitations* with regard to any action brought by the Agency as conservator or receiver shall be. . . .") (emphasis added).

1    Supreme Court held in *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 292

2    (1995), "[t]o the extent that federal statutes are ambiguous, we do not read them to

3    displace state law.  Rather, we must be 'absolutely certain' that Congress intended

4    such displacement before we give preemptive effect to a federal statute."  In other

5    words, because the text of the HERA extender provision is ambiguous as to whether it

6    applies to state law statutes of repose, by definition that text does not evince "clear

7    and manifest" Congressional intent to preempt.  Thus, it cannot overcome the strong

8    presumption against preemption.

9            Although recognizing the ambiguity of the HERA extender provision in the

10   *FHFA* Order, the Court did not address this ambiguity in the context of preemption

11   analysis and did not consider its significance in relation to the strong presumption

12   against preemption.  Instead, the Court noted that "[t]o the extent that a statute is

13   ambiguous in assigning a limitations period for a claim, we will interpret it in a light

14   most favorable to the government."  *FHFA* Order, 900 F. Supp. 2d at 1066 (citing

15   *FDIC v. Former Officers & Dirs. of Metro. Bank*, 884 F.2d 1304, 1309 (9th Cir.

16   1989)).  But the Court's thinking evolved after issuing its *FHFA* Order.  In the

17   *Guaranty Bank* Orders, the Court explained that "because the presumption against

18   preemption is grounded in concerns for state sovereignty . . . the presumption

19   supersedes the notion that 'ambiguous statutes of limitation will be interpreted in a

20   light most favorable to the government.'"  *Guaranty Bank I*, 2013 WL 4536177, at *5

21   n.5.  The Court's words apply equally here.  As such, because of the strong

22   presumption against preemption, the ambiguity of the HERA extender provision

23   precludes a finding of express preemption based on the statutory text.

24           <u>Second</u>, other provisions of HERA strongly suggest that Congress did *not*

25   intend to preempt state law statutes of repose.  For example, HERA provides that

26   upon being appointed as conservator, FHFA "shall, . . . by operation of law,

27   immediately succeed to all rights, titles, powers, and privileges of [Fannie Mae and

28   Freddie Mac]."  12 U.S.C. § 4617(b)(2)(A).  As the Court explained in *Guaranty Bank*

1    *I*, 2013 WL 4536177, at *8, this means that FHFA merely "steps 'in the shoes'" of

2    Fannie and Freddie—*i.e.*, it obtains only the rights of Fannie and Freddie that existed

3    prior to conservatorship. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994).

4    But if the HERA extender provision were interpreted to preempt the Virginia and D.C.

5    Securities Act statutes of repose—which "define[], limit[], and even terminate[] the

6    right[s]" under state law, such preemption would "substantively redefine" the rights at

7    issue,[8] and "would effectively permit [FHFA] to succeed to a substantially different

8    right than that held by [Fannie and Freddie]." *Guaranty Bank I*, 2013 WL 4536177, at

9    *8. That would be inconsistent with the plain language of the statute, which like

10   FIRREA "empowers [FHFA] to sue on any state right it obtained from the failed

11   institution" but "does not manifest Congress' intent to alter the very nature of [those]

12   state claims." *Id.*[9]

13        <u>Third</u>, the legislative history of the HERA extender provision is similarly

14   devoid of any evidence suggesting that Congress had a "clear and manifest" intent for

15   the HERA extender provision to supplant state blue sky law statutes of repose. In the

16   *Guaranty Bank* Orders, the Court noted that the legislative history of the FIRREA

17   extender provision consisted of a single statement by Senator Riegle that the extender

18   provision "should be construed to maximize potential recoveries by the Federal

19   Government," and held that this legislative history "is insufficient to overcome the

20   presumption against preemption" because it "neither mentions statutes of repose nor

21   implies a concern for their effects." *Id.* at *6. The same is true of the HERA extender

---

[8] *See Hess v. Snyder Hunt Corp.*, 392 S.E.2d 817, 819 (Va. 1990) (a statute of repose is "a redefinition of the substantive rights and obligations of the parties to any litigation"); *Peters v. Riggs Nat'l Bank, N.A.*, 942 A.2d 1163, 1169 (D.C. 2008) (a statute of repose is a "rule of substantive law") (internal quotation marks and citation omitted).

[9] *See also Guaranty Bank I*, 2013 WL 4536177, at *8 ("[C]ongressional acceptance of the states' role in defining the scope of [the conservator's] various causes of action is evidenced by the enactment of 12 U.S.C. § 1821(k)(3), which authorizes the FDIC to sue directors or officers of insured institutions for 'disregard of a duty of care . . . *as such terms are defined and determined under applicable State law*'") (emphasis by Court); *compare* 12 U.S.C. § 4617(g)(2) (HERA provision identical to 12 U.S.C. § 1821(k)(3)).

1   provision.  Indeed, the Court's words apply even more powerfully here, because

2   HERA's legislative history does not even *reference* the extender provision, let alone

3   address statutes of repose or whether Congress intended to displace state statutes of

4   repose.  Instead, the legislative history is entirely silent on this issue.  Thus, HERA's

5   legislative history cannot overcome the presumption against preemption and, as in the

6   *Guaranty Bank* Orders, there is no basis for a finding of express preemption.

7                    **2.      FHFA Cannot Establish Implied Preemption.**

8           There are two forms of implied preemption:  field preemption and conflict

9   preemption.  *See Guaranty Bank I*, 2013 WL 4536177, at *6.  Neither applies here.

10          <u>First</u>, courts may infer a "clear and manifest" intent to preempt where the

11  "federal law so thoroughly occupies a legislative field as to make reasonable the

12  inference that Congress left no room for the States to supplement it."  *Id*.  But it is

13  beyond dispute that the HERA extender provision does not "thoroughly occup[y] [the]

14  legislative field" to the exclusion of state law.  Like the FIRREA extender provision at

15  issue in the *Guaranty Bank* Orders, the HERA "extender provision clearly leaves

16  room for the operation of state law by recognizing state causes of action sounding in

17  contract and tort" and "sav[ing] state statutes of limitations from preemption to the

18  extent they exceed the prescribed federal limitations period."  *Id*.; 12 U.S.C.

19  § 4617(b)(12).  Field preemption therefore does not apply.

20          <u>Second</u>, there are two forms of conflict preemption: impossibility and obstacle.

21  *See Guaranty Bank I*, 2013 WL 4536177, at *7.  As the Court held in *Guaranty Bank*

22  with respect to the FDIC, impossibility preemption does not apply here because it was

23  not impossible for FHFA to comply with both the federal extender provision and the

24  state statutes of repose.  Although the Virginia and D.C. repose periods have now

25  expired, FHFA "could have timely brought the [blue sky] claims" by filing suit within

26  two years (Virginia) or three years (D.C.) of when the securities were purchased.  *Id*.

27          Obstacle preemption may be found where the state law "stands as an obstacle to

28  the accomplishment and execution of the full purposes and objectives of Congress."

1    *Id.*  But as this Court explained in the *Guaranty Bank* Orders, the Supreme Court and

2    the Ninth Circuit have made clear that the "mere fact of '[t]ension between federal and

3    state law is not enough.'"  *Id.*  Rather, courts may infer "clear and manifest"

4    Congressional intent to preempt only if there is a "sharp conflict" between the state

5    law and the accomplishment of the objectives of the federal law.  *Id.*  The primary

6    objectives of HERA's conservatorship provisions appear to be to enable FHFA to

7    "preserve and conserve the asserts and property" of Fannie Mae and Freddie Mac and

8    to put them "in a sound and solvent condition."  12 U.S.C. § 4617(b)(2)(D); *FHFA*

9    *Order*, 900 F. Supp. 2d at 1066-67.  This is substantially similar to the objectives of

10   the FDIC receivership scheme (including the FIRREA extender provision), which is

11   also aimed at marshalling assets and pursuing claims on behalf of the failed banks for

12   which the FDIC is appointed receiver.  *Guaranty Bank I*, 2013 WL 4536177, at *7.

13   But even though there may be "a degree of tension" between these objectives and state

14   statutes of repose—in that repose periods may extinguish claims that might have

15   resulted in the recovery of additional funds for Fannie and Freddie—"it certainly does

16   not present the kind of sharp conflict needed to preempt state law."  *Id.*  To the

17   contrary, it is well-settled that these kinds of "cost-recovery objective[s]" and "'more

18   money arguments' will not suffice to preempt state law."  *Id.*; *accord O'Melveny*, 512

19   U.S. at 88 ("[T]here is no federal policy that the fund should always win.").[10]

20   Obstacle preemption therefore does not apply.

21          For all of these reasons, FHFA cannot demonstrate that Congress had "the clear

22   and manifest purpose" to supplant the Virginia and D.C. Securities Act statutes of

23   repose.  FHFA thus cannot overcome the strong presumption against preemption, and

24   its blue sky claims must be dismissed as time-barred.

25

26   [10] *Accord Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) ("[N]o legislation
     pursues its purposes at all costs.  Deciding what competing values will or will not be
27   sacrificed to the achievement of a particular objective is the very essence of legislative
     choice—and it frustrates rather than effectuates legislative intent simplistically to
28   assume that *whatever* furthers the statute's primary objective must be the law.").

## II.   THE HERA EXTENDER PROVISION DOES NOT IMPLICITLY AMEND THE 1933 ACT STATUTE OF REPOSE.

The reasoning of the *Guaranty Bank* Orders also applies with equal force to the issue of whether the HERA extender provision operates as an implied amendment or repeal of the 1933 Act's three-year statute of repose with respect to claims asserted by FHFA.  The *Guaranty Bank* Orders thus represent a "change of law" warranting reconsideration of this Court's prior holding that FHFA's 1933 Act claims are timely under the HERA extender provision.  *See FHFA* Order, 900 F. Supp. 2d. at 1068, 1071.

In the *FHFA* Order, this Court declined to analyze the HERA extender provision under the Supreme Court case law concerning implied amendment or repeal of prior federal statutes.  Although acknowledging that "[i]mplied repeal is strongly disfavored" (just as preemption of state law is strongly disfavored), the Court adopted FHFA's argument that "[t]he limited nature of Congress' action . . . makes clear that HERA was not a repeal of any statute.  HERA simply created a new set of rules for FHFA alone."  *FHFA* Order, 900 F. Supp. 2d at 1066.  In other words, the Court ruled that the HERA extender provision is merely a limited exception to the 1933 Act statute of repose granted only to FHFA.  As a result, the Court viewed the Supreme Court's analytical framework for implied amendment/repeal as inapplicable.

In *Guaranty Bank*, however, the FDIC made exactly the same argument with respect to the FIRREA extender provision that FHFA had made with respect to the HERA extender provision.  Like FHFA, the FDIC argued that the FIRREA extender provision is merely a "discrete statutory exception limited to the FDIC," contending that preemption analysis thus is not implicated (just as FHFA had argued implied amendment/repeal analysis is not triggered in regard to the HERA extender statute).  *Guaranty Bank II*, 2013 WL 6706090, at *7.  But the Court then rejected the FDIC's argument, and instead applied a preemption analysis:

According to Plaintiffs, preemption is not implicated because the extender provision constitutes a *discrete statutory exception limited to the FDIC.* However characterized, extending the time limitation on Plaintiffs' claim *would effectively nullify the TSA's five-year statute of repose.* Such a result is impossible without invoking, even if implicitly, the supremacy of FIRREA as federal law.

*Id.* (emphasis added). The Court then applied the well-settled presumption against preemption, and held that the FIRREA extender provision does not preempt the Texas blue sky statute of repose. *See Guaranty Bank I*, 2013 WL 4536177, at *4-9.

The Countrywide Defendants respectfully submit that the Court's thinking as reflected in the *Guaranty Bank* Orders applies equally to the relationship between the HERA extender provision and the 1933 Act statute of repose. "However characterized," applying the HERA extender provision here "would effectively nullify" the 1933 Act statute of repose in all cases brought by FHFA. *Guaranty Bank II*, 2013 WL 6706090, at *7. And "[s]uch a result is impossible without invoking, even if implicitly," an amendment of Section 13 of the 1933 Act by HERA. *Id.*

By its express terms, Section 13 applies to all 1933 Act claims and all potential plaintiffs, as it clearly and unambiguously states that "*[i]n no event* shall *any such action*" be brought more than three years after the date of the offering or sale. 15 U.S.C. § 77m (emphasis added). The only way that a different timing rule could apply to FHFA would be if HERA operated as an implicit amendment of Section 13, effectively altering its language to read "in no event shall any such action *except an action brought by FHFA*" be brought more than three years after the offering or sale.

This is not merely an issue of semantics. Rather, just as the FDIC's argument that the FIRREA extender provision displaces *state* statutes of repose required a preemption analysis in *Guaranty Bank*, FHFA's argument that the HERA extender provision displaces *federal* statutes of repose requires application of the comparable implied amendment/repeal analysis here. It does not matter that the 1933 Act statute

of repose was enacted by Congress and not by a state legislature; what matters is that both scenarios involve an existing statute that may or may not be supplanted by a new statute.  The timeliness of FHFA's 1933 Act claims necessarily depends on a later-in-time Congressional enactment (the HERA extender provision) implicitly superseding an earlier-in-time, otherwise applicable Congressional enactment (Section 13 of the 1933 Act).  This is precisely the scenario that the implied amendment/repeal doctrine is designed to address.  And the analytical framework that therefore applies—is there evidence of "clear and manifest" Congressional intent to override the 1933 Act statute of repose?—is essentially identical to the preemption analysis that the Court applied in *Guaranty Bank*.

More specifically, this Court recognized in both the *FHFA* Order and the *Guaranty Bank* Orders that "[w]ell established jurisprudence [] strongly disfavors preemption of *federal* statutory law by another *federal* statute absent express manifestations of a preemptive intent."  *Guaranty Bank II*, 2013 WL 6706090, at *8 (emphasis added) (quoting *United States v. Gen. Dynamics Corp.*, 19 F.3d 770, 774 (2d Cir. 1994)); *accord FHFA* Order, 900 F. Supp. 2d at 1066 ("Implied repeal is strongly disfavored.").  As the Supreme Court has explained:

> While a later enacted statute . . . can sometimes operate to amend or even repeal an earlier statutory provision, . . . repeals by implication are not favored and will not be presumed *unless the intention of the legislature to [amend or] repeal [is] clear and manifest*.  We will not infer a statutory repeal [or amendment] unless the later statute *expressly contradict[s] the original act* or unless such a construction is *absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all*.

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (emphasis added); *accord id*. at 664 n.8 ("[I]mplied amendments are no more favored than implied repeals."); *Rodriguez*, 480 U.S. at 524.  In other words, "courts are not at liberty to pick and choose among congressional enactments, and when two statutes are

1    capable of co-existence, it is the duty of the courts, *absent a clearly expressed*

2    *congressional intention to the contrary*, to regard each as effective." *Morton v.*

3    *Mancari*, 417 U.S. 535, 551 (1974) (emphasis added).[11]

4         Thus, just as there is a longstanding presumption against the preemption of state

5    law, there is a strong presumption against finding that a previously-enacted federal

6    statute was implicitly amended or repealed by a later federal statute.  In the

7    preemption context, courts may not find preemption of a state statute unless there is

8    evidence of a "clear and manifest" intent by Congress to displace state law. *Guaranty*

9    *Bank I*, 2013 WL 4536177, at *5-6; *Guaranty Bank II*, 2013 WL 6706090, at *9.  In

10   the implied amendment/repeal context, courts likewise may not find that an earlier

11   federal statute was implicitly amended or repealed by a later federal statute "unless the

12   intention of the legislature to [amend or] repeal [is] *clear and manifest*." *Nat'l Ass'n*

13   *of Home Builders*, 551 U.S. at 662 (emphasis added).  As the Supreme Court has

14   explained, this presumption against implied amendment or repeal is "the guiding

15   principle to reconciliation of [] two statutory schemes." *Silver v. N.Y. Stock. Exch.*,

16   373 U.S. 341, 357 (1963).

17        Just as the presumption against preemption is rooted in federalism concerns, the

18   presumption against implied amendment or repeal is similarly rooted in important

19   public policies.  First, it promotes the stability and harmonious enforcement of

20   Congress' legislative judgments, and ensures that all validly enacted federal statutes

21   will be given effect unless Congress has expressed a clear intent to the contrary.  The

22   Supreme Court has stated that it is for Congress—not the courts—to decide when one

23

---

24   [11] *Accord Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936) ("Where there are two acts upon the same subject, effect should be given to both if possible.");

25   *Rodriguez v. Holder*, 619 F.3d 1077, 1079 (9th Cir. 2010) (courts must "interpret each provision to fit harmoniously as part of a symmetrical and coherent statutory scheme"); *United States v. Maes*, 546 F.3d 1066, 1069 (9th Cir. 2008) ("[R]epeals by

26   implication are not favored and will only be found when the new statute is clearly repugnant, in words or purpose, to the old statute."); *Firebaugh Canal Co. v. United*

27   *States*, 203 F.3d 568, 575 (9th Cir. 2000) ("[I]n the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by

28   implication is when the earlier and later statutes are irreconcilable.").

1    valid act of Congress is to be displaced in favor of another.  Because "[p]resumably

2    Congress had given serious thought to the earlier statute" "[b]efore holding that the

3    result of the earlier consideration has been repealed or qualified, it is reasonable for a

4    court to insist on a legislature's using language showing that it has made a *considered*

5    *determination* to that end."  *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 134

6    (1974) (emphasis added).[12]  Absent this strong presumption that statutes should be

7    construed in a manner to avoid implied amendment or repeal, districts courts across

8    the country faced with the task of applying different federal statutes enacted at

9    different points in time could create a crazy quilt of federal statutory interpretations,

10    with the earlier federal statute displaced in some jurisdictions but enforced in others.

11        Second, the presumption against implied repeal or amendment enables

12    Congress to perform its legislative function, by providing "fundamental ground rules"

13    for determining the effect on preexisting law of a bill under consideration by

14    Congress.  As the Court of Appeals explained in *United States v. Hansen*, 772 F.2d

15    940 (D.C. Cir. 1985):

16       It will not do to give this principle of statutory interpretation mere lip service

17         and vacillating practical application.  A steady adherence to it is important,

18         primarily to facilitate not the task of judging but the task of legislating.  It is one

19         of the fundamental ground rules under which laws are framed.  Without it,

20         determining the effect of a bill upon the body of preexisting law would be

21

---

22    [12] *Accord Doe v. Kamehameha Schs.*, 470 F.3d 827, 847 (9th Cir. 2006) (en banc)
("[W]e presume that Congress acts consistently with the extant body of law.");

23    *Greenless v. Almond*, 277 F.3d 601, 608-09 (1st Cir. 2002) ("This principle is a
product of a set of beliefs about the legislative process—in particular, a belief that

24    Congress, focused as it usually is on a particular problem, should not be understood to
have eliminated without specific consideration another program that was likely the

25    product of sustained attention."); *Samuels v. Dist. Of Columbia*, 770 F.2d 184, 184 n.7
(D.C. Cir. 1985) ("[Implied] repeals are strongly disfavored on the ground that

26    Congress is normally expected to be aware of its previous enactments and to provide a
clear statement of repeal if it intends to extinguish an extant remedy."); 1A N.J. Singer

27    & J.D. Shambie Singer, Sutherland Statutory Construction § 23:9-10 (7th ed. 2007)
(presumption against implied amendment or repeal is "grounded in judicial respect for

28    the ultimate authority of the legislature to make laws").

1   inordinately difficult, and the legislative process would become distorted by a

2   sort of blind gamesmanship, in which Members of Congress vote for or against

3   a particular measure according to their varying estimations of whether its

4   implications will be held to suspend the effects of an earlier law.

5   *Id.* at 944.[13]

6       Applying the same "clear and manifest" intent analysis this Court followed in

7   the *Guaranty Bank* Orders, there is no evidence of "clear and manifest" Congressional

8   intent to amend the 1933 Act statute of repose here.  By definition, the ambiguity of

9   the term "statute of limitations" in the HERA extender provision precludes a finding

10   that Congress had a "clear and manifest" intent to override the 1933 Act statute of

11   repose.  *Guaranty Bank I*, 2013 WL 4536177, at *5-6; *Guaranty Bank II*, 2013 WL

12   6706090, at *9.  Moreover, the extender provision does not "expressly contradict" the

13   1933 Act statute of repose, the two statutes are not "irreconcilable," and amending or

14   repealing the 1933 Act statute of repose is not "absolutely necessary" for the words of

15   the extender provision to "have any meaning at all."  *Nat'l Ass'n of Home Builders*,

16   551 U.S. at 662-63.  To the contrary, the two statutes are undeniably "capable of co-

17   existence" by reading the extender provision as not applicable to the 1933 Act statute

18   of repose.  *Morton*, 417 U.S. at 551.

19       In short, "courts are not at liberty to pick and choose among congressional

20   enactments" and there is no "clearly expressed congressional intention" for the HERA

21   extender provision to displace the 1933 Act statute of repose.  *Id*.  Given the reasoning

22   and holdings of this Court's *Guaranty Bank* Orders regarding Congressional intent,

23   the Countrywide Defendants respectfully submit that the strong presumption against

24   implied amendment must be applied here in regard to the 1933 Act statute of repose.

25

26   [13] Given the important public policies underlying the strong presumption against

27   implied amendment or repeal, this presumption necessarily "supersedes the notion that 'ambiguous statutes of limitation will be interpreted in a light most favorable to the government.'"  *Guaranty Bank I*, 2013 WL 4536177, at *5 n.5 (applying presumption

28   against preemption because it "is grounded in concerns for state sovereignty").

1   The Supreme Court cases instruct that that statute of repose should be enforced
2   harmoniously with the HERA extender provision, and FHFA's 1933 Act claims thus
3   must be dismissed as untimely due to the expiration of the repose period prior to the
4   filing of this suit.  *Id.*[14]

5   ## CONCLUSION

6        For all of these reasons, the Countrywide Defendants respectfully request that
7   the Court reconsider the *FHFA* Order and dismiss as time-barred FHFA's claims
8   under the Virginia Securities Act, D.C. Securities Act, and 1933 Act.

9   Dated:  January 13, 2014       **GOODWIN PROCTER LLP**

10         /s/ Brian E. Pastuszenski
11         Brian E. Pastuszenski (*pro hac vice*)
           Daniel J. Tyukody (State Bar No. 123323)
12         John B. Daukas (*pro hac vice*)
           Brian C. Devine (State Bar No. 222240)

13         *Counsel for the Countrywide Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[14] As with FHFA's blue sky claims, it is undisputed that absent the application of the HERA extender provision, the 1933 Act statute of repose expired before this action was filed as to all MBS at issue and FHFA's 1933 Act claims would be time-barred in their entirety.  *FHFA* Order, 900 F. Supp. 2d at 1062.